# EXHIBIT 1



## Service of Process Transmittal Summary

**TO:**    Janessa Turner, Claims Representative
QBE Regional Companies (N.A.), Inc.
ONE QBE WAY
SUN PRAIRIE, WI 53596-0001

**RE:**    **Process Served in Utah**

**FOR:**   QBE Insurance Corporation  (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | GENEVA ROCK PRODUCTS, INC. vs. QBE INSURANCE CORPORATION |
| **CASE #:** | 230903608 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Midvale, UT |
| **DATE/METHOD OF SERVICE:** | By Process Server on 06/15/2023 at 14:20 |
| **JURISDICTION SERVED:** | Utah |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  GSSC Claims  GSSC-ClaimsLegalAdmin.US-BOX@us.qbe.com |
| | Email Notification,  Ruby Remata  Ruby.Remata@us.qbe.com |
| | Email Notification,  Janessa Turner  janessa.turner@us.qbe.com |
| | Email Notification,  Taylor Willemot  taylor.willemot@us.qbe.com |
| | Email Notification,  DARYL GUMAPAL  daryl.gumapal@us.qbe.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 1108 E. South Union Avenue |
| | Midvale, UT 84047 |
| | 800-448-5350 |
| | MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 Wolters Kluwer

## PROCESS SERVER DELIVERY DETAILS

**Date:** Thu, Jun 15, 2023
**Server Name:** Drop Service

| Entity Served | QBE INSURANCE CORPORATION |
|---|---|
| Case Number | 230903608 |
| Jurisdiction | UT |

| Inserts | | |
|---|---|---|
| | | |



**MANNING CURTIS BRADSHAW
& BEDNAR PLLC**
Alan C. Bradshaw #4801
Matthew D. Church #15574
Carson M. Fuller #17571
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678
abradshaw@mc2b.com
mchurch@mc2b.com
cfuller@mc2b.com

Date: 6-15
Time: 1:30

STATEWIDE        Jeff Cook, PI # A127531

Statewide Process Servers
PO BOX 845
West Jordan, UT 84084

*Attorneys for Plaintiff Geneva Rock Products, Inc.*

## IN THE THIRD JUDICIAL DISTRICT COURT OF UTAH, SALT LAKE COUNTY

| | |
|---|---|
| GENEVA ROCK PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> QBE INSURANCE CORPORATION, <br><br> Defendant. | **SUMMONS** <br><br> Case No. 230903608 <br><br> Judge Vernice Trease |

THE STATE OF UTAH TO:

**QBE Insurance Corporation
c/o Registered Agent, CT Corporation System
1108 E. South Union Avenue
Midvale, UT 84047**

You are hereby summoned and required to file an Answer in writing to the Complaint,

which has been filed with the Court and is herewith served upon you, with the Clerk of the

above-entitled Court at Matheson Courthouse, 450 South State Street, Salt Lake City, Utah

84114, and serve upon or mail to Plaintiff's attorney, Alan C. Bradshaw of MANNING CURTIS

BRADSHAW & BEDNAR PLLC, 201 South Main Street, Suite 750, Salt Lake City, Utah 84111, a

copy of said Answer within twenty-one (21) days after service of said Complaint upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded

in said Complaint.

DATED this 14th day of June, 2023.

                **MANNING CURTIS BRADSHAW
                & BEDNAR PLLC**

                /s/ Alan C. Bradshaw
                Alan C. Bradshaw
                Matthew D. Church
                Carson M. Fuller
                *Attorneys for Plaintiff*

{02548314.DOCX /}                    2

**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**
Alan C. Bradshaw #4801
Matthew D. Church #15574
Carson M. Fuller #17571
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678,
Facsimile: (801) 364-5678
abradshaw@mc2b.com
mchurch@mc2b.com
cfuller@mc2b.com

*Attorneys for Plaintiff Geneva Rock Products, Inc.*

## IN THE THIRD JUDICIAL DISTRICT COURT OF UTAH, SALT LAKE COUNTY

| | |
|---|---|
| GENEVA ROCK PRODUCTS, INC., | |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| v. | |
| QBE INSURANCE CORPORATION, | Case No. |
| Defendant. | Judge |

Plaintiff Geneva Rock Products, Inc. ("Geneva"), by and through counsel, complains

against QBE Insurance Corporation ("QBE") as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Geneva is a Utah corporation engaged in supplying construction

materials and services.

{02540420.DOCX /}

2.     Defendant QBE is a Pennsylvania corporation and an insurance company engaged
in the business of providing insurance, including in the State of Utah, to policyholders like
Geneva.

3.     This Court has jurisdiction over the subject matter of this case pursuant to Utah
Code Ann. § 78A-5-102 and 78B-6-401.

4.     Venue is proper in this Court pursuant to Utah Code Ann. § 78B-3-307 and/or
78B-3-304.

## FACTUAL BACKGROUND

5.     QBE is, and at all relevant times was, engaged in the business of selling
insurance.

6.     QBE and Geneva entered into a contract of insurance, Policy No. QPL0057435
(hereinafter, the "QBE Policy") providing liability and other coverage to Geneva for the period
beginning August 21, 2017 to August 21, 2018 (the "Policy Period"). Geneva paid premiums for
this coverage. A copy of the Policy is attached hereto as Exhibit A.

7.     The QBE Policy is a "claims-made" policy as shown on the Declarations Page:
"THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH
APPLIES TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY
PERIOD."

8.     The QBE Policy includes Employment Practices Liability coverage for loss on
account of claims made during the Policy Period, including claims for discrimination,
harassment, retaliation, workplace tort and wrongful employment decisions.

9.      The QBE Policy expired on August 21, 2018, and Geneva did not renew the QBE
Policy.

10.     Geneva entered into a subsequent contract of insurance with Ironshore Indemnity,
Inc. ("Ironshore"), Policy No. 003751800 (hereinafter, the "Ironshore Policy"), providing
liability and other coverage to Geneva for the period beginning August 21, 2018 to August 21,
2019.

## *The Underlying Actions*

11.     On December 15, 2017, former Geneva employee Raul Guzman filed a Charge of
Discrimination with the Equal Employment Opportunity Commission and the Utah Anti-
Discrimination & Labor Division of the Utah Labor Commission ("Utah Labor Commission")
alleging that Geneva discriminated against him in his employment (the "Guzman Claim"). The
Utah Labor Commission first informed Geneva of the Guzman Claim on December 18, 2017.

12.     On January 3, 2018, former Geneva employee Oghenetega Emuveyan
("Emuveyan") filed a Charge of Discrimination with the Utah Labor Commission alleging that
Geneva discriminated against him in his employment (the "Emuveyan Claim"). The Utah Labor
Commission first informed Geneva of the of the Emuveyan Claim on January 4, 2018.

13.     Counsel for Emuveyan from the law firm Christensen & Hymas also provided
Geneva with a written demand letter on June 21, 2018, including a demand for monetary relief
(the "Demand Letter").

14.     The Utah Labor Commission dismissed Guzman's Charge of Discrimination and
provided a notice of his right to sue on February 7, 2019. The Utah Labor Commission likewise
dismissed Emuveyan's Charge and provided notice of his right sue on March 19, 2019.

{02540420.DOCX /}                              3

15.     Guzman filed a Complaint in the United States District Court on December 6,
2018, Civil Action No. 2:18-cv-00843-EJF (the "Guzman Lawsuit").

16.     Emuveyan filed a Complaint in the Third Judicial District Court in and for Salt
Lake County, State of Utah, on June 19, 2019, which was subsequently removed to the United
States District Court for the District of Utah on September 3, 2019 as Civ. Action No. 2:19-cv-
00616-HCN-DAO (the "Emuveyan Lawsuit"). The Emuveyan Lawsuit remains pending.

17.     Geneva provided notice of the Guzman Claim and the Emuveyan Claim
(collectively the "Claims") to an insurance agent and thereafter Ironshore undertook to defend
the Claims. Ironshore subsequently denied the Claims including a duty to defend.

18.     Geneva provided notice to QBE of the Claims on or about April 21, 2021.

19.     On or about May 19, 2021, QBE disclaimed all coverage under the QBE Policy
for the Claims, including stating that it has no duty to pay defense costs. QBE stated the position
that although the Claims were first made during the QBE Policy Period, coverage is not triggered
because the Claims were first reported to QBE more than 60 days after the QBE Policy expired.
A copy of QBE's denial is attached hereto as Exhibit B.

20.     Counsel for Geneva corresponded with QBE and Counsel for QBE between May
and August of 2021, explaining Geneva's contractual and statutory basis for coverage and
requesting that QBE reconsider its position. *See* Emails and Letters, attached collectively hereto
as Exhibits C-1.

21.     On or around July 13, 2022, the parties to the Guzman Claim settled that claim
pursuant to a confidential settlement agreement.

{02540420.DOCX /}                                4

22.     Thus far, the cost to defend and/or settle the Claims is in excess of $1.5 million
and this amount continues to increase. QBE refuses to pay any of these amounts.

## *The Policy*

23.     The Utah Insurance Code (Utah Code Ann. § 31A-1-301(26)) defines "claims-
made coverage" as "an insurance contract or provision limiting coverage under a policy insuring
against legal liability to claims that are first made against the insured while the policy is in
force."

24.     The Utah Insurance Code (Utah Code Ann. § 31A-22-204) further provides that
insurers "may not limit coverage under a policy insuring against legal liability to claims that are
first made against the insured while the policy is in force" except where "the policy contains, on
the cover page, a conspicuous statement that the coverage of the policy is limited in that way."

25.     The cover page of the QBE Policy states that "THE LIABILITY COVERAGE
PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES TO CLAIMS FIRST
MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD." The cover page does
not include any requirement for a claim to be made *and reported* to QBE during the Policy
Period.

26.     The QBE Policy's insuring clause ("Insuring Clause") similarly reflects the
claims-made but not a claims-made-and-reported nature of the QBE Policy by stating that "[t]he
Insurer shall pay, on behalf of the Insured, Loss on account of Claims first made during the
Policy Period." The Insuring Clause contains no requirement that Geneva report a claim to QBE
during the Policy Period in order for coverage to apply. Rather, the only precondition for

coverage in the Insuring Clause is that the Claim be made against Geneva during the Policy
Period.

27.     The Utah Insurance Code (Utah Code Ann. § 31A-21-312(1)(b)) addresses
policyholder notice and states that a policyholder's "failure to give any notice . . . of loss
required by the policy within the time specified in the policy does not invalidate a claim by the
insured, if the insured shows . . . that notice was given or proof of loss filed as soon as
reasonably possible." Additionally, Section 31A-21-312(2) states that "[f]ailure to give notice or
file proof of loss as required by Subsection (1)(b) does not bar recovery under the policy if the
insurer fails to show it was prejudiced by the failure."

28.     Utah Code Ann. § 31A-22-203 applies to every type of liability insurance policy
including "claims-made" and "occurrence" policies and expressly references Section 31A-21-
312. Utah Code Ann. § 31A-22-203 states *a single exception* to the notice/prejudice rule set forth
in § 31A-21-312(2): "Subsection 31A-21-312(1) may not be construed to extend the normal
provisions of any claims-made coverage that required notice of an occurrence or claim prior to
the expiration of the policy for coverage to be in force." Under Utah Code § 31A-22-203, the
only exception to the notice/prejudice standard set forth in Utah Code Ann. § 31A-21-312(2) is
for a liability policy's insuring provision that requires notice of an occurrence or claim "*prior to
the expiration of the policy* for coverage to be in force" (emphasis added). In all other occurrence
or claims-made policies, an insurer must show it was prejudiced by the alleged untimeliness of a
reported notice. The exception does not apply to all "claims-made coverage" as that term is
defined in Utah Code Ann. § 31A-1-301(26), and specifically does not apply to policies that only
require claims to be made against the insured during the policy period, but not reported to the

{02540420.DOCX /}                                6

insurer, *"prior to the expiration of the policy...."* Utah Code Ann. § 31A-21-312(2) (emphasis

added).

29.    The Insuring Clause in the QBE Policy states only that "[t]he Insurer shall pay, on

behalf of the Insured, Loss on account of Claims first made during the Policy Period." It does not

require Geneva to provide QBE notice of the claim prior to the expiration of the policy in order

for coverage to be in force.

30.    The QBE Policy also contains a "Reporting" clause ("Reporting Clause"),

separate from the Insuring Clause, which states as follows:

> Notice of any Claim under any Liability Coverage Part is considered timely when
> reported to the Insurer as soon as practicable after the Parent Company's chief
> executive officer or chief financial officer first becomes aware of such Claim. *The
> Insurer shall not assert that notice of a Claim was untimely unless the Insurer
> is materially prejudiced by the untimely notice.* However, in no event shall any
> notice be provided later than:
>
> 1.    if the applicable Liability Coverage Part expires (or is otherwise
>        terminated) without being renewed with the Insurer, 60 days after
>        the effective date of such expiration or termination; or
>
> 2.    the expiration date of the Extended Reporting Period, if applicable.

(emphasis added).

31.    Under Utah Code § 31A-21-201, QBE was required to obtain approval from the

Utah Insurance Commissioner before using form QBBP-1004 (11-14) ("Form QBBP-1004 (11-

14)"), the form used in the QBE Policy. In addition, an insurer cannot include in a policy

"clauses requiring more expeditious notice of loss or proof of loss than is required by Section

31A-21-312 or rules adopted under that section" unless the Utah Insurance Commissioner "gives

them explicit approval." Utah Code Ann. § 31A-21-202(1).

{02540420.DOCX /}                                  7

32.     On or about November 20, 2014, QBE obtained approval from the Utah Insurance
Commissioner to use Form QBBP-1004 (11-14). The Utah Insurance Commissioner approved
Form QBBP-1004 (11-14) because it complies with the Utah Insurance Code (§ 31A-21-312(2))
by expressly stating that QBE will not deny a claim for alleged untimely notice "unless [QBE] is
materially prejudiced by the untimely notice." *See* QBE Policy, Form QBBP-1004 (11-14), at §V
(page 5 of combined QBE Policy) ("Reporting Clause"). The QBE Policy's express adoption of
a notice/prejudice rule in order to comply with § 31A-21-312(2), and the fact that the Policy does
not require notice of the "claim prior to the expiration of the policy for coverage to be in force,"
demonstrates that QBE's denial of a duty to defend and indemnity the Claims has not been made
in good faith or consistent with QBE's fiduciary or good faith duties owed to Geneva. QBE's
position that "in no event shall any notice be provided later than . . . 60 days after the effective
date of [the Policy's] expiration" trumps the express notice/prejudice language, renders such
language "void" under Utah Code Ann. § 31A-21-202(2) because QBE never obtained explicit
approval to deviate from § 31A-21-312(2). Instead, QBE expressly included a notice/prejudice
standard as required by § 31A-21-312(2).

33.     The Utah Insurance Commissioner's approval of Form QBBP-1004 (11-14) as
well as approval of similar claims-made forms that expressly state a notice/prejudice standard
consistent with § 31A-21-312(2), demonstrates that QBE's position that the single exception for
a policy that requires "notice . . . prior to the expiration of the policy for coverage to be in force"
is applicable to every claims-made policies (including policies that are not claims-made-and-
reported policies) is wrong as a matter of law. A copy of additional claims-made policies

{02540420.DOCX /}                                    8

approved by the Utah Insurance Commissioner that expressly comply with the notice-prejudice standard set forth in § 31A-21-312(2) are attached hereto as part of Exhibit G.

34.     Reporting clauses in claims-made policies also serve a different purpose than those in claims-made-and-reported policies. In claims-made policies, like the QBE Policy at issue here, notice provided under the Reporting clause is not an "element of coverage." *Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 954 (9th Cir. 2002). By contrast, in claims-made-and-reported policies, "notice is an element of coverage," and must be provided during the policy period in order to "actually trigger[] coverage." *Id.* at 956-57.

35.     The plain language of the Reporting Clause in the QBE Policy does not require notice of a claim prior to the expiration of the QBE Policy in order for coverage to be in force. To the contrary, the Reporting Clause expressly allows for timely notice of a claim "60 days after . . . expiration or termination." The Reporting Clause does not in any way address "when coverage is in force." The Insuring Clause identifies what is necessary for coverage to be in force and such language requires only that a claim be made against Geneva during the Policy Period.

36.     Because the QBE Policy does not require notice of a claim prior to the expiration of the QBE Policy for coverage to be in force, the QBE Policy does not qualify for the exception found in Utah Code Ann. § 31A-22-203 to the required showing of prejudice to deny the claim as found in Utah Code Ann. § 31A-21-312. Consequently, Section 31A-21-312(2) applies and QBE must "show it was prejudiced" by any alleged failure by Geneva to provide timely notice before it may withhold coverage based on untimely notice.

37.     QBE has disclaimed coverage, including refusing to pay defense costs, based on

the alleged untimeliness of the notice of Claims provided by Geneva to QBE, but QBE has failed

to show any prejudice. QBE cannot show that it was prejudiced by the timing of Geneva's notice

to QBE because Geneva was represented by capable defense counsel as directed by Ironshore

who competently defended the Claims prior to Geneva tendering the defense to QBE.

38.     QBE has maintained its disclaimer of coverage including refusing to pay defense

costs despite Ironshore's conclusion that QBE is the correct carrier to respond to the Claims.

39.     QBE has failed to fulfill its obligation of good faith and fair dealing and it has

breached its fiduciary duty owed to Geneva in connection with the Claims.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

40.     Geneva repeats and incorporates by reference the allegations of paragraphs 1-39

above.

41.     Geneva has demanded that QBE pay all Losses (as defined in the QBE Policy)

associated with the Claims. Those Losses include but are not necessarily limited to all amounts

Geneva becomes legally obligated to pay on account of the Claims, including compensatory

damages, judgments and settlements, pre- and post-judgment interest, and defense costs.

42.     QBE has breached its obligations set forth in the QBE Policy by its failure,

refusal, and disclaimer described above, including its failure to pay all Losses associated with the

Claims.

43.     As a direct and proximate result of the breaches of contract, which are continuing

to at least the date of this Complaint, QBE has deprived Geneva of the benefit of insurance

coverage for which Geneva has paid premiums and Geneva has been damaged as a result of

QBE's breach of contract in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

44.     Geneva repeats and incorporates by reference the allegations of paragraphs 1-43

above.

45.     QBE has relied on the Reporting Clause to assert that "the language of the QBE

Policy allowing notice up to 60 days after the expiration of the Policy Period does not change the

fact that the QBE Policy is a claims-made policy to which the prejudice requirement of Section

31A-21-312(2) does not apply" and that "[s]ince the QBE Policy requires that notice be given no

later than 60 days after the expiration of the policy, the Insured's failure to comply with that

requirement defeats recovery under the policy."

46.     In taking this unfounded and incorrect position, QBE has failed to acknowledge

that the plain language of the QBE Policy *does not* require notice of a claim prior to the

expiration of the policy *for coverage to be in force*, and has consequently failed to acknowledge

that the Policy does not qualify for the single exception found in Utah Code Ann. § 31A-22-203

to the required showing of prejudice mandated by Utah Code Ann. § 31A-21-312. QBE has

failed to show prejudice, and has also failed to account for the strong policy against forfeiture of

insurance benefits for which an insurance company has been paid premiums.

47.     As a result of the position asserted by QBE under the QBE Policy, an actual

controversy exists between Geneva and QBE regarding the meaning of the QBE Policy

provisions mentioned herein and the alleged forfeiture of benefits for which premiums have been

paid. Geneva seeks a judicial determination, pursuant to Utah Code Ann. § 78B-6-401 et seq.

{02540420.DOCX /}                              11

that QBE is obligated under the QBE Policy to pay all "Losses" associated with the Claims, that

neither the Reporting Clause nor any other provision of the Policy applies to defeat coverage

under the facts of this case, and that QBE has the burden to demonstrate prejudice from any

alleged untimely notice of the Claims.

## THIRD CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

48.     Geneva repeats and incorporates by reference the allegations of paragraphs 1-47

above.

49.     The QBE Policy contains an implied covenant of good faith and fair dealing.

50.     QBE has breached its obligation of good faith and fair dealing as a result of the

conduct described above, including that QBE has failed to diligently investigate the facts, it has

failed to fairly evaluate the claim and settlement, it has failed to act promptly and reasonably in

providing insurance benefits to Geneva, it has maintained its denial of coverage despite an

inability to show prejudice, and it has engaged in actions that have injured Geneva's ability to

obtain the benefits of the Policy.

51.     As a direct and proximate result of the breach of the covenant of good faith and

fair dealing, Geneva has suffered damages in an amount to be proven at trial. These damages

include, but are not limited to, attorney's fees, costs, and expenses of this suit.

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

52.     Geneva repeats and incorporates by reference the allegations of paragraphs 1-51

above.

53.     In Utah, third-party liability insurer owes a fiduciary duty whereby "the insurer

incurs a fiduciary duty to its insured to protect the insured's interests as zealously as it would its

own; consequently, a tort cause of action is recognized to remedy a violation of that duty." *Beck*

*v. Famers Ins. Exchange*, 701 P.2d 795, 799 (Utah 1985).

54.     "The duty to defend is a continuing duty that is triggered when the insured tenders

the defense of an action against it which is potentially within the policy coverage." *See*

*Summerhaze Co., L.C. v. FDIC*, 2014 UT 28, ¶36, 332 P.3d 908. Indeed, "[i]f the "underlying

complaint alleges *any facts* or claims that might fall within the ambit of the policy the insurer

must offer a defense. *Id.* (emphasis in original). The insurer "may not refuse the tendered defense

of an·action unless a comparison of the policy with the underlying complaint shows on its face

that there is no potential for coverage." *Id.* ¶ 38.

55.     As Geneva's liability insurer, QBE has a fiduciary duty to defend Geneva against

the Claims made by Geneva's former employees, and to protect Geneva's interests as zealously

as it would its own. That duty was triggered by Geneva's tender of the defense of the Claims to

QBE because the underlying complaints allege facts that are potentially within the Policy's

coverage, as described above.

56.     As Geneva's liability insurer, QBE also has a fiduciary duty to reasonably pursue

settlement of the Claims. *UMIA Ins., Inc. v. Saltz*, 2022 UT 21, ¶¶ 47-48, 515 P.3d 406.

57.     QBE has breached its fiduciary duty in at least the following ways:

    a.  Failing to defend the Claims;

    b.  Failing to settle the Claims, including to pay the confidential settlement payment
        made to settle the Guzman Claim; and

{02540420.DOCX /}                                  13

c. Failing to comply with the Utah Insurance Code as set forth above.

58.     As a direct and proximate result of the breach of fiduciary duty, Geneva has

suffered damages in an amount to be proven at trial. These damages include, but are not limited

to, attorney's fees, costs, and expenses of this suit.

59.     QBE's acts or omissions in breaching its fiduciary duty to Geneva are the result of

willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing

and reckless indifference toward, and a disregard of, the rights of others.

WHEREFORE, Geneva requests judgment as follows:

1.      On the First Cause of Action:

   a.   For damages according to proof at trial;

   b.   For pre-and post-judgment interest according to law; and

   c.   For such other and further relief as this Court deems just and proper.

2.      On the Second Cause of Action:

   a.   That the Court find that QBE is obligated under the Policy to pay all "Losses"
        associated with the Claims, that neither the Reporting Clause nor any other
        Policy provision applies to defeat coverage under the facts of this case, that
        QBE has the burden to demonstrate prejudice from any alleged untimely
        notice of the Claims reported by Geneva, and that QBE has failed to show any
        prejudice related to the timeliness of the notice provided by Geneva.

3.      On the Third Cause of Action:

   a.   For damages according to proof at trial;

   b.   For pre- and post-judgment interest according to law;

{02540420.DOCX /}                    14

    c. For Geneva's reasonable attorney's fees, costs, and expenses of this action;

    and

    d. For such other and further relief as this Court deems just and proper.

4.    On the Fourth Cause of Action:

    a. For damages according to proof at trial;

    b. For pre- and post-judgment interest according to law;

    c. For Plaintiffs' reasonable attorneys' fees, costs, and expenses of this action;

    d. For punitive damages; and

    e. For such other and further relief as the Court deems proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims and issues triable.

DATED this 18th day of May, 2023.

               **MANNING CURTIS BRADSHAW**
               **& BEDNAR PLLC**

               /s/ Alan C. Bradshaw
               Alan C. Bradshaw
               Matthew D. Church
               Carson M. Fuller
               *Attorneys for Plaintiff*

# EXHIBIT A

## QBE® Insurance Corporation
A Stock Company



**_The Solution_ for Management Liability**

---

**Home Office:**

c/o CT Corporation System
116 Pine Street, Suite 320
Harrisburg, Pennsylvania 17101

**Administrative Office:**

Wall Street Plaza
88 Pine Street
New York, New York 10005
1-877-772-6771

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

**This policy consists of:**     Declarations
One or more coverage parts.
A coverage part consists of:
— One or more coverage forms
— Applicable forms and endorsements

**QBE Insurance Corporation**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this
policy shall not be valid unless countersigned by our authorized representative.

Robert V. James                          Jose Ramon Gonzalez, Jr.
President                                Secretary

QBBP-3033 (05-14)                                                        Page 2 of 2

POLICY NUMBER: QPL0057435

QBBP-3010 (09-14)



**The Solution**
**General Terms and Conditions Declarations**

QBE Insurance Corporation
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office: c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101

**THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**Item 1:**  Parent Company:  Clyde Companies, Inc.

Mailing Address:  730 North 1500 West
Orem, UT 84057

**Item 2:**  Policy Period  From: August 21, 2017 To: August 21, 2018
At 12:01 A.M. Standard Time at the mailing address stated in Item 1

**Item 3:**  Limit of Liability  $30,000,000 Combined Maximum Aggregate Limit of Liability for Liability Coverage Part

**Item 4:**  Coverage Parts:  Directors & Officers and Entity Liability
Employment Practices Liability
Fiduciary Liability

**Item 5:**  A. Notice to Insurer of a Claim or circumstance:    B. All Other Notices to Insurer:

QBE Insurance Corporation
Attn: The Claims Manager
Wall Street Plaza
88 Pine Street, 18th Floor
New York, New York 10005
Telephone: (877) 772-6771
Email: professional.liability.claims@us.qbe.com

QBE Insurance Corporation
Attn: Underwriting
Wall Street Plaza
88 Pine Street, 18th Floor
New York, New York 10005
Telephone: (877) 772-6771
Email: MLPLadmin@us.qbe.com

**Item 6:**  Extended Reporting Period
Premium: 150% of annual premium
Length:  One Year

**Item 7:**  Premium: $84,785

In witness whereof, the Insurer has caused this Policy to be executed, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

 **QBE**

**The Solution**
**General Terms and Conditions**

In consideration of the payment of the premium, the Insurer and the **Insureds** agree as follows:

## I. PREAMBLE

The insurance coverages offered in this Policy are part of a portfolio of insurance coverages, consisting of this General Terms and Conditions ("GTC") and any individual **Liability Coverage Parts** and **Non-Liability Coverage Parts** purchased, as stated in Item 4 of the Declarations of this GTC. The type of coverage provided by each of the **Liability Coverage Parts** and **Non-Liability Coverage Parts** are identified in each particular Coverage Part. Unless expressly stated to the contrary, the terms, conditions and limitations in this GTC apply to the entire Policy, whereas the terms, conditions and limitations of each individual Coverage Part only apply to that particular Coverage Part. In the event of a conflict between any terms, conditions or limitations of the GTC and any terms, conditions and limitations of any individual Coverage Part, the terms, conditions and limitations of the individual Coverage Part shall control.

## II. EXCLUSIONS

No coverage shall be provided under any **Liability Coverage Part** for **Loss** on account of that portion of a **Claim**:

A. Bodily Injury/Property Damage - for bodily injury, mental anguish, emotional distress, humiliation, sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is damaged or destroyed;

B. Conduct - based upon, arising out of or resulting from any deliberate fraud, deliberate criminal act or deliberate violation of any statute or regulation, or any illegal profit or remuneration, by an **Insured**, established by a final, non-appealable adjudication adverse to such **Insured** in any underlying action, and the Insurer shall not utilize a declaratory action or proceeding brought by or against the Insurer to establish such final, non-appealable adjudication;

C. ERISA - for any violation of the responsibilities, obligations or duties imposed by **ERISA** or for any functions identified in **ERISA** Section 3(21)(A) as not being the functions of a fiduciary, and commonly referred to as "settlor" functions;

D. Pending or Prior Proceedings - based upon, arising out of or resulting from an action, proceeding or **Claim** commenced against an **Insured** pending on or prior to the Pending or Prior Proceedings Date stated in the Declarations of each applicable **Liability Coverage Part**;

E. Pollution - based upon, arising out of or resulting from any:

1. discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

2. treatment, removal or disposal of any **Pollutants**; or

3. regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to a **Company**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in paragraphs 1, 2, or 3 above;

F. Prior Notice - based upon, arising out of or resulting from any claim reported, or any circumstance reported and accepted, under the insurance policy (including any policies of which such policy is a renewal policy) replaced by this Policy; and

G. Wage and Hour - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by any law governing wage, hour or payroll, including the Fair Labor Standards Act;

Exclusions D and F above shall not apply where this Policy is a renewal of a policy issued by the Insurer to the **Parent Company**.

With respect to all Policy exclusions, no conduct or knowledge of any **Insured** shall be imputed to any other **Insured Person**, and solely with respect to Exclusion B, only the conduct or knowledge of any past, present or future chief executive officer or chief financial officer of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

## III. RETENTION OR DEDUCTIBLE

A. Any Retention or Deductible applicable to any Coverage Part shall apply as set forth in each Coverage Part and in the amount(s) stated in the Declarations of each Coverage Part. If different parts of a single **Claim** are

subject to different Retentions or Deductibles, then the total amount of **Loss** applied to the applicable Retentions or Deductibles shall not exceed the largest applicable Retention or Deductible.

B.   No Retention shall apply to any **Loss** for which an **Insured Person** is not indemnified by a **Company** because of such **Company's Financial Impairment**.

### IV.   LIMIT OF LIABILITY

A.   The Combined Maximum Aggregate Limit of Liability, stated in Item 3 of the Declarations of this GTC, represents the maximum amount payable under all **Liability Coverage Parts** during the **Policy Period** for all **Liability Coverage Parts** combined.

B.   The Limit of Liability, stated in Item 2 of the Declarations of each **Liability Coverage Part**, represents the maximum amount payable under each **Liability Coverage Part** during the **Policy Period** for any one **Claim** and in the aggregate as set forth in each such **Liability Coverage Part**.

C.   **Defense Costs** are part of, and not in addition to, the Limit of Liability of each **Liability Coverage Part**.

D.   The remaining portion of each of the limits of liability described above shall be the limits of liability available during any Extended Reporting Period applicable to any Coverage Part.

### V.   REPORTING

A.   Notice of any **Claim** under any **Liability Coverage Part** is considered timely when reported to the Insurer as soon as practicable after the **Parent Company's** chief executive officer or chief financial officer first becomes aware of such **Claim**. The Insurer shall not assert that notice of a **Claim** was untimely unless the Insurer is materially prejudiced by the untimely notice. However, in no event shall any notice be provided later than:

1.   if the applicable **Liability Coverage Part** expires (or is otherwise terminated) without being renewed with the Insurer, 60 days after the effective date of such expiration or termination; or

2.   the expiration date of the Extended Reporting Period, if applicable.

B.   Notice requirements involving any **Non-Liability Coverage Part** shall be in accordance with the reporting requirements set forth in such **Non-Liability Coverage Part**.

C.   Notice of any circumstance which could give rise to a **Claim** under any **Liability Coverage Part** is optional. If an **Insured** elects to report any circumstance which could give rise to a **Claim**:

1.   such notice shall include information regarding the nature of any **Wrongful Acts** or alleged or potential damages and the names of any actual or potential defendants; and

2.   any **Claim** that may subsequently arise out of a reported circumstance shall be deemed to have been first made during the **Policy Period** in which such circumstance was first reported.

### VI.   DEFENSE AND SETTLEMENT

A.   With respect to any **Claim** under any **Liability Coverage Part**, the Insurer shall have the right and duty to defend any **Claim**, unless otherwise specifically stated in a particular **Liability Coverage Part**.  The Insurer shall have such right and duty to defend even if any of the allegations in such **Claim** are groundless, false or fraudulent.  Any such duty to defend shall cease upon exhaustion of the applicable Limit of Liability.

B.   With respect to any **Claim** under any **Liability Coverage Part**:

1.   the **Insured** shall:

(a)  not agree to any settlement, stipulate to any judgment, incur any **Defense Costs**, admit any liability or assume any contractual obligation, without the Insurer's prior written consent, provided that, unless otherwise stated in a particular **Liability Coverage Part**, the **Insured** may settle any **Claim**, without the Insurer's prior written consent, where the amount of such settlement, including **Defense Costs**, does not exceed the applicable Retention or Deductible;

(b)  not do anything that could prejudice the Insurer's position or its potential or actual rights of recovery; and

(c)  agree to provide the Insurer with all information, assistance and cooperation which the Insurer may reasonably require,

provided that the failure of any **Insured** to comply with any of the requirements in paragraphs (a) - (c) above, shall not impair the rights of any **Insured Person** under this Policy; and

2.   the Insurer:

(a) may make any investigation it deems reasonably necessary and may, with the consent of the Insureds, make any settlement of any Claim it deems appropriate; and

(b) shall not be liable for any such settlement, stipulation, incurred Defense Costs, admission or assumed obligation to which it has not given its prior written consent, and the Insurer shall not unreasonably withhold such consent.

## VII. ALLOCATION

If in any Claim, the Insureds who are afforded coverage for a Claim incur Loss that is covered by this Policy and loss that is not covered by this Policy because such Claim includes both covered and uncovered matters, 100% of Defense Costs incurred by such Insured shall be covered Loss, and all loss other than Defense Costs shall be allocated between covered Loss and uncovered loss based upon the relative legal exposures of the parties to such matters.

## VIII. TREATMENT OF RELATED CLAIMS

All Related Claims shall be deemed a single Claim first made during the policy period in which the earliest of such Related Claims was either first made or deemed to have been first made in accordance with Section V. REPORTING above.

## IX. SUBROGATION

A. In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the Insureds' rights of recovery, and the Insureds shall take all reasonable actions to secure and preserve the Insurer's subrogation rights.

B. In no event shall the Insurer exercise any subrogation right against an Insured Person. In any subrogation action against a Company, it is agreed that each Company agrees to fulfill any indemnification obligations to the fullest extent permitted by law and any contract or agreement providing an indemnification obligation exceeding any such law.

C. If the Insurer recovers, either through subrogation or recoupment, any portion of an amount paid under this Policy, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

## X. EXTENDED REPORTING PERIOD

With respect to all Liability Coverage Parts:

A. If this Policy does not renew, or terminates other than for non-payment of premium, the Insureds shall have the right to purchase an ERP for the premium and time period stated in Item 6 of the Declarations. In the event of the non-renewal or termination of one or more Liability Coverage Parts of this Policy, the Insureds may purchase an ERP solely as respects the Liability Coverage Part(s) that has been non-renewed or terminated.

B. The right to an ERP shall lapse unless written notice of election to purchase such ERP, together with payment of the specified premium, is received by the Insurer within 30 days after the effective date of non-renewal or termination of the Policy. In the event the Parent Company elects not to purchase an ERP and an individual Insured or group of Insureds elects to purchase such ERP, such ERP shall only apply to Claims against such Insured or group of Insureds.

C. The premium for the ERP shall be deemed fully earned at the inception of the ERP.

D. Any ERP purchased shall become part of the Policy Period, extending such Policy Period to the expiration of the time period stated in Item 6 of the Declarations, but only with respect to Loss on account of a Claim for a Wrongful Act taking place before the effective date of non-renewal or termination.

## XI. CHANGES IN EXPOSURE

A. New Companies and Old Companies

This Policy's treatment of Subsidiaries shall be as stated below and as supplemented by any individual Coverage Part.

Any Insured of a Subsidiary:

1. acquired before or during the Policy Period is eligible for coverage under any:

   (a) Liability Coverage Part, but only for Loss on account of a Claim for a Wrongful Act which occurs after the date of such acquisition; and

(b) **Non-Liability Coverage Part**, but only after the effective date of such acquisition, and with respect to the Crime Coverage Part, subject to Section VIII. Other Insurance of such Coverage Part.

2. ceasing to be a **Subsidiary** before or during the **Policy Period** is eligible for coverage under any:

   (a) **Liability Coverage Part**, but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs while such entity was a **Subsidiary**; and

   (b) **Non-Liability Coverage Part**, as provided in such **Non-Liability Coverage Part**, but such **Subsidiary** and its **Insureds** shall cease to be **Insureds** under such **Non-Liability Coverage Part** as of the date of such cessation.

B. Acquisition of the **Parent Company**

In the event of a **Change in Control** of the **Parent Company** during the **Policy Period**:

1. any **Liability Coverage Part** shall remain in force until the expiration of the **Policy Period**, but only for any **Claim** for a **Wrongful Act** which occurs prior to such acquisition;

2. the entire premium for this Policy shall be deemed fully earned as of the effective date of such **Change in Control**; and

3. the **Parent Company** shall be entitled to receive a quote for an extension of the **Liability Coverage Parts** ("Run-Off Coverage") solely for **Claims** for **Wrongful Acts** which occurred prior to a **Change in Control**. Coverage offered pursuant to such quote shall be subject to additional or different terms and conditions and payment of additional premium. Any Run-Off Coverage purchased shall replace any Extended Reporting Period provided under Section X. EXTENDED REPORTING PERIOD.

## XII. NOTICE

A. All notices to the Insurer under this Policy of any event, loss, **Claim** or circumstances which could give rise to a **Claim** shall be given in writing to the address listed in Item 5A of the Declarations, and any such notice shall be deemed notice under the Policy in its entirety.

B. All other notices to the Insurer under this Policy shall be given in writing to the address listed in Item 5B of the Declarations.

C. Any notice under this Policy shall be effective on the date of mailing or receipt by the Insurer, whichever is earlier.

## XIII. TERMINATION OF POLICY

This Policy shall terminate at the earliest of:

A. 20 days after receipt by the **Parent Company** of written notice from the Insurer of termination for non-payment of premium;

B. expiration of the **Policy Period**; or

C. surrender of the Policy to the Insurer by the **Parent Company** or notice to the Insurer by the **Parent Company** stating when such cancellation will take effect, and in either case any returned premium shall be computed on a pro rata basis.

## XIV. REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGE

A. In issuing this Policy, the Insurer has relied upon the information and representations in the **Application** as being true and accurate, and the **Application** is the basis for, and considered incorporated into, this Policy.

B. The **Application** shall be construed as a separate request for coverage by each **Insured**, without any knowledge possessed by an **Insured** being imputed to any other **Insured Person**.

C. If the **Application** contains any misrepresentation made with the actual intent to deceive or which, for reasons other than simple negligence or oversight, materially affect the Insurer's acceptance of the risk or the hazard assumed, the Insurer shall not be liable for **Loss** on account of any **Claim** based upon, arising out of or resulting from either of such misrepresentations:

1. with respect to any Insured **Person** who had actual knowledge of any misrepresentation described in paragraph C above, and the Insurer can demonstrate that with such actual knowledge, such **Insured Person** reasonably believed that a **Claim** would arise from such misrepresentation;

2. with respect to any **Company**, if the **Insured Person** described in paragraph 1 above is a past or present chief executive officer or chief financial officer of the **Parent Company**.

D. The Insurer shall not be entitled under any circumstances to void or rescind this Policy with respect to any Insured.

## XV. EFFECT OF BANKRUPTCY

Bankruptcy or insolvency of any Insured shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

## XVI. WORLDWIDE TERRITORY

This Policy shall apply anywhere in the world, and any reference to laws, however described, shall include all U.S. federal, state and local statutory laws, all amendments to and rules and regulations promulgated under any such laws, common law, and any equivalent body of law anywhere in the world, unless specifically stated to the contrary.

## XVII. ROLE OF THE PARENT COMPANY

The Parent Company shall act on behalf of each Insured with respect to paying premiums, receiving any return premiums, agreeing to endorsements to this Policy and the giving or receiving of any notice provided for in this Policy (except notices of a Claim or circumstance which could give rise to a Claim or notice to apply for an ERP).

## XVIII.VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, Loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. If any element of Loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the exchange rate published in The Wall Street Journal on the date the element of Loss is due.

## XIX. ALTERATION, ASSIGNMENT AND HEADINGS

A. Any change in or modification of this Policy or assignment of interest under this Policy must be agreed to in writing by the Insurer.

B. The descriptions and headings and sub-headings of this Policy are solely for convenience, and form no part of the terms, conditions and limitations of coverage.

## XX. ESTATES, HEIRS, LEGAL REPRESENTATIVES, ASSIGNS, SPOUSES AND DOMESTIC PARTNERS

With respect to any Liability Coverage Part, Insured Person shall include:

A. the estate, heirs, legal representatives or assigns of any Executive, if such Executive is deceased, legally incompetent, insolvent or bankrupt; and

B. the lawful spouse or domestic partner of any Executive solely by reason of such spouse's or domestic partner's: 1. status as such; or 2. ownership interest in property which a claimant seeks as recovery for an alleged Wrongful Act of such Executive,

provided that no coverage shall apply with respect to loss arising from an act, error or omission by any estate, heir, legal representative, assign, spouse or domestic partner of an Insured Person.

## XXI. TRADE SANCTIONS

This insurance coverage does not apply to the extent that trade or economic sanctions of any country prohibit the insurer or any member of the insurer's group from providing insurance coverage.

## XXII. GLOSSARY

The following terms shall have the meaning ascribed to such terms in each applicable Coverage Part: Claim, Defense Costs, Insured, Insured Person, Loss and Wrongful Act.

A. Application means where provided to the Insurer, the application and any accompanying documentation submitted to the Insurer for this Policy or any documentation submitted to the Insurer in connection with the underwriting of this Policy.

B. Change in Control means:

1. the Parent Company's merger with, or acquisition by, another entity or the acquisition of all or substantially all of its assets by another entity, such that the Parent Company is not the surviving entity; or

2. when a person or entity or group of persons or entities acting in concert, acquires securities or voting rights which result in ownership or voting control by such person(s) or entity(ies) of more than 50% of the

outstanding securities or voting rights representing the present right to vote for or appoint directors or **Managers** of the **Parent Company**.

C. **Company** means the **Parent Company** and any **Subsidiary**, any foundation, political action committee or charitable trust controlled or sponsored by the **Parent Company** or any **Subsidiary**, and the **Parent Company** or any **Subsidiary** in its capacity as a debtor in possession under United States bankruptcy law.

D. **Employee** means any natural person whose labor or service was, is or will be engaged and directed by a **Company**, including a part-time, seasonal, leased and temporary employee, intern or volunteer. **Employee** does not include an independent contractor.

E. **ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")).

F. **Executive** means any natural person who was, now is or shall become:

    1. a duly elected or appointed director, officer, **Manager**, trustee, regent, governor, risk manager, comptroller or in-house general counsel of any **Company** organized in the United States of America, or in a functionally equivalent or comparable role to any of the foregoing; or

    2. a holder of a functionally equivalent position or comparable role to those described in paragraph 1 above in a **Company** that is organized in a jurisdiction other than the United States of America, including any position on an advisory board or committee.

G. **Extradition** means any formal process by which an **Insured** located in any country is or is sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

H. **Financial Impairment** means the status of a **Company** resulting from: 1. the appointment by a state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate such **Company**; or 2. such **Company** becoming a debtor in possession under United States bankruptcy law.

I. **Liability Coverage Part** means any Coverage Part identified in this Policy as a "Liability Coverage Part" within the heading to such Coverage Part or providing third party liability coverage in such Coverage Part.

J. **Manager** means any natural person, who was, now is, or shall become, a manager, member of the Board of Managers or equivalent executive of a **Company** that is a limited liability company.

K. **Non-Liability Coverage Part** means any Coverage Part or insuring clause in this Policy that does not provide any third party liability coverage.

L. **Parent Company** means the entity named in Item 1 of the Declarations.

M. **Policy Period** means the period of time stated in Item 2 of the Declarations of this GTC (subject to any termination in accordance with Section XII. TERMINATION OF POLICY) and the ERP, if applicable.

N. **Pollutants** means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, soot, vapor, fumes, acids, chemicals, alkalis, asbestos, asbestos products or waste. Waste includes materials to be reconditioned, recycled or reclaimed.

O. **Related Claims** means all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts**.

P. **Subsidiary** means:

    1. any entity while more than 50% of the outstanding securities or other equity ownership, representing the present right to vote for election of, or to appoint, directors, **Managers**, or the foreign equivalent of any such directors or **Managers** of such entity, are owned or controlled by the **Parent Company** directly or indirectly through one or more **Subsidiaries**; or

    2. any entity while the **Parent Company** has the right, pursuant to either written contract or the bylaws, charter, operating agreement or similar documents of a **Company**, to elect or appoint a majority of the Board of Directors of a corporation or **Managers**.

**POLICY NUMBER: QPL0057435**

QBBP-3006 (05-14)



***The Solution*** for Directors & Officers and Entity Liability
Coverage Part Declarations

**QBE Insurance Corporation**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office: c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101

THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.

**Item 1:** Parent Company: Clyde Companies, Inc.

**Item 2:** A. Limit of Liability

$10,000,000 per Claim
$10,000,000 in the aggregate

B. Securityholder Derivative Demand Investigation Limit: $250,000

**Item 3:** Additional Limit for Non-Indemnifiable Loss: $500,000

**Item 4:** Retention:

A. Insuring Clause B: $50,000 per Claim
B. Insuring Clause C: $50,000 per Claim

**Item 5:** Pending or Prior Proceedings Date: July 15, 2003



**The Solution** *for Private Company*
*Directors & Officers and Entity Liability*
*Coverage Part*

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the Insureds agree as follows:

## I. INSURING CLAUSE

A. Side A - Non-Indemnifiable Loss Coverage for Insured Persons

The Insurer shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made during the **Policy Period**, to the extent that such **Loss** has not been paid or indemnified by any **Company**.

B. Side B - Corporate Reimbursement Coverage for Indemnification of Insured Persons

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim** first made during the **Policy Period** to the extent the **Company** pays or indemnifies an **Insured Person** for such **Loss**.

C. Side C - Entity Coverages

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim**, and **Defense Costs** on account of a **Securityholder Derivative Demand Investigation**, first made during the **Policy Period**.

## II. EXCLUSIONS

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A. Insured v. Insured - brought by, or on behalf of:

1. a **Company** against another **Company**;
2. a **Company** or **Outside Entity** against an **Insured Person**;
3. an **Insured** Person, in any capacity, against an **Insured**,

provided that:

(a) Exclusion A2 above shall not apply to a **Claim** brought: (i) outside the United States of America, Canada or their territories or possessions; (ii) while the **Parent Company** or **Outside Entity** is in **Financial Impairment**; (iii) as a securityholder derivative action; or (iv) while an **Insured Person** is no longer serving in his capacity as such; and

(b) Exclusion A3 above shall not apply to any **Claim**: (i) for employment-related **Wrongful Acts** against an **Insured Person**; (ii) for contribution or indemnity; (iii) brought by an **Insured Person** who has ceased serving in his capacity as such for at least 1 year; or (iv) brought by, on behalf of or with the participation of a whistleblower;

B. Publicly Traded Securities - based upon, arising out of or resulting from any public offering of, or purchase or sale of, equity or debt securities issued by any **Company** or **Outside Entity**, provided that this Exclusion B shall not apply to any **Claim** based upon, arising out of or resulting from the **Company's**: 1. securities that are not required to be registered; 2. failure to undertake or complete an initial public offering or sale of its securities; or 3. preparation for any public offering, including any "road show" presentation to potential investors or other similar presentation;

Exclusions C - I below shall only apply to Insuring Clause C, Side C - Entity Coverages:

C. Antitrust - based upon, arising out of or resulting from anti-trust, price fixing or discrimination, restraint of trade, monopolization, unfair trade practices, predatory pricing or false advertising;

D. Contract - based upon, arising out of or resulting from any liability in connection with any contract or agreement to which a **Company** is a party, provided that this Exclusion D shall not apply to the extent that such **Company** would have been liable in the absence of such contract or agreement;

E. Employment Practices - based upon, arising out of or resulting from any employment-related **Wrongful Act**;

F. Intellectual Property - based upon, arising out of or resulting from any infringement of copyright, patent, trademark, trade dress, trade name or service mark or any misappropriation of ideas, trade secrets or other intellectual property rights;

G. Personal Injury - based upon, arising out of or resulting from any defamation (including libel and slander), disparagement, wrongful entry or eviction, invasion of privacy, false arrest, false imprisonment, assault, battery, loss of consortium, malicious use or abuse of process or malicious prosecution.

H. Professional Services - based upon, arising out of or resulting from the performance of or failure to perform **Professional Services**; and

I. Third Party Discrimination or Harassment - based upon, arising out of or resulting from any discrimination against, or harassment of, any third party.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1. Exclusion A. Bodily Injury/Property Damage shall not apply to any **Claim** under Insuring Clause A; and

2. Exclusion E. Pollution shall not apply to any **Claim**: (a) under Insuring Clause A; or (b) brought by a securityholder of a **Company** against an **Insured Person**.

## III.   RETENTION

No retention shall apply to any **Claim** under Insuring Clause A or to any **Securityholder Derivative Demand Investigation**.

## IV.   LIMIT OF LIABILITY

A. The Securityholder Derivative Demand Investigation Limit stated in Item 2B of the Declarations of this Coverage Part represents the maximum amount payable under this Coverage Part during the **Policy Period** for **Defense Costs** on account of all **Securityholder Derivative Demand Investigations**, which amount shall be part of, and not in addition to, the Limit of Liability stated in Item 2A of such Declarations.

B. The Additional Limit for Non-Indemnifiable Loss stated in Item 3 of the Declarations of this Coverage Part represents an additional limit of liability available solely to an **Executive** or natural person **General Partner** for **Loss** on account of a **Claim** covered under Insuring Clause A. This additional limit of liability shall be in addition to and not part of, and excess of any other insurance written specifically as excess of, the Limit of Liability stated in Item 2A of such Declarations.

## V.   ADVANCEMENT

A. If a **Company** fails to respond to an **Insured Person's** request for indemnification within 60 days of the **Insured Person's** request to the **Company** for such indemnification, then upon the reporting of the **Claim**, the Insurer shall advance **Defense Costs** and any other incurred **Loss** until such time that the **Company** accepts the **Insured's** request for indemnification or the Limit of Liability set forth in Item 2A of the Declarations of this Coverage Part has been exhausted, whichever occurs first. In any other **Claim**, the Insurer shall advance **Defense Costs** on a current basis, but no later than 60 days after receipt of the legal bills and any supporting documentation.

B. If it is determined by a final adjudication that any advanced **Defense Costs** are not covered under this Coverage Part, the **Insureds**, severally according to their respective interests, shall repay such uncovered **Defense Costs** to the Insurer, provided that nothing in this paragraph B shall limit the final non-appealable adjudication requirement in Exclusion B. Conduct of Section II. EXCLUSIONS of the GTC. If the Insurer recovers any portion of an amount paid under this Coverage Part, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

## VI.   REPORTING

Notice of a **Securityholder Derivative Demand Investigation** is optional, but only **Loss** incurred after such **Securityholder Derivative Demand Investigation** is reported is eligible for coverage under this Coverage Part. If an **Insured** elects to report any **Securityholder Derivative Demand Investigation**, any **Claim** that may subsequently arise out of any reported **Securityholder Derivative Demand Investigation** shall be deemed to have been first made during the **Policy Period** in which such investigation was first reported.

## VII.   OTHER INSURANCE

A. With the exception of insurance written specifically as excess of the Limit of Liability of this Coverage Part, this Coverage Part shall be excess of and shall not contribute with any valid and collectible insurance providing coverage for **Loss** for which this Coverage Part also provides coverage, provided that any payment by an **Insured** of a retention or deductible under any such other insurance shall reduce the applicable Retention under this Coverage Part by the amount of such payment which would otherwise have been **Loss** under this Coverage Part.

B.  This Coverage Part shall also be excess of and shall not contribute with any indemnity provided, and any valid and collectible insurance maintained, by an **Outside Entity** for an **Insured Person** serving in his capacity as such for the **Outside Entity.**

C.  Any personal umbrella excess liability insurance, independent directors liability insurance or any other similar personal liability insurance available to an **Insured** shall be specifically excess of this Coverage Part.

## VIII.  PRIORITY OF PAYMENTS

A.  In the event that **Loss** under Insuring Clause A and any other **Loss** are concurrently due under this Coverage Part, then the **Loss** under Insuring Clause A shall be paid first. In all other instances, the Insurer may pay **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

B.  The coverage provided by this Coverage Part is intended first and foremost for the benefit and protection of **Insured Persons**. In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to United States bankruptcy law:

1.  the **Insureds** hereby agree not to oppose or object to any efforts by the Insurer, the **Company** or an **Insured** to obtain relief from any stay or injunction issued in such proceeding; and

2.  the Insurer shall first pay **Loss** on account of a **Claim** for a **Wrongful Act** occurring prior to the date such liquidation or reorganization proceeding commences, and then pay **Loss** in connection with a **Claim** for a **Wrongful Act** occurring after the date such liquidation or reorganization proceeding commences.

## IX.  SECURITIES OFFERING

If during the **Policy Period**, a **Company** intends a public offering of securities under the Securities Act of 1933 and gives written notice to the Insurer within 30 days of the effective date of the Registration Statement for such offering, together with any additional information requested by the Insurer, the Insurer shall provide the **Company** with a quote for coverage with respect to such offering. Coverage offered pursuant to this quote shall include coverage for **Wrongful Acts** occurring in the course of any "road show" presentation to potential investors or other similar presentation and shall be subject to additional or different terms and conditions and payment of additional premium.

## X.  GLOSSARY

A.  **Claim** means:

1.  with respect to Insuring Clauses A and B, any investigation, evidenced by any written document, including a subpoena, target letter or search warrant, against an **Insured Person** for a **Wrongful Act**; and

2.  with respect to Insuring Clauses A, B and C:

(a)  a written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, mediation, waiving or tolling of a statute of limitations or **Extradition**;

(b)  a civil or criminal proceeding, evidenced by: (i) the service of a complaint or similar pleading in a civil proceeding; or (ii) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

(c)  a formal administrative or regulatory proceeding, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

B.  **Defense Costs** means that part of **Loss** consisting of:

1.  reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in: (a) investigating, defending, opposing or appealing any **Claim** or (b) any **Securityholder Derivative Demand Investigation**; and

2.  the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

C.  **Insured** means any **Company** or **Insured Person**.

D.  **Insured Person** means:

1.  an **Executive**;

2.  an **Employee**, but only with respect to a **Claim**: (a) brought by a securityholder of a **Company** in his capacity as such; or, (b) that is also brought and maintained against an **Insured Person** included in paragraph 1 above; or

3.  a holder of an equivalent position to those included in paragraph 1 above in an **Outside Entity**, while serving at the specific request or direction of the **Company**.

E.  **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1.  compensatory damages;

2.  judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorneys fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3.  pre and post-judgment interest;

4.  **Defense Costs**;

5.  solely with respect to Insuring Clause A, taxes imposed by law upon an **Insured Person** in his capacity as such in connection with any bankruptcy, receivership, conservatorship or liquidation of a **Company**, to the extent such taxes are insurable by law; and

6.  punitive, exemplary or multiplied damages, fines or penalties, if and to the extent that any such damages, fines or penalties are insurable under the law of the jurisdiction most favorable to the insurability of such damages, fines or penalties.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds** or to the **Claim** giving rise to such damages, fines or penalties, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages, fines or penalties are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Coverage Part is construed;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) amount that represents or is substantially equivalent to an increase in consideration paid (or proposed to be paid) by a **Company** in connection with its purchase of any securities and assets;

(d) tax, other than taxes described in paragraph 5 above; or

(e) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

F.  **Outside Entity** means:

1.  any non-profit entity, community chest, fund or foundation; or

2.  any other entity specifically added as an **Outside Entity** by endorsement to this Coverage Part,

that is not a **Company**.

G.  **Professional Services** means services which are performed for others for a fee.

H.  **Securityholder Derivative Demand Investigation** means an investigation by a **Company** to determine whether it is in the best interest of such **Company** to prosecute the claims alleged in a securityholder derivative demand or lawsuit. Where a **Securityholder Derivative Demand Investigation** is initiated because of a lawsuit rather than a demand, any coverage provided for **Defense Costs** on account of such **Securityholder Derivative Demand Investigation** shall in no way limit the coverage otherwise afforded under this Coverage Part to an **Insured** for **Loss** on account of a **Claim**.

J.  **Wrongful Act** means:

1.  any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: (a) an **Insured Person** in his capacity as such; or (b) by a **Company**; or

2.  any other matter claimed against an **Insured Person** solely by reason of serving in his capacity as such.

**POLICY NUMBER: QPL0057435**

QBBP-3007 (05-14)



***The Solution* for Employment Practices Liability
Coverage Part Declarations**

**QBE Insurance Corporation**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office: c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**Item 1:**    Parent Company:    Clyde Companies, Inc.

**Item 2:**    Limit of Liability

$10,000,000 per Claim
$10,000,000 in the aggregate

**Item 3:**    Retention: $100,000 per Claim

**Item 4:**    Pending or Prior Proceedings Date: August 21, 2005



**The Solution** for Employment Practices Liability
Coverage Part

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:

**I.    INSURING CLAUSE**

The Insurer shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made during the **Policy Period**.

**II.   EXCLUSIONS**

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A. Breach of Written Employment Contract - based upon, arising out of or resulting from any breach of any written employment contract or agreement, provided that this Exclusion A shall not apply to: **1. Loss** to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract or agreement; or **2. Defense Costs**;

B. OSHA, Workforce Notification and Labor Relations - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by the Occupational Safety and Health Act, the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act or any similar law; and

C. Workers Compensation, Disability Benefits, Social Security, Unemployment - based upon, arising out of or resulting from any failure to comply with any obligation under any workers compensation, disability benefits, social security or unemployment insurance law;

Exclusions A - C above shall not apply to any **Claim** for **Retaliation**.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1. Exclusion A. Bodily Injury/Property Damage shall not apply to **Loss** for any mental anguish, emotional distress or humiliation when alleged as part of a **Claim** otherwise covered under this Coverage Part; and

2. Exclusion C. ERISA and E. Pollution shall not apply to any **Claim** for **Retaliation**.

**III.  OTHER INSURANCE**

A. With respect to any **Claim** for an **Employment Practices Wrongful Act**, other than that portion of a **Claim** made against a leased or temporary employee or **Independent Contractor**, this Coverage Part shall be primary insurance.

B. With respect to:

1. that portion of any **Claim** made against any leased or temporary employee or **Independent Contractor**; or

2. any **Claim** for a **Third Party Wrongful Act**, where **Loss** is covered under this Coverage Part and other valid and collective insurance,

this Coverage Part shall be specifically excess of and shall not contribute with any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by the Coverage Part), regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

**IV.   COORDINATION OF COVERAGE**

Any **Loss** covered under this Coverage Part and one or more other **Liability Coverage Parts** shall first be covered under this Coverage Part, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** shall be covered under such other **Liability Coverage Part(s)**, subject to its terms, conditions and limitations.

**V.    GLOSSARY**

A. **Benefits** means any payments (including insurance premiums), deferred compensation, perquisites or fringe benefits, in connection with an employee benefit plan and any other payment to or for the benefit of an employee arising out of the employment relationship. However, **Benefits** shall not include salary, wages, bonuses, commissions, **Stock Benefits** or non-deferred cash incentive compensation.

B. **Claim** means any:

1. written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, waiving or tolling of a statute of limitations, reinstatement, reemployment or re-engagement;

2. civil or criminal proceeding, evidenced by: (a) the service of a complaint or similar pleading in a civil proceeding; or (b) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

3. arbitration proceeding pursuant to an employment contract or agreement, policy or practice of a **Company**;

4. administrative, regulatory or tribunal proceeding, other than a labor, grievance or other proceeding under a collective bargaining agreement, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation; or

5. any audit of an **Insured** conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"),

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

C. **Defense Costs** means that part of **Loss** consisting of:

1. reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in investigating, defending, opposing or appealing any **Claim**; or

2. the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

D. **Discrimination** means any violation of any employment discrimination law.

E. **Employment Practices Wrongful Act** means any:

1. breach of any employment contract or agreement or contractual obligation, including any contract or agreement or contractual obligation arising out of any employee handbook, personnel manual, policy statement or other representation;

2. **Discrimination**;

3. **Harassment**;

4. **Retaliation**;

5. **Workplace Tort**; or

6. **Wrongful Employment Decision**,

committed, attempted, or allegedly committed or attempted by an **Insured** while acting in his or its capacity as such.

F. **Harassment** means any:

1. sexual harassment that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, a **Company**; or

2. workplace harassment, including bullying that interferes with performance or creates an intimidating, hostile or offensive working environment within a **Company.**

G. **Independent Contractor** means any natural person working for a **Company** pursuant to a written contract or agreement between such natural person and the **Company** which specifies the terms of the **Company's** engagement of such natural person.

H. **Insured** means any **Company or Insured Person.**

I. **Insured Person** means any:

1. **Executive or Employee**; or

2. **Independent Contractor**, but only if the Company agrees to indemnify the **Independent Contractor** in the same manner as **Employees** for liability arising out of a **Claim.**

J. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1. compensatory damages (including back pay and front pay);

2. judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorney fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3. pre and post-judgment interest;

4. liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family Medical Leave Act or Equal Pay Act;

5. **Defense Costs**; and

6. punitive, exemplary or multiplied damages, if and to the extent that any such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds**, to the **Company**, or to the **Claim** giving rise to such damages, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Coverage Part is construed;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) future salary, wages, commissions, or **Benefits** or other monetary payments of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution of any **Claim**;

(d) salary, wages, commissions, **Benefits** or other monetary payments which constitute severance payments or payments pursuant to a notice period;

(e) **Benefits** due or to become due or the equivalent value of such **Benefits**;

(f) cost associated with providing any accommodation for persons with disabilities or any other status which is protected under any law, including the Americans with Disabilities Act and the Civil Rights Act of 1964;

(g) tax, fine or penalty imposed by law; or

(h) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

K. **Retaliation** means retaliatory treatment against an **Employee** of a **Company** on account of such individual:

1. exercising his or her rights under law, refusing to violate any law or opposing any unlawful practice;

2. having assisted or testified in or cooperated with a proceeding or investigation (including any internal investigation conducted by the **Company's** human resources or legal department) regarding alleged violations of law by the **Insured**;

3. disclosing or threatening to disclose to a superior or any governmental agency any alleged violations of law; or

4. filing any claim against the **Company** under the Federal False Claims Act, Section 806 of the Sarbanes Oxley Act or any other whistleblower law.

L. **Stock Benefits** means any:

1. offering, plan or agreement between a **Company** and any **Employee** which grants stock, warrants, shares or stock options of the **Company** to such **Employee**, including grants of restricted stock, performance stock shares, membership shares or any other compensation or incentive granted in the form of securities of the **Company**; or

2. payment or instrument, the amount or value of which is derived from the value of securities of the **Company**, including stock appreciation rights or phantom stock plans or arrangements.

provided that **Stock Benefits** shall not include amounts claimed under any employee stock ownership plans or employee stock purchase plans.

M. **Third Party** means any natural person who is not an **Insured Person**.

N. **Third Party Wrongful Act** means any sexual harassment, or discrimination based upon status protected under any anti-discrimination law, against a **Third Party** committed, attempted, or allegedly committed or attempted by any **Insured** while acting in his or its capacity as such.

O. **Workplace Tort** means any employment-related:

1. misrepresentation, defamation (including libel and slander), invasion of privacy, wrongful infliction of emotional distress, mental anguish or humiliation; or

2. negligent retention, supervision, hiring or training, failure to provide or enforce consistent employment-related corporate policies and procedures, false imprisonment, negligent evaluation, wrongful discipline or wrongful deprivation of career opportunity,

but only when alleged as part of a **Claim** for any **Wrongful Employment Decision**, breach of employment contract, **Discrimination, Harassment** or **Retaliation**.

P. **Wrongful Act** means an **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

Q. **Wrongful Employment Decision** means any wrongful termination, discharge of employment, demotion, denial of tenure, failure or refusal to employ or promote, or wrongful or negligent employee reference.

**POLICY NUMBER: QPL0057435**

QBBP-3008 (05-14)



**The Solution for Fiduciary Liability
Coverage Part Declarations**

**QBE Insurance Corporation**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office: c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101

THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.

**Item 1:**    Parent Company:    Clyde Companies, Inc.

**Item 2:**    A.  Limit of Liability

$10,000,000 per Claim
$10,000,000 in the aggregate

B.  Voluntary Compliance Program Loss Limit: $100,000

C.  ERISA Civil Penalties Limit: $100,000

D.  HIPAA Privacy Civil Penalties Limit: $100,000

**Item 3:**    Insuring Clause A Retention: $0 per Claim

**Item 4:**    Pending or Prior Proceedings Date: August 21, 2005

 **QBE**

**The Solution for Fiduciary Liability Coverage Part**

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:

## I.    INSURING CLAUSE

A.  The Insurer shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made during the **Policy Period**.

B.  The Insurer shall pay, on behalf of an **Insured**, **Voluntary Compliance Program Loss** first ascertained by or assessed against an **Insured** during the **Policy Period**, provided that the payment of any **Voluntary Compliance Program Loss** under this Coverage Part shall not waive any of the Insurer's rights under this Policy.

## II.    EXCLUSIONS

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A.  Liability Assumed Under Contract - based upon, arising out of or resulting from any liability of others assumed by an **Insured** under any contract or agreement, provided that this Exclusion A shall not apply to **Loss** to the extent that: 1. an **Insured** would have been liable for such **Loss** in the absence of such contract or agreement; or 2. the liability assumed was under the agreement or declaration trust pursuant to which a **Plan** was established; and

B.  Workers Compensation, Disability Benefits, Social Security, Unemployment - based upon, arising out of or resulting from any failure to comply with any obligation under any workers compensation, disability benefits, social security or unemployment insurance law, provided that this Exclusion B shall not apply to any **Wrongful Act** based upon, arising out of or resulting from: 1. COBRA; or 2. HIPAA;

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1.  Exclusion C. ERISA shall not apply to this Coverage Part; and

2.  Exclusion E. Pollution shall not apply to any **Claim**:

    (a)  brought by or on behalf of a participant in, or beneficiary of, any **Sponsored Plan** based upon, arising out of or resulting from the diminution in value of any securities owned by such **Sponsored Plan** in any organization, where such diminution in value is allegedly the result of the matters described in Exclusion E; and

    (b)  for which an **Insured Person** is not indemnified by a **Company** because of such **Company's Financial Impairment**.

## III.    RETENTION

No retention shall apply to any **Voluntary Compliance Program Loss** or **Loss** constituting civil penalties as described in paragraphs 7(b)(iii) and (iv) of the definition of **Loss**.

## IV.    LIMIT OF LIABILITY

A.  The Voluntary Compliance Program Loss Limit stated in Item 2B of the Declarations of this Coverage Part represents the Insurer's maximum liability for all **Voluntary Compliance Program Loss**, including **Defense Costs** related to the assessment or correction of a **Plan's** non-compliance with any **Voluntary Compliance Program**, payable under this Coverage Part during the **Policy Period**.

B.  The ERISA Civil Penalties Limit stated in Item 2C of the Declarations of this Coverage Part represents the Insurer's maximum liability for all civil penalties described in paragraph 7(b)(iii) of the definition of **Loss** ("ERISA Civil Penalties") payable under this Coverage Part during the **Policy Period**.

C.  The HIPAA Privacy Civil Penalties Limit stated in Item 2D of the Declarations of this Coverage Part represents the Insurer's maximum liability for all civil penalties described in paragraph 7(b)(iv) of the definition of **Loss** ("HIPAA Privacy Civil Penalties") payable under this Coverage Part during the **Policy Period**.

All amounts set forth above shall be part of, and not in addition to, the Limit of Liability set forth in Item 2A of the Declarations of this Coverage Part.

## V.   REPORTING

The **Insured** shall notify the Insurer of **Voluntary Compliance Program Loss** as soon as practicable after such **Voluntary Compliance Program Loss** is first ascertained by or assessed against an **Insured**. However, in no event shall any notice be provided later than:

A.   if this Coverage Part expires (or is otherwise terminated) without being renewed with the Insurer, 60 days after the effective date of expiration or termination of this Coverage Part; or

B.   the expiration date of the ERP, if applicable.

## VI.   OTHER INSURANCE

With the exception of insurance which is written specifically as excess of the Limit of Liability of this Coverage Part, this Coverage Part shall be excess of and shall not contribute with any valid and collectible insurance providing coverage for **Loss** for which this Coverage Part provides coverage, provided that any payment by an **Insured** of a retention or deductible under any such other insurance shall reduce the Retention under this Coverage Part by the amount of such payment which would otherwise have been **Loss** under this Coverage Part.

## VII.   PRIORITY OF PAYMENTS

In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to United States bankruptcy law, the Insurer shall first pay **Loss** incurred by an **Insured Person** and the **Plans** and then pay **Loss** incurred by any **Company**.

## VIII.   CHANGES IN A PLAN

A.   If the Pension Benefit Guaranty Corporation ('PBGC') becomes the trustee of a **Plan** before or after the inception date of this Coverage Part, coverage for such **Plan** shall continue until termination of this Coverage Part for those who were **Insureds** at the time the PBGC became the trustee, but only with respect to **Wrongful Acts** which occurred prior to the effective date the PBGC became the trustee; or

B.   If a **Company** terminates a **Plan** before or after the inception date of this Coverage Part, coverage for such **Plan** shall continue until termination of this Coverage Part for those who were **Insureds** at the time of such **Plan** termination or who would have been an **Insured** at the time of such termination if this Coverage Part had been in effect, but only with respect to **Wrongful Acts** which occurred prior to or after the date the **Plan** was terminated.

## IX.   GLOSSARY

A.   **Administration** means advising, counseling, interpreting, providing notice to or handling of records, enrollment, termination or cancellation of, any **Plan** for **Employees, Executives**, participants or beneficiaries.

B.   **Claim** means any:

1.   written notice of commencement of a fact finding investigation by the U.S. Department of Labor ('DOL'), the PBGC or any similar governmental authority located outside of the United States;

2.   written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, mediation or waiving or tolling of a statute of limitations or **Extradition**;

3.   civil or criminal proceeding, evidenced by: (a) the service of a complaint or similar pleading in a civil proceeding; or (b) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; or

4.   formal administrative or regulatory proceeding, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured**.

C.   **Defense Costs** means that part of **Loss** consisting of:

1.   reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in investigating, defending, opposing or appealing any **Claim** or **Voluntary Compliance Program Loss**; or

2.  the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

D.  Insured means any Company, Plan or Insured Person.

E.  Insured Person means any:

1.  Executive of a Company;

2.  Employee of a Company or Sponsored Plan; and

3.  past, present or future natural person trustee of a Sponsored Plan.

F.  Loss means the amount that an Insured becomes legally obligated to pay on account of any Claim including:

1.  compensatory damages;

2.  judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorneys fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3.  pre and post-judgment interest;

4.  Defense Costs;

5.  Voluntary Compliance Program Loss;

6.  punitive, exemplary or multiplied damages, if and to the extent that any such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages; and

7.  the following civil penalties:

(a)  the 5% or less, or 20% or less, civil penalties imposed upon an Insured as a fiduciary under § 502(i) or (l) of ERISA;

(b)  civil penalties imposed:

(i)  by the Pension Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions, the United Kingdom Occupational Pensions Regulatory Authority or the Pensions Regulator, pursuant to the Pension Scheme Act of 1993, the Pensions Act of 1995 and the Pensions Act of 2004; or

(ii)  by Ireland's Pensions Board or Pensions Ombudsman,

provided that any coverage for such civil penalties applies only if the funds or assets of the pension scheme are not used to fund, pay or reimburse the premium for this Coverage Part;

(iii)  upon an Insured as a fiduciary under Section 502(c) of ERISA; or

(iv)  upon an Insured for violation of the privacy provisions of HIPAA.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant Insureds or to the Claim giving rise to such damages, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the Insured) that such damages are insurable under applicable law.

Loss does not include any portion of such amount that constitutes any:

(a)  amount not insurable under the law pursuant to which this Coverage Part is construed;

(b)  cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c)  tax imposed by law;

(d)  fine or penalty imposed by law, other than as described in paragraph 7 above;

(e)  benefits due or would become due under any Plan, including the payment of plaintiffs' attorneys fees as a percentage of such benefits or from a common fund established to pay such benefits, unless:

(i)  such benefits are payable as an Insured Person's personal obligation based upon, arising out of or

resulting from a **Wrongful Act**; or

(ii) a **Claim** alleges a loss to the **Plan** or to the accounts of such **Plan's** participants resulting from a change in the value of **Plan** investments, even where the amounts sought or recovered by the plaintiffs in such **Claim** are described in any way as "benefits"; or

(f) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

G. **Plan** means:

1. any **Sponsored Plan**; and

2. any government mandated workers compensation, disability benefits, social security or unemployment insurance for **Employees** and **Executives**.

H. **Sponsored Plan** means:

1. any employee benefit plan, pension benefit plan or welfare benefit plan, as defined in and subject to **ERISA**, including any **VEBA**, which is operated by a **Company** or a **Company** and a labor organization solely for the benefit of **Employees** or **Executives** of a **Company**; or

2. any other employee benefit plan or program similar to those described in paragraph 1, but which is not subject to **ERISA**, including any fringe benefit or excess benefit plan,

provided that **Sponsored Plan** shall not include any employee stock ownership plan created after inception of the **Policy Period**.

I. **VEBA** means any Voluntary Employees' Beneficiary Associations as defined in Section 501(c)(9) of the Internal Revenue Code of 1986.

J. **Voluntary Compliance Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the Internal Revenue Service or DOL or any other domestic or foreign governmental authority. Such programs include the Employee Plans Compliance Resolution System, Audit Closing Agreement Program, Voluntary Compliance Resolution Program, Walk-in Closing Agreement Program, Administrative Policy Regarding Self-Correction, Tax Sheltered Annuity Voluntary Correspondence Program, Delinquent Filer Voluntary Compliance Program and Voluntary Fiduciary Correction Program.

K. **Voluntary Compliance Program Loss** means fees, fines, penalties or sanctions paid by an **Insured** to a governmental authority under a **Voluntary Compliance Program** for a **Plan's** inadvertent non-compliance with any law. However, **Voluntary Compliance Program Loss** shall not include any costs to correct any non-compliance.

L. **Wrongful Act** means any:

1. actual or alleged breach of the responsibilities, obligations or duties imposed by **ERISA** upon fiduciaries of the **Sponsored Plan**;

2. negligent act, error or omission in the **Administration** of any **Plan** committed, attempted or allegedly committed or attempted by an **Insured** in his or its capacity as such;

3. other matter claimed against an **Insured Person** solely by reason of the **Insured Person's** serving as a fiduciary of a **Sponsored Plan**; or

4. negligent act, error or omission committed, attempted or allegedly committed or attempted by an **Insured Person** in performing any functions identified in ERISA Section 3(21)(A) as not being the functions of a fiduciary, and commonly referred to as "settlor" functions

**POLICY NUMBER: QPL0057435**
**Endorsement Effective Date: August 21, 2017**

QBBPP-2103 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### STATE AMENDATORY INCONSISTENCY ENDORSEMENT

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

It is hereby agreed that in the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any other term or condition of this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of either the state amendatory endorsement or the Policy, whichever are more favorable to the **Insured**.

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER: QPL0057435
Endorsement Effective Date: August 21, 2017                                          QBBP-5120 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### UTAH AMENDATORY ENDORSEMENT

It is hereby agreed that:

I.  Section XIII. **TERMINATION OF POLICY** is amended by the addition of the following:

The Insurer will deliver or mail, by first-class mail, written notice of cancellation to the **Parent Company** at the address set forth in the Declarations of the GTC. The notice shall state the reason for cancellation.

II.  Section XV. **EFFECT OF BANKRUPTCY** is amended by the addition of the following:

If execution against the **Insureds** is returned unsatisfied, an action may be maintained against the Insurer to the extent that such liability is covered under this Policy.

III. This Policy is amended by the addition of the following:

#### NON-RENEWAL

If the Insurer decides not to renew this Policy, then the Insurer will deliver or mail, by first-class mail, written notice of non-renewal to the **Parent Company** at the address set forth in the Declarations of the GTC at least thirty (30) days before the expiration date of the Policy. The notice shall state the reason for non-renewal.

#### RENEWAL

If the Insurer offers to renew the Policy, the Insurer will deliver or mail, by first-class mail, written notice to the **Parent Company** at the address set forth in the Declarations of the GTC not more than forty-five (45) days nor less than fourteen (14) days prior to the due date of the renewal premium. The notice will state the renewal premium, how the renewal premium may be paid, and a statement providing that the failure to pay the renewal premium by the due date extinguishes the **Parent Company's** right to renewal.

If the Insurer offers to renew the Policy on less favorable terms or at higher rates, then the Insurer will deliver or mail, by first-class mail, written notice to the **Parent Company** at the address set forth in the Declarations of the GTC at least thirty (30) days before the expiration date of the Policy. The notice will provide the new terms or rates for the renewal Policy. If the Insurer fails to provide notice of the new terms or rates at least thirty (30) days prior to the expiration date, the new terms or rates shall not take effect until thirty (30) days after the notice is delivered or sent by first-class mail, in which case the **Parent Company** may elect to cancel the renewal Policy at any time during the thirty (30) day period. Return premiums or additional premium charges shall be calculated proportionately based on the existing Policy's rates.

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER: QPL0057435
Endorsement Effective Date: August 21, 2017

QBBP-5122 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### UTAH AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that the definition of **Loss** in paragraph E.6. of Section X. **GLOSSARY** is amended by the addition of the following:

Provided, however, that punitive damages are not insurable in the event this Coverage Part is construed by a court of competent jurisdiction under the laws of the state of Utah.

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER: QPL0057435
Endorsement Effective Date: August 21, 2017                                        QBBP-5117 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UTAH AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that the definition of Loss in paragraph J.6. of Section V. **GLOSSARY** is amended by the addition of the following:

Provided, however, that punitive damages are not insurable in the event this Coverage Part is construed by a court of competent jurisdiction under the laws of the state of Utah.

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER: QPL0057435
Endorsement Effective Date: August 21, 2017                          QBBP-5118 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### UTAH AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

FIDUCIARY LIABILITY COVERAGE PART

It is hereby agreed that the definition of Loss in paragraph F.6. of Section IX. GLOSSARY is amended by the addition of the following:

Provided, however, that punitive damages are not insurable in the event this Coverage Part is construed by a court of competent jurisdiction under the laws of the state of Utah.

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER: QPL0057435
Endorsement Effective Date: August 21, 2017

QBBPP-2223 (10-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMEND DEFINITION OF INSURED PERSON ENDORSEMENT

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that the definition of **Insured Person** in paragraph D. of Section **X. GLOSSARY** is replaced by the following:

D. **Insured Person** means:

1. an **Executive**;

2. an **Employee**; or

3. a holder of an equivalent position to those included in paragraph 1 above in an **Outside Entity**, while serving at the specific request or direction of the **Company**.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0057435**
**Endorsement Effective Date: August 21, 2017**                        QBBPP-2213(09-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROFESSIONAL SERVICES EXCLUSION WITH SECURITYHOLDER CLAIM CARVEBACK

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that Exclusion H. Professional Services in Section II. **EXCLUSIONS** is amended by the addition of the following:

Exclusion H shall not apply to any **Claim** brought by a securityholder of a **Company** against a **Company**. However, in no event shall any coverage be provided for any portion of such **Claim** that is brought by the securityholder in solely his capacity as a client of such **Company**.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0057435**
Endorsement Effective Date: August 21, 2017

QBBPP-2200 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND DEFINITION OF CLAIM TO INCLUDE MEDIATION

This endorsement modifies insurance provided under the following:
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Section **V. GLOSSARY**, paragraph B. **Claim** 1. is amended by the addition of the word "mediation," after the word "arbitration,".

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER: QPL0057435
Endorsement Effective Date: August 21, 2017                                          QBBPP-2219 (10-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EQUAL PAY ACT CARVEBACK ENDORSEMENT

This endorsement modifies insurance provided under the following:
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Exclusion G. Wage and Hour in Section II. EXCLUSIONS of the GTC shall not apply to any Claim
for any violation of the responsibilities, obligations or duties imposed by the Equal Pay Act.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0057435**
**Endorsement Effective Date: August 21, 2017**

QBBPP-2225 (10-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND DEFINITION OF RETALIATION ENDORSEMENT

This endorsement modifies insurance provided under the following:
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that the definition of **Retaliation** in paragraph K. of Section V. **GLOSSARY** is amended by deleting the word **"Employee"** and replacing it with the word **"Insured Person"**.

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER: QPL0057435
Endorsement Effective Date: August 21, 2017                              QBBPP-2158 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PPACA AND PPA CIVIL PENALTIES ENDORSEMENT

This endorsement modifies insurance provided under the following:
FIDUCIARY LIABILITY COVERAGE PART

It is hereby agreed that:

I.  Section III. **RETENTION** is amended by the addition of the following:

No retention shall apply to **Loss** constituting civil penalties imposed upon an **Insured** for inadvertent violation of the Patient Protection and Affordable Care Act ("PPACA") or the Pension Protection Act of 2006 ("PPA").

II.  Section IV. **LIMIT OF LIABILITY** is amended by the addition of the following:

All **Loss** arising from **Claims** alleging inadvertent violations of PPACA or the PPA shall be subject to a sublimit of liability of $50,000, which amount shall be part of, and not in addition to, the Limit of Liability set forth in Item 2 of this Coverage Part.

III.  The definition of **Loss** in paragraph F.7. of Section **IX. GLOSSARY** is amended by the addition of the following:

any civil penalties imposed upon an **Insured** for inadvertent violation of PPACA or the PPA.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0057435**
**Effective Date of Endorsement: August 21, 2017**

QBBPP-2097 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SPECIFIC LITIGATION EXCLUSION

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

FIDUCIARY LIABILITY COVERAGE PART

It is hereby agreed that Section **II. EXCLUSIONS** is amended by the addition of the following:

No coverage shall be provided for any **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of or resulting from any notice, litigation, investigation, prosecution, adjudication, or proceeding described below ("Litigation").

David Slack et al / claim #100-25-570 / claim date 8/21/2013

All other terms and conditions of this Policy remain unchanged.

/

POLICY NUMBER: QPL0057435
Endorsement Effective Date: August 21, 2017                                    QBPD-6000 (02-15)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

It is hereby agreed that:

I.   This Policy is amended by the addition of the following:

If aggregate insured losses attributable to a **Certified Act of Terrorism** under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

II.  Solely for the purposes of this endorsement, this Policy is amended by the addition of the following:

**Certified Act of Terrorism** means an act that is certified by the Secretary of Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act., to be an act of terrorism. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:
1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

III. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any **Loss** that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

# EXHIBIT B

**QBE.**

QBE North America
55 Water Street
New York, NY 10041

1

May 19, 2021

**VIA EMAIL (bhale@clydeinc.com)**

Brandon Hale
Clyde Companies, Inc.

Re:     Raul Guzman and Fuani Neal-De Guzman v. OshKosh Commercial Products, et al.
        U.S.D.C. for the District of Utah
        Case No.: 2:18-cv-00843

| | |
|---|---|
| Insured: | Clyde Companies, Inc. |
| Claimant: | Raul Guzman, et al. |
| Insuring Company: | QBE Insurance Corporation |
| QBE Policy: | QPL0057435 |
| QBE Claim: | 802897N |

Dear Mr. Hale:

On behalf of QBE Insurance Corporation ("QBE"), this letter serves to confirm receipt on April 21, 2021, of the above referenced complaint (the "Complaint") filed on December 6, 2018. This letter is provided as our initial coverage position based upon the current allegations contained in the Complaint. Nothing contained in this letter is to suggest that the allegations have any factual or legal merit.

As you are aware, I am the claims professional handling this claim, and that all future correspondence should be directed to my attention. If you are not the appropriate individual to whom this letter should be addressed, please advise us immediately.

**For the reasons discussed below, we must inform you that the Policy does not provide coverage for the claims made against the Insured in the Complaint.**

In considering the request for coverage, we have reviewed the Policy, the allegations made in the Complaint, and the information available to us. **The Policy's relevant terms are quoted herein for convenient review.** Kindly refer to the Policy for its complete terms and conditions.

## THE POLICY

QBE issued Policy no. QPL0057435 (the "Policy") to Clyde Companies, Inc. ("Clyde"), effective for the Policy Period of August 21, 2017 to August 21, 2018.[1] The Employment Practices Liability Coverage Part has a Limit of Liability of $10,000,000 per Claim and in the Aggregate subject to a

---

[1] The Policy expired on August 21, 2018 and was not renewed.

Retention of $100,000 per Claim. The Limit of Liability and the Retention are both inclusive of Defense Costs and indemnity payments.

## THE COMPLAINT

According to the Complaint, the Plaintiff is a former employee of Defendant Geneva Rock Products, Inc. ("GRP") until his purported constructive discharge based on disability discrimination.    Causes of action against GRP include: 1) Assault and Battery; 2) Intentional Infliction of Emotional Distress; 3) Intentional Interference with Economic Relations; and 4) Workplace Discrimination and Constructive Discharge.

## COVERAGE ANALYSIS

We call your attention to the scope of coverage afforded under the Policy as set forth in Section I. of the Employment Practices Liability ("EPL") Coverage Part, which provides, in relevant part:

### I.    INSURING CLAUSE

The Insurer shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made during the **Policy Period**.

Next, we call your attention to Section V. of the EPL Coverage Part, which defines Claim[2], among other things, as a civil complaint against an Insured for a Wrongful Act. Additionally, the definition of Wrongful Act includes Employment Practices Wrongful, which in turn includes: Wrongful Employment Decision; Discrimination.

## CONCLUSION

The Claim in this matter was first made on about December 6, 2018, which is subsequent to the expiration of the Policy Period on August 21, 2018. Accordingly, the Insuring Clause is not triggered and therefore the Policy will not respond to this matter. QBE need not cite any additional provisions including but not limited to Exclusion II. A. (Bodily Injury/Property Damage) of the General Terms and Conditions of the Policy but fully reserves its right to do so.

QBE's coverage position is based on the information presently available to us. Neither this letter nor QBE's investigation is or should be construed as a waiver of any terms, conditions, exclusions or other provisions of the Policy or any other policies of insurance issued by QBE or any other QBE North America member company. QBE expressly reserves all of its rights under the Policy, at law, and in equity, including, but not limited to, the right to assert additional defenses to any claims for coverage and to modify its coverage position if subsequent information indicates that such action is warranted.

If you have any other insurance policies that may respond to this claim, you should notify those carriers immediately.

---

[2] As amended by Endorsement in Form QBBPP-2200 (05-14).

3

Please feel free to contact me with any questions or concerns regarding the contents of this letter. You can reach me at (212) 805-9882 or Gabriel.Speciale@us.qbe.com.  Thank you for your cooperation in this matter.

Sincerely,

/s/ *Gabriel M. Speciale*
Gabriel M. Speciale
Senior Claims Technical Specialist
QBE North America


cc:    dmarchant@beehiveinsurance.com



QBE North America
55 Water Street
New York, NY 10041

May 19, 2021

**VIA EMAIL (bhale@clydeinc.com)**

Brandon Hale
Clyde Companies, Inc.

Re:     Oghenetega Emuveyan v. Steve Ewing, et al.
        Third District Court, Salt Lake County, Utah
        Case No.: unknown

|                    |                              |
|--------------------|------------------------------|
| Insured:           | Clyde Companies, Inc.        |
| Claimant:          | Oghenetega Emuveyan          |
| Insuring Company:  | QBE Insurance Corporation    |
| QBE Policy:        | QPL0057435                   |
| QBE Claim:         | 802739N                      |

Dear Mr. Hale:

On behalf of QBE Insurance Corporation ("QBE"), this letter serves to confirm receipt on April 21, 2021, of the above referenced complaint (the "Complaint") filed on or about June 19, 2020. This letter is provided as our initial coverage position based upon the current allegations contained in the Complaint. Nothing contained in this letter is to suggest that the allegations have any factual or legal merit.

As you are aware, I am the claims professional handling this claim, and that all future correspondence should be directed to my attention. If you are not the appropriate individual to whom this letter should be addressed, please advise us immediately.

**For the reasons discussed below, we must inform you that the Policy does not provide coverage for the claims made against the Insured in the Complaint.**

In considering the request for coverage, we have reviewed the Policy, the allegations made in the Complaint, and the information available to us. **The Policy's relevant terms are quoted herein for convenient review.** Kindly refer to the Policy for its complete terms and conditions.

## THE POLICY

QBE issued Policy no. QPL0057435 (the "Policy") to Clyde Companies, Inc. ("Clyde"), effective for the Policy Period of August 21, 2017 to August 21, 2018.[1]  The Employment Practices Liability Coverage Part has a Limit of Liability of $10,000,000 per Claim and in the Aggregate subject to a

---

[1] The Policy expired on August 21, 2018 and was not renewed.

Retention of $100,000 per Claim. The Limit of Liability and the Retention are both inclusive of Defense Costs and indemnity payments.

## THE COMPLAINT

According to the Complaint, the Plaintiff is a former employee of Clyde and/or co-Defendant Geneva Rock Products, Inc. Causes of action include: 1) Discrimination in Violation of Title VII; 2) Discrimination in Violation of §1981; 3) Retaliation in Violation of §1981; 4) Breach of Contract; and 5) Breach of Duty of Good Faith and Fair Dealing.

Attached to the Complaint as an exhibit is a Right to Sue from the EEOC dated March 19, 2019, regarding the discrimination claims.

## COVERAGE ANALYSIS

We call your attention to the scope of coverage afforded under the Policy as set forth in Section I. of the Employment Practices Liability ("EPL") Coverage Part, which provides, in relevant part:

### I.    INSURING CLAUSE

> The Insurer shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made during the **Policy Period**.

Next, we call your attention to Section V. of the EPL Coverage Part, which defines Claim[2], among other things, as an administrative proceeding as well as a civil complaint against an Insured for a Wrongful Act.   Additionally, the definition of Wrongful Act includes Employment Practices Wrongful, which in turn includes: breach of any employment contract; Discrimination.

Section VII. of the General Terms and Conditions ("GTC") of the Policy, provides:

> All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either first made or deemed to have been first made in according with Section V. REPORTING above.

## CONCLUSION

The Claim in this matter would have been first made on or about March 19, 2019, which is subsequent to the expiration of the Policy Period on August 21, 2018. Accordingly, the Insuring Clause is not triggered and therefore the Policy will not respond to this matter.

QBE's coverage position is based on the information presently available to us. Neither this letter nor QBE's investigation is or should be construed as a waiver of any terms, conditions, exclusions or other provisions of the Policy or any other policies of insurance issued by QBE or any other QBE North America member company. QBE expressly reserves all of its rights under the Policy, at law, and in equity, including, but not limited to, the right to assert additional defenses to any claims for coverage and to modify its coverage position if subsequent information indicates that such action is warranted.

---

[2] As amended by Endorsement in Form QBBPP-2200 (05-14).

3

If you have any other insurance policies that may respond to this claim, you should notify those carriers immediately.

Please feel free to contact me with any questions or concerns regarding the contents of this letter. You can reach me at (212) 805-9882 or Gabriel.Speciale@us.qbe.com. Thank you for your cooperation in this matter.

Sincerely,

/s/ *Gabriel M. Speciale*
Gabriel M. Speciale
Senior Claims Technical Specialist
QBE North America

cc:    dsnow@beehiveinsurance.com

# EXHIBIT C

| From: | Alan Bradshaw |
| Sent: | Wednesday, June 2, 2021 4:46 PM |
| To: | 'Gabriel.Speciale@us.qbe.com' |
| Cc: | 'dsnow@beehiveinsurance.com'; 'Brandon Hale' |
| Subject: | Clyde Companies/Emuveyan Your Claim Number 802739N |
| Attachments: | 20210602162502189 (20210602162502189.pdf;1).pdf |

Mr. Speciale,

This firm has been retained as insurance coverage counsel for the Clyde Companies. Thank
you for your May 19, 2021 communication regarding the above claim. In that communication
you state that the Emuveyan claim was first made on March 19, 2019. Attached, however, is
the January 3, 2018 Charge of Discrimination filed by Emuveyan with the Department of Labor
(EEOC) and the Utah Labor Commission and the January 4, 2018 Notice letter from the
DOL/Utah including notice of mediation. These communications meet the definition of
"Claim" under the Policy (including the endorsement 2200 noted in your letter) which includes
for purposes of the Employment Practices Liability Coverage Part the following: "written
demand for monetary or non-monetary (including injunctive) relief, including
[mediation]." Please reconsider the denial sent in light of the mediation notice. Thank you.

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

1



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIRBY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

January 4, 2018

Howard Watts
730 N 1500 W
Po Box 1599
Orem UT 84059

Re: Oghenetega Emuveyan v. Geneva Rock Products Inc
UALD No. B8-0152

Dear Mr. Watts:

Enclosed you will find a copy of a Charge of Discrimination which has been filed against your company. A copy of this charge has been forwarded to the EEOC and is also recognized as a charge filed under its federal jurisdiction. Because of this, the Charge may be waived to the EEOC for processing. If it is waived, the Division will notify you.

An investigator will be assigned to the case at a later date. In the meantime, please contact Waiva Roberts at wroberts@utah.gov if you have any questions.

**Response/Position Statement:** Pursuant to the Utah Rule of Administrative Procedure 606-1-3, you must answer the allegations in the Charge of Discrimination. You must provide an answer, even with a Mediation being scheduled. Be advised that your Response will be sent to the Charging Party. Your answer should be received by the Division no later than 30 calendar days of this notice. Pursuant to R606-1-3C(3), the Response must (a) specifically address each allegation raised in the request for agency action (the charge) and (b) be accompanied by supporting evidence. **If you have any questions relating to this case, please contact** Waiva Roberts at wroberts@utah.gov.

**Request for Information:** In addition to the charge we have also enclosed a Request for Information. Please provide the documents requested in addition to your response to Waiva Roberts at wroberts@utah.gov within 30 calendar days of the date of this letter and under separate cover.

**Mediation:** The Division is required by law under Utah Code Ann. §34A-5-107(3) to attempt settlement between the parties. Therefore, we have scheduled a Mediation with you, the Charging party, and a UALD Mediator. **The Mediation will be held at the Heber M. Wells Building, 160 East 300 South, (Third Floor) Salt Lake City, Utah, on February 5, 2018 at 2:30 PM.** This is a free service that the Division provides to the parties.

**Mediation attendance:** **Please confirm your attendance by email to Sydney Deyoung at** sdeyoung@utah.gov. **One or both parties may attend by phone where they are not located in the Salt Lake City area. You may also reach Sydney by phone at (801) 530-6006. Rescheduling Mediation:** If

you need to reschedule the Mediation, please promptly (preferably by email) inform Sydney of your request to reschedule and your email address so she can respond back to you with the soonest available day for a rescheduled time. Normally, Mediation is scheduled for 9:30 AM or 2:30 PM.

If either party does not wish to mediate, we will notify you and continue to investigate the charge in the order in which it was received by the Investigator. Please note that even if the parties do agree to Mediation, they must still provide the position statement, and Responses to Requests for Information as requested by the Division on the dates due.

**Translation Services:** The Division does NOT provide translation services. You need to bring your own interpreter to the Mediation. La division no ofrece servicios de traduccion. Usted necesita traer su propio interprete a la Mediacion.

**Records:** Utah Rule of Administrative Procedure 606-6-2(c) requires that you preserve all personnel records relevant to the complaint and to the Charging Party until the case is over. This rule also requires you to keep copies of all personnel actions for at least six months following the action, whether or not a complaint has been filed. Please be advised that you may be subject to other record keeping requirements and that this rule is specific to the state's administrative processing of complaints and record keeping requirements.

**Retaliation:** State and federal law make it illegal for employers to retaliate against anyone for filing a complaint, testifying, assisting, or participating in any manner in any investigation, proceeding, or hearing associated with filing this complaint or asserting any right protected under the Utah Antidiscrimination Act and applicable federal laws.

**Legal Representative:** You must notify the Division in writing if you choose to have a lawyer represent your company in this matter.

**Americans with Disabilities Act Notice:** In compliance with the Americans with Disabilities Act, persons needing auxiliary communicative aids or services, or other reasonable accommodations, should give the Division at least three working days notice.

Sincerely,

Kendra L. Shirey
Director

Enclosures:
Notice of Charge (EEOC Form 131A)
Charge of Employment Discrimination
Request for Information and Mediation Fact Sheets
Mediation Assignment Form

## MEDIATION FACT SHEET

**What is Mediation?**

* A voluntary and informal way to resolve a complaint of discrimination
* A process in which a neutral third party can assist you to resolve your dispute
* Helps to foster the rebuilding of a damaged relationship
* Provides the you an uninterrupted opportunity to present you point of view

**Why the Parties Should Participate in Mediation**

* The Mediation is <u>free</u> to you as part of the services the Division provides.
* You <u>do not</u> need to be represented by attorneys (but you may choose to be if you wish)
* <u>Both</u> parties must agree to mediate
* A successful mediation will result in an agreement between the parties or a request to withdraw the underlying charge
* The Mediation is confidential and will not have any impact on the case if it is subsequently investigated
* The Mediator is neutral and is there to help you reach a resolution of the matter
* You can tailor a creative solution to your dispute
* You can resolve the conflict in an informal and cost-effective manner

**The Duties of the Mediator**

* Empowers you by assisting in problem solving, brainstorming and mutual understanding.
* Helps you clarify the issues raised in the Charge
* Helps you find common ground to resolve the matter
* Encourages cooperation and respect in an informal, creative and respectful atmosphere

**The Duties of the Parties**

* Come to the Mediation in good faith and with an open mind
* Be willing to listen and consider all aspect of the issues
* Be an active participant in the mediation

**The Steps During the Mediation**

* One or both parties may attend by phone where they are not located in the Salt Lake City area.
* The Mediation may take between 2 – 3 hours
* The Mediator will listen to each side together and then speak to you separately
* If your case is not resolved, it will be investigated by an Investigator assigned     to your case, generally in the order that it was filed with the UALD

## REQUEST FOR INFORMATION FROM RESPONDENT
UALD No. B8-0152 & EEOC No. 35C-2018-00152

his form contains a list of information the Division needs to complete its investigation.

**Instructions:**

1. Send the information requested in this form separately from the Response to the Charge.
2. Complete this form, marking only one box for each piece of information needed.
3. If you mark "Not Provided," then please also provide a written explanation.
4. You must complete the subparts to the question.
5. **Within 30 days of the date of this Request, send a completed electronic copy of this form to Waiva Roberts at wroberts@utah.gov OR you may send a hardcopy of the documents and information requested below by U.S. mail.**

**Requests:**

1. Please provide the following information regarding your business identification and status:
   a. If you are a corporation, please indicate the name stated in the current articles of incorporation and the address of the principal place of business.
   b. If you are a limited liability company, please indicate the name stated in the current articles of organization and the address of the principal place of business.
   c. If the site of the discriminatory act(s) in the charge is a "dba", please provide the name of the corporation, limited liability company, joint venture, and/or partnership of which the site is part of.
   ☐ **Provided**
   ☐ **Not Provided, Reason:** _____

2. Please provide the name and contact information (including email) of the individual from Respondent the Division can contact to schedule interviews of witnesses and parties that are or have been employed by you.

_____
_____

3. All documents relating to any disciplinary actions taken by Respondent against Charging Party in the past five years. For example: verbal and written warnings, counseling/coaching, performance improvement plans and including termination.
   ☐ **Provided**
   ☐ **Not Provided, Reason:** _____

4. A copy of Charging Party's job description at the time he/she left their employment and at the time you received this charge of discrimination. If Charging Party is currently employed, the job description as of the date of this request.
   ☐ **Provided**
   ☐ **Not Provided, Reason:** _____

5. Respondent's policies and procedures for discrimination, harassment, retaliation, discipline and termination.
   ☐ **Provided**
   ☐ **Not Provided, Reason:** _____

6. An organizational chart or list of individuals for the location and shift where Charging Party worked including the names of his/her supervisors, managers and coworkers.

    * For each person listed, you must provide their current and/or last known contact information (including address, email and **phone number**)

    *You are only required to provide this information for the date Charging Party last worked for Respondent and the date that you received this charge of discrimination.

    * If you do not have an organizational chart, you still must require the information as noted above.

    □ **Provided**

    □ **Not Provided, Reason:** _____

7. All documents that explain the reason(s) why Charging Party is no longer employed by Respondent. (If Charging Party is still employed by Respondent you do not need to answer this question.)

    □ **Provided**

    □ **Not Provided, Reason:** _____

8. All documents that relate to any complaints made by Charging Party to Respondent and/or its human resources department about any type of discrimination, harassment or unfair treatment.

    □ **Provided**

    □ **Not Provided, Reason:** _____

9. If Respondent investigated any of the complaints noted in Question 7, please provide the investigation.

    □ **Provided**

    □ **Not Provided, Reason:** _____

10. If Charging Party was terminated, a list of all employees who were terminated under similar circumstances as him/her three months prior to Charging Party's termination and three months after Charging Party's termination.

    In compiling this list of employees, please indicate

    a.   race, national origin, gender, religion, date of birth and disability.

    b.   job title of the individual terminated

    c.   name of terminated employees supervisor

    d.   name of employee who made decision to terminate the employee

    e.   reason given to employee for termination.

    □ **Provided**

    □ **Not Provided, Reason:** _____

11. If Charging Party was written up or placed on any type of "performance improvement plan", a list of all employees who were terminated under similar circumstances as him/her three months prior to Charging Party's termination and three months after Charging Party's termination.

    In compiling this list of employees, please indicate the protected classes of these individuals:

    a.   race, color, national origin, gender, religion, date of birth and disability (if applicable)

    b.   job title of the individual disciplined

    c.   name of terminated employees supervisor

    □ **Provided**

    □ **Not Provided, Reason:** _____

12. Provide the name of the person(s) that has the most information/knowledge regarding each of the following:

    a.    Charging Party's work performance and disciplinary actions;

    b.    Charging Party's employment separation; and

    c.    Charging Party's complaints of discrimination or harassment.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

13. If Charging Party is alleging disability discrimination, all documents that relate to any impairments he/she has brought to the attention of Respondent, or of which Respondent is otherwise aware, and any actions taken by Respondent to accommodate these impairments.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

\*\*\* **Remember that this information must be provided to the Division within 30 days from the date of this letter.** If you have any questions about the requests, please contact the Case Manager, David E Jensen – (801) 530-6434 or davidjensen@utah.gov.

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSON | PERS    LING CHARGE |
|---|---|
| | Emuveyan, Oghenetega |
| | THIS PERSON (check one) |
| | ☒ CLAIMS TO BE AGGRIEVED |
| Geneva Rock Products Inc | ☐ IS FILING ON BEHALF OF ANOTHER |
| 1565 W 400 N | DATE OF ALLEGED VIOLATION |
| Orem UT 84057 | Earliest / Most Recent 12/07/2017 |
| | PLACE OF ALLEGED VIOLATION |
| | Orem, UT |
| | EEOC CHARGE NUMBER |
| | 35C-2018-00152 |
| | FEPA CHARGE NUMBER |
| | B8-0152 |

**NOTICE OF CHARGE OF DISCRIMINATION** IN JURISDICTIONS WHERE A FEP AGENCY WILL INITIALLY PROCESS

(See attached information sheet for additional information)

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

☒ Title VII of the Civil Rights Act of 1964

☐ The Age Discrimination in Employment Act of 1967 (ADEA)

☐ The Americans with Disabilities Act

HAS BEEN RECEIVED BY

☐ The EEOC and sent for initial processing to _____

(FEP Agency)

☒ The Utah Antidiscrimination Division   and sent to the EEOC for dual filing purposes.
(FEP Agency)

While EEOC has jurisdiction (upon the expiration of any deferral requirement if this is a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to wheter or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission! This likelihood is increased by your active cooperation with the Agency.

☒ As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained in the "EEOC Rules and Regulations" apply.

For further correspondence on this matter, please use the charge number(s) shown.

| | |
|---|---|
| ☐ | An Equal Pay Act investigation (29 U.S.C. 206(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge. |
| ☒ | Enclosure: Copy of Charge |

**BASIS OF DISCRIMINATION**

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NAT. ORIGIN ☐ AGE ☐ DISABILITY ☒ RETALIATION

**CIRCUMSTANCES OF ALLEGED VIOLATION**

See enclosed Form 5, Charge of Discrimination.

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| 1/4/2018 | Kendra L. Shirey, Director | |

EEOC FORM 131-A (Rev. 08/92)

# CHARGE OF DISCRIMINATION

Utah Anti-Discrimination and Labor Division / EEOC

RECEIVED

JAN 0 3 2018

ANTIDISCRIMINATION

UALD No: **B8 - 0152**

EEOC No. **35C - 2018 - 00152**

| NAME *(Indicate Mr. Ms., Mrs.)* | | HOME TELEPHONE *(Include Area Code)* |
|---|---|---|
| Oghenetega Emuveyan | | (801) 471-8009 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 2761 S Spring Meadow Dr, Saratoga Springs UT 84045 | | Apr 14, 1985 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE,
STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Geneva Rock Products Inc | | (801) 225-1012 |

| STREET ADDRESS | | COUNTY |
|---|---|---|
| 1565 W 400 N, Orem UT 84057 | | Utah |

| NAME | STREET ADDRESS | |
|---|---|---|
| Geneva Rock Products | 302 W 5400 S, Murray UT 84107 | |

| CAUSE OF DISCRIMINATION BASED ON | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NATIONAL ORIGIN | EARLIEST          LATEST |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY | 12/07/2017 |
| ☐ GENDER IDENTITY ☐ SEXUAL ORIENTATION ☐ RELIGIOUS LIBERTY PROTECTION ☐ | CONTINUING ACTION |

THE PARTICULARS ARE    *(If additional space is needed, attach extra sheet(s)):*

I was hired on February 24, 2014, to work as Ready Mix Concrete Driver. I am a Black African an I have been subjected to Discrimination and Retaliation after I complained to HR.

The Plant Manager, who is not of my protected class, has subjected me to Harassment and Discrimination based on my national origin and race, almost on a daily basis I was subjected to verbal abuse, micromanaged and high scrutiny. Other employees not of my protected class were not treated this way.

I believe that I suffered retaliation after I complained to the Human Resources Manager on October 4, 2017. I reported to the HR manager that I was being targeted, micromanaged and singled out. The plant manager threatened to fire me in our first conversation after the HR Manager called him in. He said, "I have been here for 40yrs and I have seen drivers come and go and you will not be the first. You can go to HR all you want at the end of the day you still got to do your damn job." My harassment by the Plant Manager, co-workers and customers made the company and job sites a hostile work environment.

The harassment was happening almost on a daily basis, making it hard to perform. I felt that I was treated differently from others that were not of my protected class. On December 7, 2017, the Plant Manager kept his promise and fired me. I believe his action was a retaliation because of my protected activity (HR complaint) I also believe that my race and national origin played a significant role in this wrongful termination. I requested a reason for my termination but he refused to give me any discharge paperwork or separation contract.

I believe I was harassed and discriminated against because of my race and national origin. I also believe I been subjected to unlawful retaliation and the acts of this employer are in violation of Title VII of the Civil Rights Act of 1964 and the Utah Antidiscrimination Act of 1965, both as amended.

I understand this charge will be filed with both the EEOC and the State or local Agency, if any, unless jurisdictional issues dictate otherwise. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY

State of Utah        )
                     ) ss.
County of Salt Lake  )

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF CHARGING PARTY

X _____

SUBSCRIBED AND SWORN/AFFIRMED TO ME ON THIS 3rd DAY OF
January 2018 by Oghenetega A Emuveyan
*(Charging Party)*

6-29-2020
My Commission Expires

NOTARY PUBLIC
SYDNEY DEYOUNG
Commission No. 688736
Commission Expires
JUNE 29, 2020
STATE OF UTAH



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIRBY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

January 4, 2018

Geneva Rock Products Inc
1565 W 400 N
Orem UT 84057

Re: Oghenetega Emuveyan v. Geneva Rock Products Inc
UALD No. B8-0152

To Whom It May Concern:

Enclosed you will find a copy of a Charge of Discrimination which has been filed against your company. A copy of this charge has been forwarded to the EEOC and is also recognized as a charge filed under its federal jurisdiction. Because of this, the Charge may be waived to the EEOC for processing. If it is waived, the Division will notify you.

**An investigator will be assigned to the case at a later date.** In the meantime, please contact Waiva Roberts at wroberts@utah.gov if you have any questions.

**Response/Position Statement:** Pursuant to the Utah Rule of Administrative Procedure 606-1-3, you must answer the allegations in the Charge of Discrimination. You must provide an answer, even with a Mediation being scheduled. Be advised that your Response will be sent to the Charging Party. Your answer should be received by the Division no later than 30 calendar days of this notice. Pursuant to R606-1-3C(3), the Response must (a) specifically address each allegation raised in the request for agency action (the charge) and (b) be accompanied by supporting evidence. **If you have any questions relating to this case, please contact** Waiva Roberts at wroberts@utah.gov.

**Request for Information:** In addition to the charge we have also enclosed a Request for Information. Please provide the documents requested in addition to your response to Waiva Roberts at wroberts@utah.gov within 30 calendar days of the date of this letter and under separate cover.

**Mediation:** The Division is required by law under Utah Code Ann. §34A-5-107(3) to attempt settlement between the parties. Therefore, we have scheduled a Mediation with you, the Charging party, and a UALD Mediator. **The Mediation will be held at the Heber M. Wells Building, 160 East 300 South, (Third Floor) Salt Lake City, Utah, on February 5, 2018 at 2:30 PM.** This is a free service that the Division provides to the parties.

**Mediation attendance:**    Please confirm your attendance by email to Sydney Deyoung at sdeyoung@utah.gov. One or both parties may attend by phone where they are not located in the Salt Lake City area. You may also reach Sydney by phone at (801) 530-6006. **Rescheduling Mediation: If** you need to reschedule the Mediation, please promptly (preferably by email) inform Sydney of your

request to reschedule and your email address so she can respond back to you with the soonest available day for a rescheduled time. Normally, Mediation is scheduled for 9:30 AM or 2:30 PM.

either party does not wish to mediate, we will notify you and continue to investigate the charge in the order in which it was received by the Investigator. Please note that even if the parties do agree to Mediation, they must still provide the position statement, and Responses to Requests for Information as requested by the Division on the dates due.

**Translation Services: The Division does NOT provide translation services. You need to bring your own interpreter to the Mediation. La division no ofrece servicios de traduccion. Usted necesita traer su propio interprete a la Mediacion.**

**Records:** Utah Rule of Administrative Procedure 606-6-2(c) requires that you preserve all personnel records relevant to the complaint and to the Charging Party until the case is over. This rule also requires you to keep copies of all personnel actions for at least six months following the action, whether or not a complaint has been filed. Please be advised that you may be subject to other record keeping requirements and that this rule is specific to the state's administrative processing of complaints and record keeping requirements.

**Retaliation:** State and federal law make it illegal for employers to retaliate against anyone for filing a complaint, testifying, assisting, or participating in any manner in any investigation, proceeding, or hearing associated with filing this complaint or asserting any right protected under the Utah Antidiscrimination Act and applicable federal laws.

**Legal Representative:** You must notify the Division in writing if you choose to have a lawyer represent your company in this matter.

**Americans with Disabilities Act Notice:** In compliance with the Americans with Disabilities Act, persons needing auxiliary communicative aids or services, or other reasonable accommodations, should give the Division at least three working days notice.

Sincerely,

Kendra L. Shirey
Director

Enclosures:
Notice of Charge (EEOC Form 131A)
Charge of Employment Discrimination
Request for Information and Mediation Fact Sheets
Mediation Assignment Form

## MEDIATION FACT SHEET

### Vhat is Mediation?

* A voluntary and informal way to resolve a complaint of discrimination
* A process in which a neutral third party can assist you to resolve your dispute
* Helps to foster the rebuilding of a damaged relationship
* Provides the you an uninterrupted opportunity to present you point of view

### Why the Parties Should Participate in Mediation

* The Mediation is free to you as part of the services the Division provides.
* You do not need to be represented by attorneys (but you may choose to be if you wish)
* Both parties must agree to mediate
* A successful mediation will result in an agreement between the parties or a request to withdraw the underlying charge
* The Mediation is confidential and will not have any impact on the case if it is subsequently investigated
* The Mediator is neutral and is there to help you reach a resolution of the matter
* You can tailor a creative solution to your dispute
* You can resolve the conflict in an informal and cost-effective manner

### The Duties of the Mediator

* Empowers you by assisting in problem solving, brainstorming and mutual understanding.
* Helps you clarify the issues raised in the Charge
* Helps you find common ground to resolve the matter
* Encourages cooperation and respect in an informal, creative and respectful atmosphere

### The Duties of the Parties

* Come to the Mediation in good faith and with an open mind
* Be willing to listen and consider all aspect of the issues
* Be an active participant in the mediation

### The Steps During the Mediation

* One or both parties may attend by phone where they are not located in the Salt Lake City area.
* The Mediation may take between 2 – 3 hours
* The Mediator will listen to each side together and then speak to you separately
* If your case is not resolved, it will be investigated by an Investigator assigned     to your case, generally in the order that it was filed with the UALD

## REQUEST FOR INFORMATION FROM RESPONDENT
UALD No. B8-0152 & EEOC No. 35C-2018-00152

This form contains a list of information the Division needs to complete its investigation.

**Instructions:**

1. Send the information requested in this form separately from the Response to the Charge.
2. Complete this form, marking only one box for each piece of information needed.
3. If you mark "Not Provided," then please also provide a written explanation.
4. You must complete the subparts to the question.
5. **Within 30 days of the date of this Request, send a completed electronic copy of this form to Waiva Roberts at wroberts@utah.gov OR you may send a hardcopy of the documents and information requested below by U.S. mail.**

**Requests:**

1. Please provide the following information regarding your business identification and status:
   a.  If you are a corporation, please indicate the name stated in the current
       articles of incorporation and the address of the principal place of business.
   b.  If you are a limited liability company, please indicate the name stated in the current articles of organization and the address of the principal place of business.
   c.  If the site of the discriminatory act(s) in the charge is a "dba", please provide the name of the corporation, limited liability company, joint venture, and/or partnership of which the site is part of.
   
   ☐ **Provided**
   ☐ **Not Provided, Reason:** _____

2. Please provide the name and contact information (including email) of the individual from Respondent the Division can contact to schedule interviews of witnesses and parties that are or have been employed by you.

   _____
   _____

3. All documents relating to any disciplinary actions taken by Respondent against Charging Party in the past five years. For example, verbal and written warnings, counseling/coaching, performance improvement plans and including termination.

   ☐ **Provided**
   ☐ **Not Provided, Reason:** _____

4. A copy of Charging Party's job description at the time he/she left their employment and at the time you received this charge of discrimination. If Charging Party is currently employed, the job description as of the date of this request.

   ☐ **Provided**
   ☐ **Not Provided, Reason:** _____

5. Respondent's policies and procedures for discrimination, harassment, retaliation, discipline and termination.

   ☐ **Provided**
   ☐ **Not Provided, Reason:** _____

6. An organizational chart or list of individuals for the location and shift where Charging Party worked
including the names of his/her supervisors, managers and coworkers.
    * For each person listed, you must provide their current and/or last known contact information
    (including address, email and phone number)
    *You are only required to provide this information for the  date Charging Party last worked for
    Respondent and the date that you received this charge of discrimination.
    * If you do not have an organizational chart, you still must require the information as noted above.
    ☐ Provided
    ☐ Not Provided, Reason: _____

7. All documents that explain the reason(s) why Charging Party is no longer employed by Respondent. (If
Charging Party is still employed by Respondent you do not need to answer this question.)
    ☐ Provided
    ☐ Not Provided, Reason: _____

8. All documents that relate to any complaints made by Charging Party to Respondent and/or its human
resources department about any type of discrimination, harassment or unfair treatment.
    ☐ Provided
    ☐ Not Provided, Reason: _____

9. If Respondent investigated any of the complaints noted in Question 7, please provide the investigation.
    ☐ Provided
    ☐ Not Provided, Reason: _____

10. If Charging Party was terminated, a list of all employees who were terminated under similar
circumstances as him/her three months prior to Charging Party's termination and three months after Charging
Party's termination.
    In compiling this list of employees, please indicate
    a.    race, national origin, gender, religion, date of birth and disability.
    b.    job title of the individual terminated
    c.    name of terminated employees supervisor
    d.    name of employee who made decision to terminate the employee
    e.    reason given to employee for termination.
    ☐ Provided
    ☐ Not Provided, Reason: _____

11. If Charging Party was written up or placed on any type of "performance improvement plan", a list of all
employees who were terminated under similar circumstances as him/her three months prior to Charging
Party's termination and three months after Charging Party's termination.
    In compiling this list of employees, please indicate the protected classes of these  individuals:
    a.    race, color, national origin, gender, religion, date of birth and disability (if applicable)
    b.    job title of the individual disciplined
    c.    name of terminated employees supervisor
    ☐ Provided
    ☐ Not Provided, Reason: _____

12. Provide the name of the person(s) that has the most information/knowledge regarding each of the following:

    a.    Charging Party's work performance and disciplinary actions;

    b.    Charging Party's employment separation; and

    c.    Charging Party's complaints of discrimination or harassment.

☐ **Provided**

☐ **Not Provided, Reason:** _____

13. If Charging Party is alleging disability discrimination, all documents that relate to any impairments he/she has brought to the attention of Respondent, or of which Respondent is otherwise aware, and any actions taken by Respondent to accommodate these impairments.

☐ **Provided**

☐ **Not Provided, Reason:** _____

\*\*\* **Remember that this information must be provided to the Division within 30 days from the date of this letter.** If you have any questions about the requests, please contact the Case Manager, David E Jensen – (801) 530-6434 or davidjensen@utah.gov.

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSON

Geneva Rock Products Inc
1565 W 400 N
Orem UT 84057

| PERS ___ ING CHARGE |
| --- |
| Emuveyan, Oghenetega |

THIS PERSON (check one)

☒ CLAIMS TO BE AGGRIEVED

☐ IS FILING ON BEHALF OF ANOTHER

| DATE OF ALLEGED VIOLATION | |
| --- | --- |
| Earliest | Most Recent |
| | 12/07/2017 |

PLACE OF ALLEGED VIOLATION
Orem, UT

EEOC CHARGE NUMBER
35C-2018-00152

FEPA CHARGE NUMBER
B8-0152

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTIONS WHERE A FEP AGENCY WILL INITIALLY PROCESS
(See attached Information sheet for additional information)

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

☒ Title VII of the Civil Rights Act of 1964

☐ The Age Discrimination in Employment Act of 1967 (ADEA)

☐ The Americans with Disabilities Act

HAS BEEN RECEIVED BY

☐ The EEOC and sent for initial processing to _____
(FEP Agency)

☒ The _Utah Antidiscrimination Division_   and sent to the EEOC for dual filing purposes.
(FEP Agency)

While EEOC has jurisdiction (upon the expiration of any deferral requirement if this is a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to wheter or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the CommissionI This likelihood is increased by your active cooperation with the Agency.

☒ As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained in the "EEOC Rules and Regulations" apply.

For further correspondence on this matter, please use the charge number(s) shown.

☐ An Equal Pay Act investigation (29 U.S.C. 206(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

☒ Enclosure: Copy of Charge

BASIS OF DISCRIMINATION

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NAT. ORIGIN ☐ AGE ☐ DISABILITY ☒ RETALIATION

CIRCUMSTANCES OF ALLEGED VIOLATION

See enclosed Form 5, Charge of Discrimination.

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
| --- | --- | --- |
| 1/4/2018 | Kendra L. Shirey, Director | *Kendra L Shirey* |

EEOC FORM 131-A (Rev. 08/92)

## CHARGE OF DISCRIMINATION

Utah Anti-Discrimination & Labor Division and EEOC

**RECEIVED**

**JAN 0 3 2018**

**ANTIDISCRIMINATION AND LABOR COMMISSION**

UALD No: **B8 - 0152**

EEOC No: **35C - 2018 - 00152**

| NAME (Indicate Mr, Ms, Mrs) | | HOME TELEPHONE (Include Area Code) |
|---|---|---|
| Oghenetega Emuveyan | | (801) 471-6009 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 2761 S Spring Meadow Dr, Saratoga Springs UT 84045 | | Apr 14, 1985 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE,
STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME    (If more than one list below.)

| NAME | | TELEPHONE (Include Area Code) |
|---|---|---|
| Geneva Rock Products Inc | | (801) 225-1012 |

| STREET ADDRESS | | COUNTY |
|---|---|---|
| 1565 W 400 N, Orem UT 84057 | | Utah |

| NAME | STREET ADDRESS | |
|---|---|---|
| Geneva Rock Products | 302 W 5400 S, Murray UT 84107 | |

| CAUSE OF DISCRIMINATION BASED ON | | | DATE DISCRIMINATION TOOK PLACE | |
|---|---|---|---|---|
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION ☒ NATIONAL ORIGIN | | | EARLIEST | LATEST |
| ☒ RETALIATION   ☐ AGE   ☐ DISABILITY | | | | 12/07/2017 |
| ☐ GENDER IDENTITY  ☐ SEXUAL ORIENTATION   ☐ RELIGIOUS LIBERTY PROTECTION ☐ | | | CONTINUING ACTION | |

THE PARTICULARS ARE    (If additional space is needed, attach extra sheets(s)):

I was hired on February 24, 2014, to work as Ready Mix Concrete Driver, I am a Black African an I have been subjected to Discrimination and Retaliation after I complained to HR.

The Plant Manager, who is not of my protected class, has subjected me to Harassment and Discrimination based on my national origin and race, almost on a daily basis I was subjected to verbal abuse, micromanaged and high scrutiny. Other employees not of my protected class were not treated this way.

I believe that I suffered retaliation after I complained to the Human Resources Manager on October 4, 2017. I reported to the HR manager that I was being targeted, micromanaged and singled out. The plant manager threatened to fire me in our first conversation after the HR Manager called him in. He said, "I have been here for 40yrs and I have seen drivers come and go and you will not be the first. You can go to HR all you want at the end of the day you still got to do your damn job." My harassment by the Plant Manager, co-workers and customers made the company and job sites a hostile work environment.

The harassment was happening almost on a daily basis, making it hard to perform, I felt that I was treated differently from others that were not of my protected class. On December 7, 2017, the Plant Manager kept his promise and fired me. I believe his action was a retaliation because of my protected activity (HR complaint) I also believe that my race and national origin played a significant role in this wrongful termination. I requested a reason for my termination but he refused to give me any discharge paperwork or separation contract.

I believe I was harassed and discriminated against because of my race and national origin, I also believe I been subjected to unlawful retaliation and the acts of this employer are in violation of Title VII of the Civil Rights Act of 1964 and the Utah Antidiscrimination Act of 1965, both as amended.

| I understand this charge will be filed with both the EEOC and the State or local Agency, if any, unless jurisdictional issues dictate otherwise. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY<br>State of Utah    )<br>                        ) ss.<br>County of **SALT LAKE** )<br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF CHARGING PARTY |
|---|---|

SUBSCRIBED AND SWORN/AFFIRMED TO ME ON THIS **3rd** DAY OF
_January 2018_ by Oghenetega Emuveyan
(Charging Party)

My Commission Expires **6-29-2020**

NOTARY PUBLIC
SYDNEY DEYOUNG
Commission No. 688736
Commission Expires
JUNE 29, 2020
STATE OF UTAH

| From: | Alan Bradshaw |
|---|---|
| **Sent:** | Wednesday, June 2, 2021 4:46 PM |
| **To:** | 'Gabriel.Speciale@us.qbe.com' |
| **Cc:** | 'dsnow@beehiveinsurance.com'; 'Brandon Hale' |
| **Subject:** | Clyde Companies/Guzman Your Claim Number 802897N |
| **Attachments:** | 20210602162428719 (20210602162428719.pdf;1).pdf |

Mr. Speciale,

This firm has been retained as insurance coverage counsel for the Clyde Companies. Thank you for your May 19, 2021 communication regarding the above claim. In that communication you state that the Guzman claim was first made on December 6, 2018. Attached, however, is the December 15, 2017 Charge of Discrimination filed by Guzman with the Department of Labor (EEOC) and the Utah Labor Commission and the December 18, 2017 Notice letter from the DOL/Utah including notice of mediation. These communications meet the definition of "Claim" under the Policy (including the endorsement 2200 noted in your letter) which includes for purposes of the Employment Practices Liability Coverage Part the following: "written demand for monetary or non-monetary (including injunctive) relief, including [mediation]." Please reconsider the denial sent in light of the mediation notice. Thank you.

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com



**Labor Commission**
JACKSON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

December 18, 2017

Geneva Rock Products Inc
730 N 1500 W
Orem UT 84057

Re: Raul Guzman v. Geneva Rock Products Inc
UALD No. B8-0131

To Whom It May Concern:

Enclosed you will find a copy of a Charge of Discrimination which has been filed against your company. A copy of this charge has been forwarded to the EEOC and is also recognized as a charge filed under its federal jurisdiction. Because of this, the Charge may be waived to the EEOC for processing. If it is waived, the Division will notify you.

<u>An investigator will be assigned to the case at a later date.</u> In the meantime, please contact Connie Zaccheo at czaccheo@utah.gov if you have any questions.

**Response/Position Statement:** Pursuant to the Utah Rule of Administrative Procedure 606-1-3, you must answer the allegations in the Charge of Discrimination. You must provide an answer, even with a Mediation being scheduled. Be advised that your Response will be sent to the Charging Party. <u>Your answer should be received by the Division no later than 30 calendar days of this notice.</u> Pursuant to R606-1-3C(3), the Response must (a) specifically address each allegation raised in the request for agency action (the charge) and (b) be accompanied by supporting evidence. **If you have any questions relating to this case, please contact** Connie Zaccheo at czaccheo@utah.gov.

**Request for Information:** In addition to the charge we have also enclosed a Request for Information. Please provide the documents requested in addition to your response to Connie Zaccheo at czaccheo@utah.gov <u>within 30 calendar days</u> of the date of this letter and under separate cover.

**Mediation:** The Division is required by law under Utah Code Ann. §34A-5-107(3) to attempt settlement between the parties. Therefore, we have scheduled a Mediation with you, the Charging party, and a UALD Mediator. **The Mediation will be held at the Heber M. Wells Building, 160 East 300 South, (Third Floor) Salt Lake City, Utah, on January 22, 2018 at 9:30 AM.** This is a free service that the Division provides to the parties.

**Mediation attendance:**    Please confirm your attendance by email to Sydney Deyoung at sdeyoung@utah.gov. One or both parties may attend by phone where they are not located in the Salt Lake City area. You may also reach Sydney by phone at (801) 530-6006. <u>Rescheduling Mediation:</u> If you need to reschedule the Mediation, please promptly (preferably by email) inform Sydney of your

request to reschedule and your email address so she can respond back to you with the soonest available day for a rescheduled time. Normally, Mediation is scheduled for 9:30 AM or 2:30 PM.

If either party does not wish to mediate, we will notify you and continue to investigate the charge in the order in which it was received by the Investigator. Please note that even if the parties do agree to Mediation, they must still provide the position statement, and Responses to Requests for Information as requested by the Division on the dates due.

**Translation Services: The Division does NOT provide translation services. You need to bring your own interpreter to the Mediation. La division no ofrece servicios de traduccion. Usted necesita traer su propio interprete a la Mediacion.**

**Records:** Utah Rule of Administrative Procedure 606-6-2(c) requires that you preserve all personnel records relevant to the complaint and to the Charging Party until the case is over. This rule also requires you to keep copies of all personnel actions for at least six months following the action, whether or not a complaint has been filed. Please be advised that you may be subject to other record keeping requirements and that this rule is specific to the state's administrative processing of complaints and record keeping requirements.

**Retaliation:** State and federal law make it illegal for employers to retaliate against anyone for filing a complaint, testifying, assisting, or participating in any manner in any investigation, proceeding, or hearing associated with filing this complaint or asserting any right protected under the Utah Antidiscrimination Act and applicable federal laws.

**Legal Representative:** You must notify the Division in writing if you choose to have a lawyer represent your company in this matter.

**Americans with Disabilities Act Notice:** In compliance with the Americans with Disabilities Act, persons needing auxiliary communicative aids or services, or other reasonable accommodations, should give the Division at least three working days notice.

Sincerely,

Kendra L. Shirey
Director

Enclosures:
Notice of Charge (EEOC Form 131A)
Charge of Employment Discrimination
Request for Information and Mediation Fact Sheets
Mediation Assignment Form

## MEDIATION FACT SHEET

### What is Mediation?

*   A voluntary and informal way to resolve a complaint of discrimination
*   A process in which a neutral third party can assist you to resolve your dispute
*   Helps to foster the rebuilding of a damaged relationship
*   Provides the you an uninterrupted opportunity to present you point of view

### Why the Parties Should Participate in Mediation

*   The Mediation is <u>free</u> to you as part of the services the Division provides.
*   You <u>do not</u> need to be represented by attorneys (but you may choose to be if you wish)
*   <u>Both</u> parties must agree to mediate
*   A successful mediation will result in an agreement between the parties or a request to withdraw the underlying charge
*   The Mediation is confidential and will not have any impact on the case if it is subsequently investigated
*   The Mediator is neutral and is there to help you reach a resolution of the matter
*   You can tailor a creative solution to your dispute
*   You can resolve the conflict in an informal and cost-effective manner

### The Duties of the Mediator

*   Empowers you by assisting in problem solving, brainstorming and mutual understanding.
*   Helps you clarify the issues raised in the Charge
*   Helps you find common ground to resolve the matter
*   Encourages cooperation and respect in an informal, creative and respectful atmosphere

### The Duties of the Parties

*   Come to the Mediation in good faith and with an open mind
*   Be willing to listen and consider all aspect of the issues
*   Be an active participant in the mediation

### The Steps During the Mediation

*   One or both parties may attend by phone where they are not located in the Salt Lake City area.
*   The Mediation may take between 2 – 3 hours
*   The Mediator will listen to each side together and then speak to you separately
*   If your case is not resolved, it will be investigated by an Investigator assigned    to your case, generally in the order that it was filed with the UALD

## REQUEST FOR INFORMATION FROM RESPONDENT
UALD No. B8-0131 & EEOC No. 35C-2018-00131

This form contains a list of information the Division needs to complete its investigation.

### Instructions:

1.  Send the information requested in this form separately from the Response to the Charge.
2.  Complete this form, marking only one box for each piece of information needed.
3.  If you mark "Not Provided," then please also provide a written explanation.
4.  You must complete the subparts to the question.
5.  **Within 30 days of the date of this Request, send a completed electronic copy of this form to Connie Zaccheo at czaccheo@utah.gov OR you may send a hardcopy of the documents and information requested below by U.S. mail.**

### Requests:

1.  Please provide the following information regarding your business identification and status:
    a.  If you are a corporation, please indicate the name stated in the current articles of incorporation and the address of the principal place of business.
    b.  If you are a limited liability company, please indicate the name stated in the current articles of organization and the address of the principal place of business.
    c.  If the site of the discriminatory act(s) in the charge is a "dba", please provide the name of the corporation, limited liability company, joint venture, and/or partnership of which the site is part of.

    ☐ Provided
    ☐ Not Provided, Reason: _____

2. Please provide the name and contact information (including email) of the individual from Respondent the Division can contact to schedule interviews of witnesses and parties that are or have been employed by you.

_____
_____

3. All documents relating to any disciplinary actions taken by Respondent against Charging Party in the past five years. For example: verbal and written warnings, counseling/coaching, performance improvement plans and including termination.

    ☐ Provided
    ☐ Not Provided, Reason: _____

4. A copy of Charging Party's job description at the time he/she left their employment and at the time you received this charge of discrimination. If Charging Party is currently employed, the job description as of the date of this request.

    ☐ Provided

☐ **Not Provided, Reason:** _____

5. Respondent's policies and procedures for discrimination, harassment, retaliation, discipline and termination.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

6. An organizational chart or list of individuals for the location and shift where Charging Party worked including the names of his/her supervisors, managers and coworkers.

    \* For each person listed, you must provide their current and/or last known contact information (including address, email and phone number)

    \*You are only required to provide this information for the  date Charging Party last worked for Respondent and the date that you received this charge of discrimination.

    \* If you do not have an organizational chart, you still must require the information as noted above.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

7. All documents that explain the reason(s) why Charging Party is no longer employed by Respondent. (If Charging Party is still employed by Respondent you do not need to answer this question.)

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

8. All documents that relate to any complaints made by Charging Party to Respondent and/or its human resources department about any type of discrimination, harassment or unfair treatment.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

9. If Respondent investigated any of the complaints noted in Question 7, please provide the investigation.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

10. If Charging Party was terminated, a list of all employees who were terminated under similar circumstances as him/her three months prior to Charging Party's termination and three months after Charging Party's termination.

    In compiling this list of employees, please indicate

    a.    race, national origin, gender, religion, date of birth and disability.

    b.    job title of the individual terminated

    c.    name of terminated employees supervisor

    d.    name of employee who made decision to terminate the employee

    e.    reason given to employee for termination.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

11. If Charging Party was written up or placed on any type of "performance improvement plan", a list of all employees who were terminated under similar circumstances as him/her three months prior to Charging Party's termination and three months after Charging Party's termination.

    In compiling this list of employees, please indicate the protected classes of these   individuals:

    a.    race, color, national origin, gender, religion, date of birth and disability (if applicable)

    b.    job title of the individual disciplined

    c.    name of terminated employees supervisor

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

12. Provide the name of the person(s) that has the most information/knowledge regarding each of the following:

    a.    Charging Party's work performance and disciplinary actions;

    b.    Charging Party's employment separation; and

    c.    Charging Party's complaints of discrimination or harassment.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

13. If Charging Party is alleging disability discrimination, all documents that relate to any impairments he/she has brought to the attention of Respondent, or of which Respondent is otherwise aware, and any actions taken by Respondent to accommodate these impairments.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

\*\*\* **Remember that this information must be provided to the Division within 30 days from the date of this letter.** If you have any questions about the requests, please contact the Case Manager, David E Jensen – (801) 530-6434 or davidjensen@utah.gov.

| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSON** | **PERSON FILING CHARGE** |
|---|---|
| | Guzman, Raul |

**THIS PERSON (check one)**

☒ CLAIMS TO BE AGGRIEVED

☐ IS FILING ON BEHALF OF ANOTHER

| | **DATE OF ALLEGED VIOLATION** | |
|---|---|---|
| Geneva Rock Products Inc | Earliest | Most Recent |
| 730 N 1500 W | | 10/20/2017 |
| Orem UT 84057 | | |

**PLACE OF ALLEGED VIOLATION**

Orem, UT

**EEOC CHARGE NUMBER**

35C-2018-00131

**FEPA CHARGE NUMBER**

B8-0131

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTIONS WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See attached information sheet for additional information)*

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

☒ Title VII of the Civil Rights Act of 1964

☐ The Age Discrimination in Employment Act of 1967 (ADEA)

☒ The Americans with Disabilities Act

HAS BEEN RECEIVED BY

☐ The EEOC and sent for initial processing to _____
                                                              *(FEP Agency)*

☒ The <u>Utah Antidiscrimination Division</u>   and sent to the EEOC for dual filing purposes.
      *(FEP Agency)*

While EEOC has jurisdiction (upon the expiration of any deferral requirement if this is a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission! This likelihood is increased by your active cooperation with the Agency.

☒ As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained in the "EEOC Rules and Regulations" apply.

For further correspondence on this matter, please use the charge number(s) shown.

☐ An Equal Pay Act investigation (29 U.S.C. 206(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

☒ Enclosure: Copy of Charge

**BASIS OF DISCRIMINATION**

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NAT. ORIGIN ☐ AGE ☒ DISABILITY ☒ RETALIATION

**CIRCUMSTANCES OF ALLEGED VIOLATION**

See enclosed Form 5, Charge of Discrimination.

| **DATE** | **TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL** | **SIGNATURE** |
|---|---|---|
| 12/18/2017 | Kendra L. Shirey, Director | |

EEOC FORM 131-A (Rev. 06/92)

## CHARGE OF DISCRIMINATION

of 2  CP's Initials _____

Utah Anti-Discrimination Labor Division & EEOC    UALD No. BB- 0131
RECEIVED    EEOC No: 35C-2018-00 131

| N____ (Indicate Mr., Mrs., Mrs.) | | HOME TELEPHONE (Include Area Code) |
|---|---|---|
| P____ Guzman | DEC 15 2017 | (801) 898-4131 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | ANTIDISCRIMINATION | DATE OF BIRTH |
|---|---|---|---|
| 5463 W Starflower Way, West Jordan UT 84081 | | AND LABOR COMMISSION | May 09, 1962 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE,
STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME    (If more than one list below )

| NAME | TELEPHONE (Include Area Code) |
|---|---|
| Geneva Rock Products Inc | (801) 281-7900 |

| STREET ADDRESS | COUNTY |
|---|---|
| 730 N 1500 W, Orem UT 84057 | Utah |

| NAME | STREET ADDRESS |
|---|---|
| Geneva Rock Products Inc | 302 W 5400 S 200, Inc, Murray UT 84107 |

CAUSE OF DISCRIMINATION BASED ON

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY
[ ] GENDER IDENTITY  [ ] SEXUAL ORIENTATION  [ ] RELIGIOUS LIBERTY PROTECTION  [ ]

DATE DISCRIMINATION TOOK PLACE
EARLIEST                LATEST
                        10/20/2017
CONTINUING ACTION

THE PARTICULARS ARE    (If additional space is needed, attach extra sheet(s)):

I was hired on March 28, 2001, to work as Mixer Truck Driver. I am a disabled Hispanic of Mexican origin and I have been subject to discrimination based on my disability, race and national origin.

Since August 2015, I reported to my supervisor verbally and in writing on my post-trip inspection report the aggravation of an old back injury by a defective truck seat on my assigned truck. I requested modification be made to the defective seat. My employer felt my request unjustified and limited himself to listen to my complaints. I continued working in an unsatisfactory conditions for about 17 months after which something was finally done to remediate the problem on my truck seat. By then, [ ] dition had worsened to the point that I could not continue working. In October 2016, I presented the rec___mendations made by my doctor. I explained and provided information to my employer and was granted medical leave to take care of my disability. After returning from the medical leave, I was able to perform my job, in spite of the chronic pain, only on my assigned truck due to the modifications done to the seat.

In April 2017, there was a schedule policy change that affected my work days and changed my work week schedule. I was forced to work Saturdays in order to complete my weekly hours. This made my work environment more challenging due to the fact that I did not have access to my assigned truck for Saturday work in the other facilities. Throughout this period, I repeatedly requested from my supervisor reasonable accommodations in order to be able to perform my job without further injury to my back. I suggested different options to enable me to fulfill my job duties as a driver including an exception that would allow me to use my assigned truck in the other facilities and was repeatedly denied. On October 20, 2017, There was a misunderstanding and I was scheduled to work in another facility. When I spoke to the dispatcher about my inability to fulfill that job, she became hostile towards me over the phone and aggressively agreed to remove my name from Saturday's schedule. I spoke to my supervisor over the phone and explained the situation and was met with hostility from him as well. He would not make any exceptions. I felt pushed into a resignation by this situation and my supervisor readily accepted it over the phone. I felt that I was retaliated against after opposing the hostile work environment and my employer's intention to ignore my disability, race and national origin to be the determining factors in my termination on October 20, 2017.

I do believe I have been harassed and discriminated against based on my disability, race and national origin. I also believe that the acts of my employer are in violation of the Americans with Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964 and the Utah Antidiscrimination Act of 1965, both as amended.



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

December 18, 2017

Howard Watts
730 N 1500 W
Po Box 1599
Orem UT 84059

Re: Raul Guzman v. Geneva Rock Products Inc
UALD No. B8-0131

Dear Mr. Watts:

Enclosed you will find a copy of a Charge of Discrimination which has been filed against your company. A copy of this charge has been forwarded to the EEOC and is also recognized as a charge filed under its federal jurisdiction. Because of this, the Charge may be waived to the EEOC for processing. If it is waived, the Division will notify you.

<u>An investigator will be assigned to the case at a later date.</u> In the meantime, please contact Connie Zaccheo at czaccheo@utah.gov if you have any questions.

**Response/Position Statement:** Pursuant to the Utah Rule of Administrative Procedure 606-1-3, you must answer the allegations in the Charge of Discrimination. You must provide an answer, even with a Mediation being scheduled. Be advised that your Response will be sent to the Charging Party. <u>Your answer should be received by the Division no later than 30 calendar days of this notice.</u> Pursuant to R606-1-3C(3), the Response must (a) specifically address each allegation raised in the request for agency action (the charge) and (b) be accompanied by supporting evidence. **If you have any questions relating to this case, please contact** Connie Zaccheo at czaccheo@utah.gov.

**Request for Information:** In addition to the charge we have also enclosed a Request for Information. Please provide the documents requested <u>in addition to your response</u> to Connie Zaccheo at czaccheo@utah.gov <u>within 30 calendar days</u> of the date of this letter and under separate cover.

**Mediation:** The Division is required by law under Utah Code Ann. §34A-5-107(3) to attempt settlement between the parties. Therefore, we have scheduled a Mediation with you, the Charging party, and a UALD Mediator. **The Mediation will be held at the Heber M. Wells Building, 160 East 300 South, (Third Floor) Salt Lake City, Utah, on January 22, 2018 at 9:30 AM.** This is a free service that the Division provides to the parties.

<u>Mediation attendance</u>: **Please confirm your attendance by email to Sydney Deyoung at** sdeyoung@utah.gov. **One or both parties may attend by phone where they are not located in the Salt Lake City area. You may also reach Sydney by phone at (801) 530-6006.** <u>Rescheduling Mediation:</u> **If**

you need to reschedule the Mediation, please promptly (preferably by email) inform Sydney of your request to reschedule and your email address so she can respond back to you with the soonest available day for a rescheduled time. Normally, Mediation is scheduled for 9:30 AM or 2:30 PM.

If either party does not wish to mediate, we will notify you and continue to investigate the charge in the order in which it was received by the Investigator. Please note that even if the parties do agree to Mediation, they must still provide the position statement, and Responses to Requests for Information as requested by the Division on the dates due.

**Translation Services:** **The Division does NOT provide translation services.** **You need to bring your own interpreter to the Mediation.** **La division no ofrece servicios de traduccion.** **Usted necesita traer su propio interprete a la Mediacion.**

**Records:** Utah Rule of Administrative Procedure 606-6-2(e) requires that you preserve all personnel records relevant to the complaint and to the Charging Party until the case is over. This rule also requires you to keep copies of all personnel actions for at least six months following the action, whether or not a complaint has been filed. Please be advised that you may be subject to other record keeping requirements and that this rule is specific to the state's administrative processing of complaints and record keeping requirements.

**Retaliation:** State and federal law make it illegal for employers to retaliate against anyone for filing a complaint, testifying, assisting, or participating in any manner in any investigation, proceeding, or hearing associated with filing this complaint or asserting any right protected under the Utah Antidiscrimination Act and applicable federal laws.

**Legal Representative:** You must notify the Division in writing if you choose to have a lawyer represent your company in this matter.

**Americans with Disabilities Act Notice:** In compliance with the Americans with Disabilities Act, persons needing auxiliary communicative aids or services, or other reasonable accommodations, should give the Division at least three working days notice.

Sincerely,

Kendra L. Shirey
Director

Enclosures:
Notice of Charge (EEOC Form 131A)
Charge of Employment Discrimination
Request for Information and Mediation Fact Sheets
Mediation Assignment Form

## MEDIATION FACT SHEET

**What is Mediation?**

*   A voluntary and informal way to resolve a complaint of discrimination
*   A process in which a neutral third party can assist you to resolve your dispute
*   Helps to foster the rebuilding of a damaged relationship
*   Provides the you an uninterrupted opportunity to present you point of view

**Why the Parties Should Participate in Mediation**

*   The Mediation is free to you as part of the services the Division provides.
*   You do not need to be represented by attorneys (but you may choose to be if you wish)
*   Both parties must agree to mediate
*   A successful mediation will result in an agreement between the parties or a request to withdraw the underlying charge
*   The Mediation is confidential and will not have any impact on the case if it is subsequently investigated
*   The Mediator is neutral and is there to help you reach a resolution of the matter
*   You can tailor a creative solution to your dispute
*   You can resolve the conflict in an informal and cost-effective manner

**The Duties of the Mediator**

*   Empowers you by assisting in problem solving, brainstorming and mutual understanding.
*   Helps you clarify the issues raised in the Charge
*   Helps you find common ground to resolve the matter
*   Encourages cooperation and respect in an informal, creative and respectful atmosphere

**The Duties of the Parties**

*   Come to the Mediation in good faith and with an open mind
*   Be willing to listen and consider all aspect of the issues
*   Be an active participant in the mediation

**The Steps During the Mediation**

*   One or both parties may attend by phone where they are not located in the Salt Lake City area.
*   The Mediation may take between 2 – 3 hours
*   The Mediator will listen to each side together and then speak to you separately
*   If your case is not resolved, it will be investigated by an Investigator assigned    to your case, generally in the order that it was filed with the UALD

## REQUEST FOR INFORMATION FROM RESPONDENT
UALD No. B8-0131 & EEOC No. 35C-2018-00131

This form contains a list of information the Division needs to complete its investigation.

**Instructions:**

1. Send the information requested in this form separately from the Response to the Charge.
2. Complete this form, marking only one box for each piece of information needed.
3. If you mark "Not Provided," then please also provide a written explanation.
4. You must complete the subparts to the question.
5. Within 30 days of the date of this Request, send a completed electronic copy of this form to Connie Zaccheo at czaccheo@utah.gov OR you may send a hardcopy of the documents and information requested below by U.S. mail.

**Requests:**

1. Please provide the following information regarding your business identification and status:
   a. If you are a corporation, please indicate the name stated in the current articles of incorporation and the address of the principal place of business.
   b. If you are a limited liability company, please indicate the name stated in the current articles of organization and the address of the principal place of business.
   c. If the site of the discriminatory act(s) in the charge is a "dba", please provide the name of the corporation, limited liability company, joint venture, and/or partnership of which the site is part of.

   ☐ Provided

   ☐ Not Provided, Reason: _____

2. Please provide the name and contact information (including email) of the individual from Respondent the Division can contact to schedule interviews of witnesses and parties that are or have been employed by you.

   _____
   _____

3. All documents relating to any disciplinary actions taken by Respondent against Charging Party in the past five years. For example; verbal and written warnings, counseling/coaching, performance improvement plans and including termination.

   ☐ Provided

   ☐ Not Provided, Reason: _____

4. A copy of Charging Party's job description at the time he/she left their employment and at the time you received this charge of discrimination. If Charging Party is currently employed, the job description as of the date of this request.

   ☐ Provided

☐ Not Provided, Reason: _____

5. Respondent's policies and procedures for discrimination, harassment, retaliation, discipline and termination.

    ☐ Provided

    ☐ Not Provided, Reason: _____

6. An organizational chart or list of individuals for the location and shift where Charging Party worked including the names of his/her supervisors, managers and coworkers.

    * For each person listed, you must provide their current and/or last known contact information (including address, email and phone number)

    *You are only required to provide this information for the date Charging Party last worked for Respondent and the date that you received this charge of discrimination.

    *If you do not have an organizational chart, you still must require the information as noted above.

    ☐ Provided

    ☐ Not Provided, Reason: _____

7. All documents that explain the reason(s) why Charging Party is no longer employed by Respondent. (If Charging Party is still employed by Respondent you do not need to answer this question.)

    ☐ Provided

    ☐ Not Provided, Reason: _____

8. All documents that relate to any complaints made by Charging Party to Respondent and/or its human resources department about any type of discrimination, harassment or unfair treatment.

    ☐ Provided

    ☐ Not Provided, Reason: _____

9. If Respondent investigated any of the complaints noted in Question 7, please provide the investigation.

    ☐ Provided

    ☐ Not Provided, Reason: _____

10. If Charging Party was terminated, a list of all employees who were terminated under similar circumstances as him/her three months prior to Charging Party's termination and three months after Charging Party's termination.

    In compiling this list of employees, please indicate

    a.    race, national origin, gender, religion, date of birth and disability.

    b.    job title of the individual terminated

    c,    name of terminated employees supervisor

    d.    name of employee who made decision to terminate the employee

    e.    reason given to employee for termination.

    ☐ Provided

    ☐ Not Provided, Reason: _____

11. If Charging Party was written up or placed on any type of "performance improvement plan", a list of all employees who were terminated under similar circumstances as him/her three months prior to Charging Party's termination and three months after Charging Party's termination.

    In compiling this list of employees, please indicate the protected classes of these   individuals:

    a.    race, color, national origin, gender, religion, date of birth and disability (if applicable)

    b.    job title of the individual disciplined

    c.    name of terminated employees supervisor

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

12. Provide the name of the person(s) that has the most information/knowledge regarding each of the following:

    a.    Charging Party's work performance and disciplinary actions;

    b.    Charging Party's employment separation; and

    c.    Charging Party's complaints of discrimination or harassment.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

13. If Charging Party is alleging disability discrimination, all documents that relate to any impairments he/she has brought to the attention of Respondent, or of which Respondent is otherwise aware, and any actions taken by Respondent to accommodate these impairments.

    ☐ **Provided**

    ☐ **Not Provided, Reason:** _____

\*\*\* **Remember that this information must be provided to the Division within 30 days from the date of this letter.** If you have any questions about the requests, please contact the Case Manager, David E Jensen – (801) 530-6434 or davidjensen@utah.gov.

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSON | PERSON FILING CHARGE |
|---|---|
| | Guzman, Raul |

| | THIS PERSON (check one) |
|---|---|
| Geneva Rock Products Inc | ☒ CLAIMS TO BE AGGRIEVED |
| 730 N 1500 W. . | ☐ IS FILING ON BEHALF OF ANOTHER |
| Orem UT 84057 | DATE OF ALLEGED VIOLATION |
| | Earliest     Most Recent |
| | 10/20/2017 |
| | PLACE OF ALLEGED VIOLATION |
| | Orem, UT |
| | EEOC CHARGE NUMBER |
| | 35C-2018-00131 |
| | FEPA CHARGE NUMBER |
| | B8-0131 |

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTIONS WHERE A FEP AGENCY WILL INITIALLY PROCESS

*(See attached information sheet for additional information)*

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

☒ Title VII of the Civil Rights Act of 1964

☐ The Age Discrimination In Employment Act of 1967 (ADEA)

☒ The Americans with Disabilities Act

HAS BEEN RECEIVED BY

☐ The EEOC and sent for initial processing to _____

*(FEP Agency)*

☒ The Utah Antidiscrimination Division and sent to the EEOC for dual filing purposes.
    *(FEP Agency)*

While EEOC has jurisdiction (upon the expiration of any deferral requirement if this is a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission! This likelihood is increased by your active cooperation with the Agency.

☒ As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained in the "EEOC Rules and Regulations" apply.

For further correspondence on this matter, please use the charge number(s) shown.

☐ An Equal Pay Act investigation (29 U.S.C. 206(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

☒ Enclosure: Copy of Charge.

**BASIS OF DISCRIMINATION**

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NAT. ORIGIN ☐ AGE ☒ DISABILITY ☒ RETALIATION

**CIRCUMSTANCES OF ALLEGED VIOLATION**

See enclosed Form 5, Charge of Discrimination.

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| 12/18/2017 | Kendra L. Shirey, Director | |

EEOC FORM 131-A (Rev. 06/92)

## CHARGE OF DISCRIMINATION

Utah Anti-Discrimin~~RECEIVED~~EEOC

UALD No: BB- 0131
EEOC No: 35C-2018-00131

| NAME *(indicate Mr., Ms., Mrs.)* | | HOME TELEPHONE *(Include Area Code)* |
|---|---|---|
| Mr. Guzman | DEC 15 2017 | (801) 898-4131 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 5463 W Starflower Way, West Jordan UT 84081 | ANTIDISCRIMINATION AND LABOR COMMISSION | May 09, 1962 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE,
STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(if more than one list below.)*

| NAME | | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Geneva Rock Products Inc | | (801) 281-7900 |

| STREET ADDRESS | | COUNTY |
|---|---|---|
| 730 N 1500 W, Orem UT 84057 | | Utah |

| NAME | STREET ADDRESS |
|---|---|
| Geneva Rock Products Inc | 302 W 5400 S 200, Inc, Murray UT 84107 |

CAUSE OF DISCRIMINATION BASED ON

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY
[ ] GENDER IDENTITY  [ ] SEXUAL ORIENTATION  [ ] RELIGIOUS LIBERTY PROTECTION [ ]

DATE DISCRIMINATION TOOK PLACE
*EARLIEST* ........ ..... *LATEST.....*
10/20/2017
CONTINUING ACTION

THE PARTICULARS ARE   *(if additional space is needed, attach extra sheet(s)):*

I was hired on March 28, 2001, to work as Mixer Truck Driver. I am a disabled Hispanic of Mexican origin and I have been subject to discrimination based on my disability, race and national origin.

Since August 2015, I reported to my supervisor verbally and in writing on my post-trip inspection report the aggravation of an old back injury by a defective truck seat on my assigned truck. I requested modification be made to the defective seat. My employer felt my request unjustified and limited himself to listen to my complaints. I continued working in an unsatisfactory condition for about 17 months after which something was finally done to remediate the problem on my truck seat. By then, condition had worsened to the point that I could not continue working. In October 2016, I presented the ...mmendations made by my doctor. I explained and provided information to my employer and was granted medical leave to take care of my disability. After returning from the medical leave, I was able to perform my job, in spite of the chronic pain, only on my assigned truck due to the modifications done to the seat.

In April 2017, there was a schedule policy change that affected my work days and changed my work week schedule. I was forced to work Saturdays in order to complete my weekly hours. This made my work environment more challenging due to the fact that I did not have access to my assigned truck for Saturday work in the other facilities. Throughout this period, I repeatedly requested from my supervisor reasonable accommodations in order to be able to perform my job without further injury to my back. I suggested different options to enable me to fulfill my job duties as a driver including an exception that would allow me to use my assigned truck in the other facilities and was repeatedly denied. On October 20, 2017, There was a misunderstanding and I was scheduled to work in another facility. When I spoke to the dispatcher about my inability to fulfill that job, she became hostile towards me over the phone and aggressively agreed to remove my name from Saturday's schedule. I spoke to my supervisor over the phone and explained the situation and was met with hostility from him as well. He would not make any exceptions. I felt pushed into a resignation by this situation and my supervisor readily accepted it over the phone. I felt that I was retaliated against after opposing the hostile work environment and my employer's intention to ignore my disability. I believe that my disability, race and national origin to be the determining factors in my termination on October 20, 2017.

I do believe I have been harassed and discriminated against based on my disability, race and national origin. I also believe that the acts of my employer are in violation of the Americans with Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964 and the Utah Antidiscrimination Act of 1965, both as amended.

## CHARGE OF DISCRIMINATION

of 2    CP's Initials _____

I understand this charge will be filed with both the EEOC and the State or local Agency, if any, unless jurisdictional [...]s dictate otherwise. I will advise the agencies if I [...] je my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY

State of Utah                )
County of _SALT LAKE_  )   ss.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF CHARGING PARTY

X _Raul Hzman_

SUBSCRIBED AND SWORN/AFFIRMED TO ME ON THIS _15TH_ DAY OF

_January_ 2012, by _Raul Guzman_
                                              (Charging Party)

Notary Public                    My Commission Expires

6-29-2020

NOTARY PUBLIC
SYDNEY DEYOUNG
Commission No. 689735
Commission Expires
JUNE 29, 2020
STATE OF UTAH



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
OARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

July 2, 2018

Raul Guzman
5463 W Starflower Way
West Jordan UT 84081

Debra Turner
. Employers Council
175 W 200 S Ste 2005
Salt Lake City UT 84101

Re:   Raul Guzman v. Geneva Rock Products Inc
      UALD No. B8-0131 and EEOC No. 35C-2018-00131

Dear Mr. Guzman and Ms. Turner,

This case has been assigned to me for investigation. I reviewed the file and appreciate the information
you have submitted. Additional documents may be requested and interviews conducted at a later date.

This case is important to the Division. However, please be advised that currently all investigators are
assigned a considerable caseload and I am unable to work on your case immediately. Each case is
different and we cannot predict when the investigation will be completed, but at all time during the
investigation, the parties are encouraged to continue to provide information to me that they believe is
relevant to the Charge.

If your contact or address information has changed, please let me know right away. Also if you are the
Respondent, please inform me if your corporate address, contact information or ownership has changed. I
may be reached at (801) 530-6893 or at michaelbarrett@utah.gov.

The Division encourages voluntary resolution of the issues by the parties throughout our process. If
either party is interested in discussing resolution options or in submitting a proposal for settlement, please
feel free to contact me.

Sincerely,

Michael Barrett
Investigator
Utah Antidiscrimination and Labor Division

Co: c: Brian K. Jackson Attorney

160 East 300 South, 3rd Floor · PO Box 146630 · Salt Lake City, Utah 84114-6630 · telephone (801) 530-6801
· Facsimile (801) 530-7609 · Toll Free (800) 222-1238 · www.utah.gov

# EXHIBIT D

| From: | Gabriel Speciale <Gabriel.Speciale@us.qbe.com> on behalf of Gabriel Speciale |
| Sent: | Friday, June 4, 2021 8:06 AM |
| To: | Alan Bradshaw |
| Cc: | dsnow@beehiveinsurance.com; Brandon Hale |
| Subject: | RE: Clyde Companies/Emuveyan Your Claim Number 802739N |
| Attachments: | 802739N(3).pdf |

Mr. Bradshaw: Please see the attached correspondence.

Thank you,

Gabe

**Gabriel M. Speciale**
Sr. Claims Technical Specialist
Specialty Claims – Management Liability | North America
+1 212 805 9882 | +1 646 761 3172
Website    LinkedIn    Twitter



---

**From:** Alan Bradshaw [mailto:abradshaw@mc2b.com]
**Sent:** Wednesday, June 02, 2021 6:46 PM
**To:** Gabriel Speciale <Gabriel.Speciale@us.qbe.com>
**Cc:** dsnow@beehiveinsurance.com; Brandon Hale <bhale@clydeinc.com>
**Subject:** Clyde Companies/Emuveyan Your Claim Number 802739N

This email was sent from someone outside of QBE. Be cautious opening links and attachments. Use the 'Report Phishing' button if suspicious.

Mr. Speciale,

This firm has been retained as insurance coverage counsel for the Clyde Companies. Thank you for your May 19, 2021 communication regarding the above claim. In that communication you state that the Emuveyan claim was first made on March 19, 2019. Attached, however, is the January 3, 2018 Charge of Discrimination filed by Emuveyan with the Department of Labor (EEOC) and the Utah Labor Commission and the January 4, 2018 Notice letter from the

1

DOL/Utah including notice of mediation. These communications meet the definition of "Claim" under the Policy (including the endorsement 2200 noted in your letter) which includes for purposes of the Employment Practices Liability Coverage Part the following: "written demand for monetary or non-monetary (including injunctive) relief, including [mediation]." Please reconsider the denial sent in light of the mediation notice. Thank you.

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
----------------- IMPORTANT NOTICE : The information in this email is confidential and may also be privileged. If you are not the intended recipient, any use or dissemination of the information and any disclosure or copying of this email is unauthorised and strictly prohibited. If you have received this email in error, please promptly inform us by reply email or telephone. You should also delete this email and destroy any hard copies produced.

*This electronic message from QBE North America and any attachment to it is intended exclusively for the individual or entity to which it is addressed It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any unauthorized disclosure, copying, distribution or use of this electronic message or any attachment is prohibited. If you have received this message in error, please return it to the sender and delete this original from your system.*

1



QBE North America
55 Water Street
New York, NY 10041

June 4, 2021

**VIA EMAIL (abradshaw@mc2b.com)**

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC

Re:

| | |
|---|---|
| Insured: | Clyde Companies, Inc. |
| Claimant: | Oghenetega Emuveyan |
| Insuring Company: | QBE Insurance Corporation |
| QBE Policy: | QPL0057435 |
| QBE Claim: | 802739N |

Dear Mr. Bradshaw:

The purpose of this letter is to acknowledge receipt of your email correspondence dated June 2, 2021, wherein you provided additional information in response to our coverage position as set forth in our letter of May 19, 2021. Based on the additional information received, we must supplement the terms and conditions of our May 19, 2021 letter.

**However, for the reasons discussed below, we must inform you that the Policy does not provide coverage for the claims made against the Insured.**

As you are aware, QBE Insurance Corporation ("QBE"), issued Policy No. QPL0057435 to Clyde Companies, Inc. ("Clyde" or the "Insured") for the Policy Period of August 21, 2017 to August 21, 2018.[1]

Referenced and attached to your June 2, 2020 email, is a Charge of Discrimination dual filed with the EEOC and Utah Anti-Discrimination & Labor Division (the "Charge") by Oghenetega Emuveyan on January, 3, 2018.[2] The Charge includes allegations of discrimination based upon race, national origin as well as retaliation.

As an initial matter, we call your attention to the following pertinent provisions contained in the General Terms & Conditions (the "GTC") of the Policy.

## V.    REPORTING

A. Notice of any **Claim** under any **Liability Coverage Part** is considered timely when reported to the Insurer as soon as practicable after the **Parent Company's** chief executive officer or chief financial officer first becomes aware of such **Claim**. The Insurer shall not assert that notice of a **Claim**

---

[1] The Policy expired on August 21, 2018 and was not renewed.
[2] UALD Charge No.: B8-0152 / EEOC Charge No.: 35C-2018-00152

was untimely unless the Insurer is materially prejudiced by the untimely notice. However, in no event shall any notice be provided later than:

1. if the applicable **Liability Coverage Part** expires (or is otherwise terminated) without being renewed with the Insurer, 60 days after the effective date of such expiration or termination; or

2. the expiration of the Extended Reporting Period, if applicable.

\*\*\*

## XIII.   TERMINATION OF POLICY[3]

This Policy shall terminate at the earliest of:

A. 20 days after receipt by the **Parent Company** of written notice to the Insurer of termination for non-payment of premium;

B. expiration of the **Policy Period**;

C. surrender of the Policy to the Insurer by the **Parent Company** or notice to the Insurer by the **Parent Company** stating when such cancellation will take effect, and in either case any returned premium shall be computed on a pro-rata basis.

\*\*\*

Section XXII. of the General Terms and Conditions ("GTC") provides:

O.     **Related Claims** means all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts**.

Further, Section VIII. of the GTC provides the following:

VIII. TREATMENT OF RELATED CLAIMS

All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either made or deemed to have been first made in accordance with Section V. REPORTING above.

Next, we call your attention to Section V. of the EPL Coverage Part, which defines Claim[4], among other things, as both a civil complaint as well as an administrative proceeding against an Insured for a Wrongful Act. Additionally, the definition of Wrongful Act includes Employment Practices Wrongful, which in turn includes: Wrongful Employment Decision; Discrimination.

While it appears the Claim was indeed *first* made during the Policy Period, coverage is not triggered in this instance as the Claim was reported on April 21, 2021, which is more than 60 days such expiration of the Policy.[5]   Our understanding is QBE need not show prejudice to deny

---

[3] As amended by Endorsement in Form QBBP-5120 (05-14).

[4] As amended by Endorsement in Form QBBPP-2200 (05-14).

[5] In fact, more than two years since the expiration of the Liability Coverage Part.

coverage on this basis, however we reserve all rights as to whether QBE has been prejudiced by the delay.

For the reasons discussed above, QBE will be maintaining a disclaimer of coverage.

QBE's coverage position is based on the information presently available to us. Neither this letter nor QBE's investigation is or should be construed as a waiver of any terms, conditions, exclusions or other provisions of the Policy or any other policies of insurance issued by QBE or any other QBE North America member company. QBE expressly reserves all of its rights under the Policy, at law, and in equity, including, but not limited to, the right to assert additional defenses to any claims for coverage and to modify its coverage position if subsequent information indicates that such action is warranted. QBE further reserves the right to file an action for declaratory relief in order to determine the parties' rights and duties under the Policy.

If you have any other insurance policies that may respond to this claim, you should notify that carrier immediately.

Please feel free to contact me with any questions or concerns regarding the contents of this letter. You can reach me at (212) 805-9882 or Gabriel.Speciale@us.qbe.com. Thank you for your cooperation in this matter.

Very truly yours,

/s/ *Gabriel M. Speciale*
Gabriel M. Speciale
Senior Claims Technical Specialist
QBE North America


cc:    bhale@clydeinc.com

cc:    dsnow@beehiveinsurance.com

| From: | Gabriel Speciale <Gabriel.Speciale@us.qbe.com> on behalf of Gabriel Speciale |
| Sent: | Friday, June 4, 2021 8:17 AM |
| To: | Alan Bradshaw |
| Cc: | dsnow@beehiveinsurance.com; Brandon Hale |
| Subject: | RE: Clyde Companies/Guzman Your Claim Number 802897N |
| Attachments: | 802897N(3).pdf |

Mr. Bradshaw: Please see the attached correspondence.

Thank you,

Gabe

---

Gabriel M. Speciale
Sr. Claims Technical Specialist
Specialty Claims – Management Liability | North America
+1 212 805 9882 | +1 646 761 3172
Website      LinkedIn      Twitter



---

**From:** Alan Bradshaw [mailto:abradshaw@mc2b.com]
**Sent:** Wednesday, June 02, 2021 6:46 PM
**To:** Gabriel Speciale <Gabriel.Speciale@us.qbe.com>
**Cc:** dsnow@beehiveinsurance.com; Brandon Hale <bhale@clydeinc.com>
**Subject:** Clyde Companies/Guzman Your Claim Number 802897N

This email was sent from someone outside of QBE. Be cautious opening links and attachments. Use the 'Report Phishing' button if suspicious.

Mr. Speciale,

This firm has been retained as insurance coverage counsel for the Clyde Companies. Thank you for your May 19, 2021 communication regarding the above claim. In that communication you state that the Guzman claim was first made on December 6, 2018. Attached, however, is the December 15, 2017 Charge of Discrimination filed by Guzman with the Department of Labor (EEOC) and the Utah Labor Commission and the December 18, 2017 Notice letter from

1

the DOL/Utah including notice of mediation. These communications meet the definition of
"Claim" under the Policy (including the endorsement 2200 noted in your letter) which includes
for purposes of the Employment Practices Liability Coverage Part the following: "written
demand for monetary or non-monetary (including injunctive) relief, including
[mediation]." Please reconsider the denial sent in light of the mediation notice. Thank you.

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

The information contained in this transmission may contain privileged and confidential information. It is
intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby
notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the
original message.

----------------- IMPORTANT NOTICE : The information in this email is confidential and may also be privileged. If you are
not the intended recipient, any use or dissemination of the information and any disclosure or copying of this email is
unauthorised and strictly prohibited. If you have received this email in error, please promptly inform us by reply email or
telephone. You should also delete this email and destroy any hard copies produced.

*This electronic message from QBE North America and any attachment to it is intended exclusively for the individual or entity to which
it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any
unauthorized disclosure, copying, distribution or use of this electronic message or any attachment is prohibited. If you have received
this message in error, please return it to the sender and delete this original from your system.*



QBE North America
55 Water Street
New York, NY 10041

June 4, 2021

**VIA EMAIL (abradshaw@mc2b.com)**

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC

Re:

| | |
|---|---|
| Insured: | Clyde Companies, Inc. |
| Claimant: | Raul Guzman, et al. |
| Insuring Company: | QBE Insurance Corporation |
| QBE Policy: | QPL0057435 |
| QBE Claim: | 802897N |

Dear Mr. Bradshaw:

The purpose of this letter is to acknowledge receipt of your email correspondence dated June 2, 2021, wherein you provided additional information in response to our coverage position as set forth in our letter of May 19, 2021. Based on the additional information received, we must supplement the terms and conditions of our May 19, 2021 letter.

**However, for the reasons discussed below, we must inform you that the Policy does not provide coverage for the claims made against the Insured.**

As you are aware, QBE Insurance Corporation ("QBE"), issued Policy No. QPL0057435 to Clyde Companies, Inc. ("Clyde" or the "Insured") for the Policy Period of August 21, 2017 to August 21, 2018.[1]

Referenced and attached to your June 2, 2020 email, is a Charge of Discrimination dual filed with the EEOC and Utah Anti-Discrimination & Labor Division (the "Charge") by Raul Guzman on December 15, 2017.[2] The Charge includes allegations of discrimination based upon race, national origin and disability as well as retaliation.

As an initial matter, we call your attention to the following pertinent provisions contained in the General Terms & Conditions (the "GTC") of the Policy.

## V.   REPORTING

A. Notice of any **Claim** under any **Liability Coverage Part** is considered timely when reported to the Insurer as soon as practicable after the **Parent Company's** chief executive officer or chief financial officer first becomes aware of such **Claim**. The Insurer shall not assert that notice of a **Claim**

---

[1] The Policy expired on August 21, 2018 and was not renewed.

[2] UALD Charge No.: B8-0131 / EEOC Charge No.: 35C-2018-00131

was untimely unless the Insurer is materially prejudiced by the untimely notice. However, in no event shall any notice be provided later than:

1. if the applicable **Liability Coverage Part** expires (or is otherwise terminated) without being renewed with the Insurer, 60 days after the effective date of such expiration or termination; or

2. the expiration of the Extended Reporting Period, if applicable.

∗∗∗

### XIII. TERMINATION OF POLICY[3]

This Policy shall terminate at the earliest of:

A. 20 days after receipt by the **Parent Company** of written notice to the Insurer of termination for non-payment of premium;

B. expiration of the **Policy Period**;

C. surrender of the Policy to the Insurer by the **Parent Company** or notice to the Insurer by the **Parent Company** stating when such cancellation will take effect, and in either case any returned premium shall be computed on a pro-rata basis.

∗∗∗

Section XXII. of the General Terms and Conditions ("GTC") provides:

O. **Related Claims** means all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts**.

Further, Section VIII. of the GTC provides the following:

VIII. TREATMENT OF RELATED CLAIMS

All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either made or deemed to have been first made in accordance with Section V. REPORTING above.

Next, we call your attention to Section V. of the EPL Coverage Part, which defines Claim[4], among other things, as both a civil complaint as well as an administrative proceeding against an Insured for a Wrongful Act. Additionally, the definition of Wrongful Act includes Employment Practices Wrongful, which in turn includes: Wrongful Employment Decision; Discrimination.

While it appears the Claim was indeed *first* made during the Policy Period, coverage is not triggered in this instance as the Claim was reported on April 21, 2021, which is more than 60 days such expiration of the Policy.[5] Our understanding is QBE need not show prejudice to deny

---

[3] As amended by Endorsement in Form QBBP-5120 (05-14).

[4] As amended by Endorsement in Form QBBPP-2200 (05-14).

[5] In fact, more than two years since the expiration of the Liability Coverage Part.

coverage on this basis, however we reserve all rights as to whether QBE has been prejudiced by the delay.

For the reasons discussed above, QBE will be maintaining a disclaimer of coverage.

QBE's coverage position is based on the information presently available to us. Neither this letter nor QBE's investigation is or should be construed as a waiver of any terms, conditions, exclusions or other provisions of the Policy or any other policies of insurance issued by QBE or any other QBE North America member company. QBE expressly reserves all of its rights under the Policy, at law, and in equity, including, but not limited to, the right to assert additional defenses to any claims for coverage and to modify its coverage position if subsequent information indicates that such action is warranted. QBE further reserves the right to file an action for declaratory relief in order to determine the parties' rights and duties under the Policy.

If you have any other insurance policies that may respond to this claim, you should notify that carrier immediately.

Please feel free to contact me with any questions or concerns regarding the contents of this letter. You can reach me at (212) 805-9882 or Gabriel.Speciale@us.qbe.com. Thank you for your cooperation in this matter.

Very truly yours,

/s/ *Gabriel M. Speciale*
Gabriel M. Speciale
Senior Claims Technical Specialist
QBE North America


cc:    bhale@clydeinc.com

cc:    dsnow@beehiveinsurance.com

# EXHIBIT E

| From: | Alan Bradshaw |
|---|---|
| Sent: | Monday, June 7, 2021 1:55 PM |
| To: | 'Gabriel Speciale' |
| Cc: | 'dsnow@beehiveinsurance.com'; 'Brandon Hale' |
| Subject: | RE: Clyde Companies/Emuveyan Your Claim Number 802739N |

Mr. Speciale,

Thank you for the prompt reply. In that reply you state it is QBE's understanding that it "need not show prejudice to deny coverage" on the basis that notice of the claim was provided more than 60 days after the policy expired. We believe this is an incorrect interpretation of the policy's language and the Utah Insurance Code provisions pursuant to which the policy is filed and approved for use.

As you are aware, the policy is a "claims-made" but not a "claims-made and reported policy." The policy contains the following notice as required under the Utah Insurance Code: "THE LIABILITY COVERAGE PARTS PROVIDE FOR CLAMIS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD." The Insuring Clause includes "claims-made" and not "claims-made and reported" language of "a Claim first made during the Policy Period."

Utah Code 31A-21-312(2) provides (with a single exception discussed below) that "[f]ailure to give notice does not bar recovery under the policy if the insurer fails to show it was prejudiced by the failure." This provision applies to the policy and the policy's language is written to comply with the Utah Insurance Code including there is a Utah Amendatory Endorsement and a State Amendatory Inconsistency Endorsement. The policy complies with 31A-21-312(2) by containing the following express language: "The Insurer shall not assert that notice of a Claim was untimely unless the insurer is materially prejudiced by the untimely notice."

Under the Utah Insurance Code, the single exception to 31A-21-312(2)'s notice/prejudice standard is for a policy that "require[s] notice of [a] claim prior to the expiration of a policy for coverage to be in force." See Utah Code 31A-22-203. This language is not applicable to QBE's policy for two reasons. First, the policy is "claims-made" not "claims-made and reported" (as the statute requires) and coverage is in force for a claim, like this one made during the policy period (as your recent communication concedes), irrespective of when notice is given. This is made clear in the Insuring Clause which does not require notice for coverage to be triggered and by the fact that the language you cite in your communication is found not in the Insuring Clause but in a provision entitled "Reporting." Second, even if the policy were a "claims-made and reported policy" (which it is not under express language), the policy reporting language references notice within 60 days of expiration or termination, not "prior to expiration of [the]

1

policy for coverage to be in force." This statutory language is the single exception to a
notice/prejudice standard under Utah law. See Utah Code 31A-22-203.

In short, the policy is written to comply with the Utah Insurance Code and requires QBE to
demonstrate prejudice from an alleged late notice. Here, no prejudice exists because the
Clyde Companies' subsequent insurer has retained competent counsel who have defended the
claim up to this point. That carrier, however, has raised a concern regarding QBE's non-
defense to date.

We look forward to a prompt reply and hopefully an agreement to immediately pay for the
defense. Thank you.

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

---

**From:** Gabriel Speciale <Gabriel.Speciale@us.qbe.com>
**Sent:** Friday, June 4, 2021 8:06 AM
**To:** Alan Bradshaw <abradshaw@mc2b.com>
**Cc:** dsnow@beehiveinsurance.com; Brandon Hale <bhale@clydeinc.com>
**Subject:** RE: Clyde Companies/Emuveyan Your Claim Number 802739N

Mr. Bradshaw: Please see the attached correspondence.

Thank you,

Gabe

---

**Gabriel M. Speciale**
Sr. Claims Technical Specialist
Specialty Claims – Management Liability | North America
+1 212 805 9882 | +1 646 761 3172
Website        LinkedIn        Twitter



2

**From:** Alan Bradshaw [mailto:abradshaw@mc2b.com]
**Sent:** Wednesday, June 02, 2021 6:46 PM
**To:** Gabriel Speciale <Gabriel.Speciale@us.qbe.com>
**Cc:** dsnow@beehiveinsurance.com; Brandon Hale <bhale@clydeinc.com>
**Subject:** Clyde Companies/Emuveyan Your Claim Number 802739N

This email was sent from someone outside of QBE. Be cautious opening links and attachments. Use the 'Report Phishing' button if suspicious.

Mr. Speciale,

This firm has been retained as insurance coverage counsel for the Clyde Companies. Thank you for your May 19, 2021 communication regarding the above claim. In that communication you state that the Emuveyan claim was first made on March 19, 2019. Attached, however, is the January 3, 2018 Charge of Discrimination filed by Emuveyan with the Department of Labor (EEOC) and the Utah Labor Commission and the January 4, 2018 Notice letter from the DOL/Utah including notice of mediation. These communications meet the definition of "Claim" under the Policy (including the endorsement 2200 noted in your letter) which includes for purposes of the Employment Practices Liability Coverage Part the following: "written demand for monetary or non-monetary (including injunctive) relief, including [mediation]." Please reconsider the denial sent in light of the mediation notice. Thank you.

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

------------------ IMPORTANT NOTICE : The information in this email is confidential and may also be privileged. If you are not the intended recipient, any use or dissemination of the information and any disclosure or copying of this email is unauthorised and strictly prohibited. If you have received this email in error, please promptly inform us by reply email or telephone. You should also delete this email and destroy any hard copies produced.

*This electronic message from QBE North America and any attachment to it is intended exclusively for the individual or entity to which it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any unauthorized disclosure, copying, distribution or use of this electronic message or any attachment is prohibited. If you have received this message in error, please return it to the sender and delete this original from your system.*

| From: | Alan Bradshaw |
|---|---|
| Sent: | Monday, June 7, 2021 1:55 PM |
| To: | 'Gabriel Speciale' |
| Cc: | 'dsnow@beehiveinsurance.com'; 'Brandon Hale' |
| Subject: | RE: Clyde Companies/Guzman Your Claim Number 802897N |
| | |
| Follow Up Flag: | Copied to Worldox (Clients\22019\00010\02178540.MSG) |

Mr. Speciale,

Thank you for the prompt reply. In that reply you state it is QBE's understanding that it "need
not show prejudice to deny coverage" on the basis that notice of the claim was provided more
than 60 days after the policy expired. We believe this is an incorrect interpretation of the
policy's language and the Utah Insurance Code provisions pursuant to which the policy is filed
and approved for use.

As you are aware, the policy is a "claims-made" but not a "claims-made and reported
policy." The policy contains the following notice as required under the Utah Insurance Code:
"THE LIABILITY COVERAGE PARTS PROVIDE FOR CLAMIS MADE COVERAGE, WHICH APPLIES
ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD." The
Insuring Clause includes "claims-made" and not "claims-made and reported" language of "a
Claim first made during the Policy Period."

Utah Code 31A-21-312(2) provides (with a single exception discussed below) that "[f]ailure to
give notice does not bar recovery under the policy if the insurer fails to show it was prejudiced
by the failure." This provision applies to the policy and the policy's language is written to
comply with the Utah Insurance Code including there is a Utah Amendatory Endorsement and
a State Amendatory Inconsistency Endorsement. The policy complies with 31A-21-312(2) by
containing the following express language: "The Insurer shall not assert that notice of a Claim
was untimely unless the insurer is materially prejudiced by the untimely notice."

Under the Utah Insurance Code, the single exception to 31A-21-312(2)'s notice/prejudice
standard is for a policy that "require[s] notice of [a] claim prior to the expiration of a policy for
coverage to be in force." See Utah Code 31A-22-203. This language is not applicable to QBE's
policy for two reasons. First, the policy is "claims-made" not "claims-made and reported" (as
the statute requires) and coverage is in force for a claim, like this one made during the policy
period (as your recent communication concedes), irrespective of when notice is given. This is
made clear in the Insuring Clause which does not require notice for coverage to be triggered
and by the fact that the language you cite in your communication is found not in the Insuring
Clause but in a provision entitled "Reporting." Second, even if the policy were a "claims-made

1

and reported policy" (which it is not under express language), the policy reporting language references notice within 60 days of expiration or termination, not "prior to expiration of [the] policy for coverage to be in force." This statutory language is the single exception to a notice/prejudice standard under Utah law. See Utah Code 31A-22-203.

In short, the policy is written to comply with the Utah Insurance Code and requires QBE to demonstrate prejudice from an alleged late notice. Here, no prejudice exists because the Clyde Companies' subsequent insurer has retained competent counsel who have defended the claim up to this point. That carrier, however, has raised a concern regarding QBE's non-defense to date.

We look forward to a prompt reply and hopefully an agreement to immediately pay for the defense. Thank you.


Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

---

**From:** Gabriel Speciale <Gabriel.Speciale@us.qbe.com>
**Sent:** Friday, June 4, 2021 8:17 AM
**To:** Alan Bradshaw <abradshaw@mc2b.com>
**Cc:** dsnow@beehiveinsurance.com; Brandon Hale <bhale@clydeinc.com>
**Subject:** RE: Clyde Companies/Guzman Your Claim Number 802897N

Mr. Bradshaw: Please see the attached correspondence.

Thank you,

Gabe

---

**Gabriel M. Speciale**
Sr. Claims Technical Specialist
Specialty Claims – Management Liability | North America
+1 212 805 9882 | +1 646 761 3172
Website       LinkedIn       Twitter



**From:** Alan Bradshaw [mailto:abradshaw@mc2b.com]
**Sent:** Wednesday, June 02, 2021 6:46 PM
**To:** Gabriel Speciale <Gabriel.Speciale@us.qbe.com>
**Cc:** dsnow@beehiveinsurance.com; Brandon Hale <bhale@clydeinc.com>
**Subject:** Clyde Companies/Guzman Your Claim Number 802897N

This email was sent from someone outside of QBE. Be cautious opening links and attachments. Use the 'Report Phishing' button if suspicious.

Mr. Speciale,

This firm has been retained as insurance coverage counsel for the Clyde Companies. Thank you for your May 19, 2021 communication regarding the above claim. In that communication you state that the Guzman claim was first made on December 6, 2018. Attached, however, is the December 15, 2017 Charge of Discrimination filed by Guzman with the Department of Labor (EEOC) and the Utah Labor Commission and the December 18, 2017 Notice letter from the DOL/Utah including notice of mediation. These communications meet the definition of "Claim" under the Policy (including the endorsement 2200 noted in your letter) which includes for purposes of the Employment Practices Liability Coverage Part the following: "written demand for monetary or non-monetary (including injunctive) relief, including [mediation]." Please reconsider the denial sent in light of the mediation notice. Thank you.

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
----------------- IMPORTANT NOTICE : The information in this email is confidential and may also be privileged. If you are not the intended recipient, any use or dissemination of the information and any disclosure or copying of this email is unauthorised and strictly prohibited. If you have received this email in error, please promptly inform us by reply email or telephone. You should also delete this email and destroy any hard copies produced.

*This electronic message from QBE North America and any attachment to it is intended exclusively for the individual or entity to which it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any unauthorized disclosure, copying, distribution or use of this electronic message or any attachment is prohibited. If you have received this message in error, please return it to the sender and delete this original from your system.*

# EXHIBIT F

| From: | Margulis, Andrew L. <andrew.margulis@ropers.com> on behalf of Margulis, Andrew L. |
|---|---|
| Sent: | Thursday, June 24, 2021 12:02 PM |
| To: | abradshaw@mc2b.com |
| Subject: | Guzman/Emuveyan; QBE Claim Nos. 802897N, 802739N |
| Attachments: | Bradshaw letter 6-24-21.pdf |

Mr. Bradshaw,
Please see the attached letter.

Thank you.

**Andrew L. Margulis**
*Partner*
Chair, Insurance Services Practice Group
**ROPERS** MAJESKI PC
750 Third Avenue, 25th Floor
New York, NY 10017
d (646) 454-3242 | m (917) 747-8673
andrew.margulis@ropers.com
Bio | LinkedIn



**NOTICE TO RECIPIENT |** This email is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this email in error, please notify us immediately of the error by return email, and please delete this message from your system. Any review, use, dissemination, distribution, or copying of this email is strictly prohibited. Thank you in advance for your cooperation.

For more information about Ropers Majeski, please visit ropers.com. In the course of our business relationship, we may collect, store, and transfer information about you. Please see our privacy policy at https://www.ropers.com/privacy to learn about how we use this information.

1



750 Third Avenue
25th Floor
New York, NY 10017

Andrew L. Margulis    o 212.668.5927
d 646.454.3242    f 212.668.5929
andrew.margulis@ropers.com    ropers.com

June 24, 2021

**VIA E-MAIL ONLY**

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
abradshaw@mc2b.com

| Re: | Insured: | Clyde Companies, Inc. |
|-----|----------|------------------------|
| | Claimants: | Raul Guzman; Oghenetega Emuveyan |
| | Insuring Company: | QBE Insurance Corporation |
| | QBE Policy: | QPL0057435 |
| | QBE Claim Nos.: | 802897N; 802739N |
| | Our File No.: | 5331N |

Dear Mr. Bradshaw:

As you know, we represent QBE Insurance Corporation ("QBE") in connection with the above-referenced matter. We write to respond to your June 7, 2021 email to Gabriel Speciale of QBE. For the reasons discussed below, QBE maintains its denial of coverage as stated in its letters of June 4, 2021.

You stated in your June 7 email that the QBE Policy is a "claims-made" but not a "claims-made and reported" policy. Utah law, however, does not distinguish between the two. Utah Insurance Code Section 31A-22-204 states:

> **31A-22-204 Restriction on limitation of coverage.**
> No insurer may limit coverage under a policy insuring against legal liability to claims that are first made against the insured while the policy is in force, unless the policy contains on the cover page, a conspicuous statement that the coverage of the policy is limited in that way.

As acknowledged in your email, the QBE Policy states, on the first page, "THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD." The QBE Policy thus has the language required by the Insurance Code and is a claims-made policy. Moreover, the QBE Policy form was approved by the Utah Insurance Department.



As a general rule, Utah requires a showing of prejudice in order to bar recovery based on the failure to give notice in a timely manner. This general prejudice requirement is codified in Insurance Code Section 31A-21-312(2), which provides that "[f]ailure to give notice or file proof of loss as required by Subsection (1)(b) does not bar recovery under the policy if the insurer fails to show it was prejudiced by the failure." Here, the Insured failed to give notice as required by Subsection (1)(b), which provides that notice must be given within the time specified in the QBE Policy unless the insured shows that it was "not reasonably possible" to give notice within that time **and** that notice was then given "as soon as reasonably possible." It was clearly "reasonably possible" for the Insured notice to QBE within the time specified in the QBE Policy, but even if that were not true, the Insured's notice to QBE in April 2021 was clearly not "as soon as reasonably possible."

Utah law, however, exempts claims-made policies from the requirement that an insurer demonstrate prejudice in order to deny coverage based on late notice. While this exemption is codified in Section 31A-22-203, that section merely recognizes long-standing Utah law regarding claims-made policies. Section 31A-22-203 provides as follows:

> **31A-22-203 Notice and proof of loss.**
> Section 31A-21-312 applies to the notice required under liability policies. Subsection 31A-21-312(1) may not be construed to extend the normal provisions of any claims-made coverage that required notice of an occurrence or claim prior to the expiration of the policy for coverage to be in force.

Section 22-203 specifically references only Section 31A-21-312(1), but it has also been held to generally apply to the prejudice requirement set forth in Section 31A-21-312(2). *See, e.g., Westport Ins. Co. v. Ray Quinney & Nebeker*, 2009 WL 2474005 (D. Utah Aug. 7, 2009).

While Section 22-203 refers to claims-made coverage requiring notice of a claim "prior to the expiration of the policy," the language of the QBE Policy allowing notice up to 60 days after the expiration of the Policy Period does not change the fact that the QBE Policy is a claims-made policy to which the prejudice requirement of Section 31A-21-312(2) does not apply.

The nature and unique features of claims-made policies are well-established under Utah law. *See, e.g., AOK Lands, Inc. v. Shand, Morahan & Co.*, 860 P.2d 924, 926 (Utah 1993). As the court noted in *Westport Ins. Co.*, "Utah law defines 'claims-made coverage' as 'an insurance contract or provision limiting coverage under a policy insuring against legal liability to claims that are first made against the insured while the policy is in force.' Utah Code Ann. § 31A-1-301(24)." There is nothing in Section 31A-1-301(24) that requires the claim to be reported during the policy period in order for the policy to qualify as a claims-made policy. While certain claims-made policies do require notice during the policy period, many provide a grace period for a



certain limited time after the expiration of the policy period to report claims, recognizing that claims may sometimes be made against an insured very close to the expiration of the policy, thus making some additional limited period to report a reasonable accommodation. The QBE Policy thus permits notice up to 60 days after expiration of the Policy Period. Again, this does not change the fact that, as defined by the Utah Insurance Code, the QBE Policy is a claims-made policy. And contrary to your email, the Utah Insurance Code does not create a sub-category of claims-made policies classified as "claims-made and reported" policies.

Since there can be no dispute that the QBE Policy is a claims-made policy, the conclusion that a showing of prejudice is not required is also clear. As the court held in *Westport*, "[b]ecause § 31A-22-203 excludes claims-made policies from the notice rules of § 31A-21-312(1)(b), § 31A-21-312(2) also does not apply to claims-made policies." 2009 WL 2474005 at *10. The *Westport* court went on to hold that this reading "comports with longstanding interpretation of claims-made policies," relying on the discussion of such policies by the Utah Supreme Court in *AOK Lands, id.*

Significantly, the *Westport* court went on to discuss the very different purposes of notice provisions in occurrence and claims-made policies, noting that:

> the event that invokes coverage under a "claims-made" policy is transmittal of notice of the claim to the insurance carrier. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy.

2009 WL 2474005 at *10, citing *American Cas. Co. of Reading, Pennsylvania v. Continisio*, 17 F.3d 62, 68 (3rd Cir. 1994). The *Westport* court therefore concluded that since the policy in issue was a claims-made policy, "the court will not expand the scope of the policy's coverage by adding a requirement that [the insurer] show prejudice." Expanding the QBE Policy's notice provision beyond the 60-day period required by the policy would alter the very nature of the coverage provided by the policy.

Moreover, while some claims-made policies may require notice during the policy period with no grace period allowed, the granting of such grace period by the policy does not change the nature of the policy as a claims-made policy. As the Tenth Circuit, applying Utah law, has held:

> [t]he general rule is that where a state statute has been enacted concerning the giving of notice and the furnishing of proof of loss to the insurer, **the failure to comply with a requirement of a policy in**

**ROPERS**
**MAJESKI**

> respect thereto which conforms to the statute will defeat recovery
> on the policy. [Citations omitted.] This general rule would appear to
> be in line with Utah authority to the general effect that failure to
> comply with the requirements of an insurance policy concerning
> giving of notice of claim and furnishing of proof of loss will in the
> absence of waiver or estoppel defeat recovery on the policy. *See*
> Dunn v. Metropolitan Life Ins. Co., *supra*, and Anderson v. Beneficial
> Fire & Casualty Co., 21 Utah 2d 173, 442 P.2d 933 (1968).

*Hunter v. Fireman's Fund Ins. Co.*, 448 F.2d 805 (10th Cir. 1971).

Here, the QBE Policy conforms to the Utah Insurance Code provisions regarding claims-made policies and notice. The granting of a grace period of 60 days to report a claim following expiration of the policy period does not alter the policy's compliance with the minimum requirements. Indeed, the QBE Policy form was approved for use in Utah by the Utah Insurance Department. Since the QBE Policy requires that notice be given no later than 60 days after expiration of the policy, the Insured's failure to comply with that requirement defeats recovery under the policy.

For these reasons, QBE is not required to demonstrate that it has been prejudiced by the Insured's failure to provide timely notice and QBE reiterates its denial of coverage.

Moreover, even if QBE was required to demonstrate prejudice, which it is not for the reasons discussed above, the record clearly supports the existence of prejudice. The QBE Policy gives QBE the right and duty to defend any Claim. This includes the right to retain counsel of its choice to defend any Claim and control the defense of a Claim.

As acknowledged in your prior email correspondence with Mr. Speciale of QBE, the Guzman Charge of Discrimination was filed on December 15, 2017 and the Emuveyan Charge of Discrimination was filed on January 3, 2018. The Guzman and Emuveyan lawsuits were then filed, respectively, on or about December 29, 2018 and June 19, 2019. First notice of both matters was given to QBE on April 21, 2021. Between the filing of each lawsuit and the first notice to QBE, there was significant activity in both lawsuits, with more than 100 separate docket entries noted in the Emuveyan lawsuit and approximately 80 in the Guzman lawsuit. The activity in these lawsuits included, but was not limited, significant discovery and motion practice, including motions for sanctions filed in the Emuveyan case.

The foregoing is just a summary and is not intended to be an exhaustive recitation of the manner in which QBE has been prejudiced by the Insured's failure to give timely notice of these matters. In addition, QBE has been deprived from exercising its right and duty to defend the



cases, to select counsel and to determine the strategy for the defense of both cases, also further prejudicing QBE. QBE reserves its rights with respect to the issue of prejudice.

For the foregoing reasons, QBE reiterates its denial of coverage for the Guzman and Emuveyan matters. Please be advised that nothing in this letter is intended to be, nor should it be construed as, a waiver of any of QBE's rights and defenses under the QBE Policy, at law or in equity, all of which are expressly reserved.

If you would like to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

Andrew L. Margulis

4842-3304-7279.3

# EXHIBIT G

| | |
|---|---|
| **From:** | Alan Bradshaw |
| **Sent:** | Friday, July 9, 2021 3:25 PM |
| **To:** | 'andrew.margulis@ropers.com' |
| **Cc:** | 'Brandon Hale' |
| **Subject:** | Clyde Companies |
| **Attachments:** | SP 4 406 0409 UT.pdf; AXIS 1012292 0319.pdf; EO-244 8-19 ANPAC Ins Agents E-O Liability Ins Policy.pdf; ABradshaw to AMargulis 07.09.21 (02209569).pdf |

Mr. Margulis,

Thank you for taking the time to speak with me this afternoon. Attached is the letter I indicated I would be sending. Please confirm that you have received this email and letter. If you'd like to discuss further please give me a call. Thank you.

Alan

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

1



136 East South Temple, Suite 1300
Salt Lake City, Utah 84111
(801) 363-5678
Facsimile: (801) 364-5678
www.mc2b.com
Alan C. Bradshaw
abradshaw@mc2b.com

July 9, 2021

VIA EMAIL
andrew.margulis@ropers.com

Andrew L. Margulis
Ropers Majeski
750 Third Avenue 25th Floor
New York, NY 10017

> Re: Insured: Clyde Companies Inc.
> Claimants: Raul Guzman; Oghenetega Emuveyan
> Insuring Company: QBE Insurance Corporation
> QBE Policy: QPL0057435
> QBE Claim Nos.: 802897N; 802739N
> Your File No.: 5331N

Dear Mr. Margulis:

Thank you for your June 24, 2021 letter. We respectfully disagree with your analysis of
Utah law and particularly the Utah Insurance Code. The Clyde Companies request that QBE
Insurance Corporation ("QBE") reconsider its coverage denial with the hope that litigation can
be avoided. You should also be aware that Ironshore Indemnity Company, Inc. ("Ironshore")
has provided a defense of both the *Guzman* and *Emuveyan* claims but it has recently denied its
duty to defend on the basis that the correct carrier to respond to these claims is the prior year's
carrier—QBE. You should also be aware that the underlying claims have been properly
defended up to now and there exists no prejudice related to QBE not previously participating in
that defense.

With respect to the arguments set forth in your letter, those arguments ignore the plain
language of the insurance policy and the plain language of the Utah Insurance Code. A plain
language analysis demonstrates that a prejudice standard applies to the notice QBE received, and
QBE bears a burden to demonstrate prejudice. QBE has not and cannot identify prejudice.

To begin, you assert that under Utah Code § 31A-22-204, QBE provided a proper notice on the
policy's cover page that the policy is a "claims-made" policy consistent with § 31A-22-204's
notice requirement. We agree a notice of "claims-made" coverage was provided but your
argument is a classic "strawman" argument that proves *nothing* regarding the issues presented.
The fact that the insurance code's notice provision for issuance of any type of claims-made
policy does not specify that the notice must state whether the policy is claims-made or claims-

Andrew L. Margulis
July 9, 2021
Page 2

made-and-reported is irrelevant. Some insurers specify in notices that a particular policy
provides claims-made-and-reported coverage and others don't because § 31A-22-204 does not
require such additional information in the notice. And, more importantly, a notice does not
modify the policy's insuring clause or other terms. As you know, claims-made policies provide
broader coverage than claims-made-and-reported policies in many situations because only one
thing, not two things, must take place during a specified period. Consequentially, the scope of
coverage is measured by the *policy's language,* not a claims-made notice required by § 31A-22-
204.

Similarly, the assertion that a claims-made policy reflects the assumption of a certain
level of risk by the insurer and must be enforced as written is again correct but irrelevant.
Occurrence policies likewise reflect a risk undertaken under express language that must be
enforced as written. It is also true that a *claims-made-and-reported* policy reflects a lesser
assumption of risk in most circumstances as compared to "occurrence" or simple "claims-made"
policies. In other words, the risk assumed under any policy is based upon policy language and
Utah courts will abide by the parties' bargain. Here, QBE bargained for claims-made coverage
and not claims-made-and-reported coverage, and therefore the scope of coverage must be
evaluated based upon the language of the policy. Contrary to your letter, that assumption of a
risk on a claims-made basis is not the same as assuming the risk under a claims-made-and-
reported policy, and your attempt to equate all claims-made policies based upon § 31A-22-204
while ignoring the plain language of the directly applicable Insurance Code provisions and the
policy's plain language is unpersuasive.

The *Westport Insurance v. Ray Quinney & Nebeker,* 2009 WL 2474005 *10 (D. Utah
August 7, 2009) opinion you cite also strongly supports our position that an insurer must include
the "and-reported" language in the insuring clause to receive a bargained for retraction in
coverage. In *Westport* the policy was "a claims made and reported policy, which mean it
provides coverage for claims first made against the insured, and reported to Westport, during the
policy period." *Id.* at *3. It is this "reporting" requirement *in the incurring clause* "require[ing]
reporting of the claim during the policy period" that serves to *reduce coverage* through notice
language whereas notice language that is not part of the insuring clause serves a different
purpose, "to help the insurer investigate, settle, and defend claims; this type of [notice language]
do[es] not define coverage and should be liberally and practically construed." *Id.* at *9-10. Your
attempt to define the scope of coverage by implying an "and-reported" provision in the insurance
language is contrary to Utah law and the authority you cite because QBE defined the scope of
coverage by requiring only that the claim be asserted during the policy period, and its separate
notice language serves the purpose identified in *Westport* to help with investigation, settlement,
and the defense.

Moreover, § 31A-22-312 and § 31A-22-203 expressly apply to all types of policies
including specifically "occurrence" and "claim" policy language. Consequently, the *plain
language* issue presented is whether the following policy language "requires notice of an
*occurrence or claim* prior to the expiration of the policy for coverage to be in force" under §
31A-22-203 (emphasis added):

Andrew L. Margulis
July 9, 2021
Page 3

## V. REPORTING

A. Notice of any **Claim** … is considered timely when reported … as soon as
practicable…. The Insurer shall not assert that notice of a **Claim** was untimely unless the
Insurer is prejudiced by the untimely notice. However, in no event shall any notice be
provided later than … 60 days after the effective date of … expiration or termination.

*See* QBE policy, p. 2. The obvious answer to the question posed is this policy language does not
have anything to do with whether coverage is in force prior to expiration and therefore § 31A-22-
203 has no application to this policy language.

        As a result, this policy language is not subject to the *single* exception in § 31A-22-203 to
the notice/prejudice standard set forth in § 31A-21-312(2) that otherwise applies to all Utah
issued policies for multiple reasons. First, as your letter concedes, the policy language allows for
timely notice whether "occurrence" of "claim" triggered "60 days after … expiration or
termination" (*see* policy), not "prior to the expiration of the policy" (*see* § 31A-22-203). Your
effort to ignore *plain language* and equate "prior to expiration" with "60 days after …
expiration" based upon an argument as to what the Utah Legislature must have intended for all
claims-made coverages is a position that QBE cannot prevail upon and this position *does not
appear to be asserted in good faith*.

        Second, the language within **Section V**, entitled **REPORTING**, is not a provision that in
any way addresses when "coverage [is] in force". *See* Utah Code § 31A-22-203. Unlike the
insuring clause in *Westport*, 2005 WL 2474005, the QBE policy does *not* require notice of a
claim "prior to the expiration of the policy for coverage to be in force" under the relevant
insuring clause. *Compare* QBE policy, p. 1 of 4 (QBBP-1002 (5-14)) *with* Utah Code Ann. §
31A-22-203. Specifically, under the Employment Practices Liability Coverage Part, the
following insuring language applies:

        The Insurer shall pay, on behalf of an **Insured, Loss** on account of a **Claim** first made
        during the policy period.

*Id.* This insuring language identifies what is necessary for "coverage to be in force" and such
language does not require both: (1) claim assertion; and (2) notice during the policy period "for
the coverage to be in force." *See* Utah Code Ann. § 31A-22-203. To the contrary, the insuring
clause requires only that a claim be made during the Policy Period, and reporting is subject to a
separate notice provision which includes (1) a reporting and notice obligation of "as soon as
practicable…"; (2) a promise that QBE "shall not assert that notice . . . was untimely unless the
insurer was prejudiced"; and (3) a statement of "in no event … later than … 60 days after the
effective date…."

Consistent with the analysis of *Westport*, 2005 WL 2474005 above, additional cases recognize
that the triggering provisions within a claims-made insuring clause, and a policy's separate
notice provisions, serve very different purposes. Insuring language serves as "an element of
coverage." *Pension Trust Fund for Operating Engineers*, 307 F.3d 944, 956 (9th Cir. 2002); 13
*Couch on Ins.* § 186:13 (2002). Notice provisions, in contrast, serve to "facilitate the timely

{02204560.DOCX /}

Andrew L. Margulis
July 9, 2021
Page 4

investigation of claims by bringing an event to the attention of the insurer . . . allow[ing] an
inquiry 'before the scent of factual investigation grows cold.'" 307 F.3d at 956.

And, if there were any doubt that a "claims-made" policy that does not include in the
insuring clause a requirement that a claim be reported by a date certain for coverage to apply is
within the scope of § 31A-21-312(2) and not within the scope of § 31A-22-203, that doubt is
removed by Westport's form filings with the Utah Insurance Commissioner. Attached is
Westport's form filing approved by the Utah Insurance Commissioner for its form of simple
"claims-made" policy that in contrast to the policy in the *Westport* case (a claims-made-and-
reported insuring clause), does not include in the insuring clause any requirement that a claim be
reported by a date certain for coverage to be in place. Nonetheless, Westport's simple claims-
made form is clear that a *prejudice standard applies* under § 31A-21-312(2) because the policy
is not "claims-made-and-reported" and therefore § 31A-22-203 is inapplicable. Copies of
additional approved "claims-made" policies that include a notice/prejudice standard as mandated
by § 31A-21-312(2) are enclosed.

If QBE's position as to the scope of § 31A-21-312(2) and § 31A-22-203 were correct,
none of the attached forms would have been approved for use in Utah. The Insurance
Commissioner's approval of these forms demonstrates that all policies (occurrence or claims-
made) are governed by § 31A-21-312(2), but only certain "occurrence" or "claims-made-and-
reported" policies that "require[] notice of ... claim prior to expiration of policy for coverage to
be in force" are governed by § 31A-22-302.

The OBE policy does not require "notice of ... claim prior to expiration of policy
coverage for policy coverage to be in force" and if OBE contends otherwise, please cite to
specific policy language. We look forward to QBE's prompt reply given the substantial
prejudice created by QBE's denial and its failure to undertake a defense of these claims in light
of Ironshore's denial.

Sincerely,

Alan C. Bradshaw

Enclosure

# *Westport Insurance Corporation*

### LIFE INSURANCE AGENTS AND BROKERS
### PROFESSIONAL LIABILITY

### *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

### AMENDATORY ENDORSEMENT – UTAH

**Section II. DEFINITIONS,** I. Loss is deleted and replaced with the following:

**LOSS.** LOSS means the monetary and compensatory portion of any judgment, award or settlement, provided always that LOSS shall not include:

 1. civil or criminal fines, penalties, fees or sanctions;

 2. matters deemed uninsurable by operation of law;

 3. the return by any INSURED of any commissions or remunerations paid to any INSURED;

 4. any form of non-monetary relief;

 5. punitive or exemplary damages.

**Section IV. REPORTING AND NOTICE,** B. is deleted and replaced with the following:

 B. An INSURED shall:

 1. provide written notice of any CLAIMS or POTENTIAL CLAIMS to us during the CERTIFICATE PERIOD or Extended Reporting Period. If, during the CERTIFICATE PERIOD, an INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to us during the CERTIFICATE PERIOD, any CLAIMS subsequently made against an INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the CERTIFICATE PERIOD that an INSURED first became aware of such POTENTIAL CLAIM. Failure to give such notice of loss or file a proof of loss does not invalidate a CLAIM made by you, if you show that it was not reasonably possible to give the notice or file proof of loss when you first became aware of the CLAIM or POTENTIAL CLAIM and that notice was given or proof of loss was filed as soon as reasonably possible. However, if our position is prejudiced due to late notice by an INSURED, coverage under this POLICY is forfeited;

 2. provide copies of all documents we request; and

 3. include within any notice of CLAIM or POTENTIAL CLAIM a description of the CLAIM or POTENTIAL CLAIM, the alleged WRONGFUL ACT(S), including the date(s) it was committed, a summary of the facts upon which the CLAIM or POTENTIAL CLAIM is based, the alleged or potential damage or LOSS that may result from the WRONGFUL ACT, the names of actual or potential claimants, the names of INSUREDS against whom the CLAIM was or may be made, and the date and circumstances by which any INSURED first became aware of the CLAIM, or POTENTIAL CLAIM.

Notice to us for CLAIMS and POTENTIAL CLAIMS under the POLICY shall be given to:

 1. Westport Insurance Corporation
 c/o Lancer Claims Services
 Professional Liability Department
 P.O. Box 7048
 Orange, CA 92863-7048

 All other notices to us shall be given to our mailing address as shown on the Declarations Page.

SP 4 406 0409 UT                                                                 Page 1 of 3

2.      the broker or agent of record

It is sufficient service of notice or of proof of loss if a first-class postage prepaid envelope addressed to us and containing the proper notice of or proof of loss is deposited in any United States post office within the time prescribed.

Our acknowledgement of the receipt of notice, the furnishing of forms for filing proofs of loss, the acceptance of those proofs, or the investigation of any CLAIM are not alone sufficient to waive any of our rights in defense of any CLAIM arising under this POLICY.

Notwithstanding any provision to the contrary, **Section IX. SUBROGATION**, is hereby amended to include the following:

Any recovery (after expenses) shall be used to reimburse the INSURED AGENT or SPONSORING ENTITY for any LOSS ultimately borne by them, with the remainder, if any, being paid to us so as to reduce the LOSS ultimately borne by us.

**Section XIII. TERMINATION OF COVERAGE**, is deleted in its entirety and replaced by the following:

### XIII.  TERMINATION OF COVERAGE

The POLICY shall terminate at the earliest of the following:

A.      upon expiration of the POLICY PERIOD as set forth in the Declarations.

B.      upon surrender by the SPONSORING ENTITY of this POLICY to us or our authorized representatives or by mailing us written notice stating when thereafter the cancellation may be effective. Any earned premium shall be computed in accordance with the customary short rate table and procedure.

C.      upon cancellation during the first 60 days of coverage by us by mailing to the SPONSORING ENTITY at the last mailing address known to us written notice stating when not less than 60 days (10 days with regard to cancellation for nonpayment of premium) thereafter such cancellation shall be effective. Any earned premium shall be computed with the customary short rate table and procedure.

D.      if this is a renewal POLICY or a new POLICY in force for 60 days or more, the POLICY may be cancelled by us by mailing to the SPONSORING ENTITY at the last mailing address known to us written notice stating when, not less than 60 days (10 days for nonpayment of premium) thereafter such cancellation shall be effective. All such notices shall include a specific explanation of the reason(s) for cancellation. If this POLICY has been in effect for 60 days or more or is a renewal, it may be terminated only for one of the following reasons:

1.      nonpayment of premium;

2.      material misrepresentation by the SPONSORING ENTITY;

3.      a substantial change in the risk assumed, except to the extent that we should have reasonably foreseen the change or contemplated the risk in writing this POLICY; or

4.      violations or breaches of contractual duties, conditions or warranties;

The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the POLICY PERIOD. A copy of all such notices shall be sent to the SPONSORING ENTITY'S broker, if known, or the agent of record, at the last mailing address known to us. Any earned premium shall be computed with the customary short rate table and procedure.

E.   NONRENEWAL'

We reserve the right to decline renewal of this POLICY but agree to notify the
SPONSORING ENTITY in writing at least 30 days in advance of the expiration date of
this POLICY of our intent not to renew the POLICY, including a specific explanation of
the reason(s). A copy of such notice shall be sent to the SPONSORING ENTITY'S
broker, or the agent of record, at the last mailing address known to us.

The CERTIFICATE shall terminate at the earliest of the following:

F.   upon removal from the roster of the INSURED AGENT for failure to pay premium;

G.   upon termination of the agency agreement with the SPONSORING ENTITY;

H.   upon expiration of the CERTIFICATE PERIOD as set forth in the Declarations.

The following provision is added to this POLICY:

### XXIV.  BANKRUPTCY OR INSOLVENCY

It is agreed that the bankruptcy or insolvency of an INSURED or of an INSURED'S estate shall
not relieve us of any of our obligation hereunder.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless
otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the
policy.)

Endorsement Effective                                    Policy No.
Named Insured

Countersigned.                            WESTPORT INSURANCE CORPORATION

_____              _____      _____
    Authorized Representative                    President                    Secretary



| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| «eNo» | 12:01 a.m. on «eEff» | «ePol» | «ePrem» |

### AMEND NOTICE OF CLAIMS PROVISION ENDORSEMENT

It is agreed that item 1 in paragraph B. **Reporting of Claims and Events** in the **REPORTING OF CLAIMS AND EVENTS** section is replaced with the following:

1.  all **Claims-Made Liability Coverages**, that as soon as any **Insured Executive** becomes aware of any **Claim**, the **Insured** must notify the Insurer thereof in writing as soon as reasonably practicable, but in no event later than the expiration of the **Policy Period**, any subsequent renewal, or any applicable **Extended Reporting Period**. Failure to give notice soon as reasonably practicable, however, shall not invalidate any **Claim**, unless the failure to provide timely notice has prejudiced the Insurer or unless the notice is provided after the time prescribed. Failure to give notice within the time prescribed, however, shall not invalidate any **Claim** if it shall be shown not to have been reasonably possible to do so and that notice was given as soon as was reasonably possible thereafter.

All other provisions of the Policy remain unchanged.

# Insurance Agents Errors and Omissions Liability Insurance Policy

## MASTER POLICY NUMBER: _____

**IMPORTANT NOTICE: COVERAGE UNDER THIS "POLICY" IS AFFORDED ON A CLAIMS-MADE BASIS -- PLEASE READ THE ENTIRE "POLICY" CAREFULLY TO DETERMINE YOUR RIGHTS AND OBLIGATIONS, AND WHAT IS AND IS NOT COVERED.**

Throughout this "policy", the terms or expressions "you", "your", "yours", and "insured agent" refer to the Insured Agent as set forth in a Certificate of Insurance issued under the Master Policy. The terms or expressions "the Company", "Company's", "we", "us", and "our" refer to the company providing this insurance. "American National" means American National Insurance Company and/or the affiliate or affiliates of American National with which the "Certificate" holder is contracted as an Insured Agent.

Other words or phrases that appear in quotation marks have special meaning. Refer to Section **A. Definitions**.

In consideration of the payment of the required premium, and subject to the "Declarations", "Certificate", terms, conditions, limitations, deductible, and Limit of Liability of this "policy", "we" and "you" agree as follows:

## A.   DEFINITIONS

As used in this "policy":

1.   "Certificate" means the Certificate of Insurance issued to the Insured Agent seeking coverage under this "policy".

2.   "Claim(s)" means any communication, whether or not in writing, including but not limited to correspondence, service of a suit, or demand for arbitration, received by one or more "insureds" which seeks coverage, money, reimbursement or indemnification.

3.   "Claim expense(s)" means those fees, costs, and expenses incurred in connection with the investigation, adjustment, settlement, or resolution, of any "claim", and/or any suit or other proceeding arising out of or in connection with such "claim". "Claim expense(s)" include the fees and expenses of independent adjusters engaged by the Company, but do not include the salary and/or expenses of any employee or officers of the Company. "Claim expense(s)" include "legal fees and expenses".

4.   "Coverage period" means that period from and after the earlier of:

    a.   The "retroactive date", or

    b.   The initial inception or effective date of coverage under a "Certificate"

until termination of coverage under the "policy" or a "Certificate".

Subject to the terms and conditions of this "policy", the initial "policy period" shall be the period beginning on the date coverage begins on the first "Certificate" issued to the Insured Agent under the "policy" and ending on the last day of the "master policy period" containing that date; and shall continue and automatically extend for successive twelve-month renewal "policy period(s)", for as long as coverage under a "Certificate" remains continuously in force.

5.   "Declarations" means the declarations and any supplementary declarations on the "policy".

6.   "Extended Reporting Period" means that period of time provided for under the "policy" or any endorsement, beyond or after the "policy period", during which "claims" may be made with respect to an "insured's" "wrongful act" during the "coverage period".

7.   "Insured" and "Insured's" refer to any person or organization qualifying as such under Section **C. Who Is an Insured.**

8.    "Interrelated wrongful acts" means "wrongful acts" which arise out of and have as a common basis:

  a.    Related circumstances, situations, events, transactions or facts;

  b.    A series of related circumstances, situations, events, transactions or facts;

  c.    A common pattern of conduct in selling or servicing products to which this insurance applies.

9.    "Legal fees and expenses" means defense counsel fees, costs, expert witness fees and similar expenses incurred in the defense of an "insured".

10.    "Master policy period" means the period shown in the "Declarations" issued to the policyholder listed in the "Declarations".

11.    "Policy" means the Master Policy issued to the policyholder listed in the "Declarations". As to an Insured Agent, it means the Master Policy issued to the policyholder listed in the "Declarations" together with the application and any change forms of the Insured Agent, and any endorsements listed on the "Certificate", all of which are made part of the "policy" by reference.

12.    "Policy period" means the period shown as the inception date to the expiration date shown in the "Certificate" or its earlier termination date, if any.

13.    "Reporting period" means the period of time during which "claims" may be made under this "policy". It includes the "coverage period" and any additional period of time provided for in the "policy" and any endorsement, during which "claims" may be made with respect to an "insured's" "wrongful act" from and after the "retroactive date", but during the "coverage period".

14.    "Retroactive date" means the date specified in the "Certificate" and is the date on which coverage will first be afforded for a "wrongful act" occurring on or after that date. No coverage shall be afforded for any "wrongful act" occurring prior to the "retroactive date" regardless of when a "claim" is first made or reported to you or to the Company.

15.    "Risk Purchasing Group" means the policyholder listed in the "Declarations".

16.    "Wrongful act" means any negligent act, error or omission, in rendering or failing to render professional insurance services.

## B.    INSURING AGREEMENT

1.    The Company shall pay on an "insured's" behalf all sums which an "insured" becomes legally obligated to pay as a result of any "claim" or "claims" first made during the "policy period" that arise out of an "insured's" "wrongful act" for policies written or serviced in the Insured Agent's capacity as a contracted insurance agent of American National, or with American National's written permission provided always that the "wrongful act" giving rise to the "claim" was committed during the "coverage period".

2.    A "claim" will be deemed "first made" when the Company receives written notice of a "claim" or suit from the Insured Agent or a third party, but this shall not preclude the Company from utilizing written notice of the  incident as the trigger of coverage under the "policy".

3.    The Company shall have the right and duty to defend in an "insured's" name, and on an "insured's" behalf, any covered "claim" or covered suit against an "insured" alleging a "wrongful act" and seeking monetary damages arising out of and in connection therewith, even if such "claim" or suit is groundless, false, or fraudulent. The Company shall have the right to investigate and negotiate the resolution or settlement of any "claim" or suit as it may, in its sole discretion, deem appropriate. The Company shall not be obligated to pay any "claim" or judgement in excess of the available Limit of Liability set forth in the "Certificate". The Company's right and duty to defend ends when we have used up the applicable Limit of Liability in the payment of judgments or settlements.

4.    The Company shall pay all premiums on bonds to release attachments for an amount not in excess of the applicable Limit of Liability of the "Certificate", all premiums on appeal bonds required in any suit defended, all court costs taxed against an "insured" in any such suit, and all interest accruing on any judgement after such judgement is entered and until the Company  has paid, tendered, or deposited in court, that part of any such judgement as does not exceed the Company's Limit of Liability thereon.

**C.** **WHO IS AN INSURED**

"Insured" means:

**1.** The Insured Agent listed on the "Certificate",

**2.** Any entity in which the Insured Agent is a principal owner but solely for the entity's liability arising out of the "wrongful act" of the Insured Agent, or those for whom the Insured Agent is legally responsible, in the rendering or failing to render professional insurance services, and

**3.** Any person for whose "wrongful act" you are determined to be legally responsible in the rendering or failing to render professional insurance services for, on behalf of, or at the direction of you.

**D.** **CLAIM EXPENSES**

**1.** If a "claim" is made or a suit is brought against an "insured" during the "policy period" for money damages arising out of an alleged "wrongful act" covered under this "policy", the Company will pay all associated "claim expenses" as defined herein.

**2.** The Company will reimburse an "insured" for all reasonable expenses, other than travel expenses and lost income or earnings, incurred at the Company's direction or request in connection with the investigation, adjustment, trial, settlement, or other resolution of such "claim" or suit.

**E.** **CLAIMS MADE EXTENSION CLAUSE**

If you become aware of any fact or circumstance which may give rise to a "claim" against you, for which coverage may be afforded under this "policy", and you provide notice of such fact, or circumstance to the Company during the "policy period", then any "claim" subsequently made against you arising out of such fact, or circumstance shall, for the purposes of this "policy", be deemed to have been made during the "policy period" in which you provided your initial notice to the Company.

**F.** **RETROACTIVE DATE**

The "retroactive date", as defined herein, may not be changed during the "coverage period" and any "Extended Reporting Period".

**G.** **LIMIT OF LIABILITY**

**1.** Subject to the terms and conditions of this "policy", the Limit of Liability stated in the "Certificate" as "per claim" is the most we will pay for all damages arising out of the same or related claims. Related claims shall be deemed a single "claim" subject to a single Limit of Liability. Related claims means all "claims", without regard to the number of insureds, claims made, suits brought or claimants, arising out of a "wrongful act" or "interrelated wrongful acts" or out of a single event or series of related events with a common cause. All related claims shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against the "Insured".

"Claim expenses" are in addition to, and not part of the Limit of Liability set forth in the "Declarations" or "Certificate". Payment of "claims expenses" by us incurred due to a "claim" shall not serve to reduce such Limit of Liability, but we are not obligated to pay any "claim expenses" after such Limit of Liability has been exhausted.

**2.** The Limit of Liability stated in the "Certificate" as an "aggregate per policy period" is the most we will pay for all damages arising out of all "claims" first made during the applicable "policy period" and any applicable "extended reporting period". The aggregate Limit of Liability for an "extended reporting period" shall be a part of, and not in addition to, the aggregate Limit of Liability for the last 12-month renewal "policy period", or any applicable portion thereof.

**H.** **DEDUCTIBLE**

The deductible shall apply to any payment for loss for any "claim" made against an "insured". We will not pay for loss for any one "claim" until the amount of loss exceeds the deductible shown in the "Certificate". We will then pay the amount of loss in excess of the deductible up to the applicable Limit of Liability. The deductible shall not apply to "legal fees and expenses".

EO-244 8-19

## I.   EXCLUSIONS

This insurance does not apply to:

1.   Any "claim" for false arrest, detention or imprisonment; libel, slander, disparagement, defamation or invasion or violation of the right of privacy, discrimination, wrongful entry or eviction, or invasion of any right of private occupancy; misappropriation of advertising ideas or style of doing business; infringement of copyright, title or slogan;

2.   Any "claim" for bodily injury to, or sickness, disease or death of any person, or damage to or destruction of any property, including the loss of use thereof;

3.   Any "claim" arising out of any dishonest, fraudulent, malicious, criminal or willful conduct committed or alleged to have been committed by or at the direction of an "insured";

4.   Any "claim" arising out of the alleged direct or indirect use by an "insured" of nonpublic information in a manner prohibited by applicable law, rule, or regulation;

5.   Any "claim" arising directly or indirectly out of any violation or alleged violation of any law, rule, ruling or regulation that prohibits or limits the sending, transmitting, communicating or distribution of material or information including but not limited to the Telephone Consumer Protection Act (TCPA) or the CAN-SPAM Act of 2003, including any amendment of or addition to such laws, rules or regulations.

6.   Any fines, penalties, taxes, punitive or exemplary damages assessed against an "insured" including but not limited to those imposed under any law, rule, ruling, regulation, regulatory agency, or court. However, if suit is brought alleging both compensatory and punitive or exemplary damages arising out of or in connection with a "wrongful act" otherwise covered under this "policy", the Company may elect to defend an "insured" in such suit without assuming any legal obligation to indemnify an "insured" for any such amount;

7.   The loss of monies resulting from any commingling of funds or failure to pay or collect premium, return premium, commissions, tax monies or failure to collect contributions owed to any fund or to make the return of any contributions to any employer;

8.   Any "claim" by and between an "insured" and any other agent or broker for damages arising out of any past or present business or client relationships or alleged tortious interference therewith;

9.   Any "claim" arising out of an "insured's" alleged unfair competition, unfair trade practice, violation of any covenant not to compete, any covenant not to solicit, or any similar restrictive covenant in an "insured's" agent agreement with the Company or in any previous agent agreement an "insured" may have had or have entered into with any prior company;

10.   Any alleged unfair, unlawful, or illegal discrimination or treatment of any individual or group identified as or constituting a protected class or group under any law, rule, ruling or regulation;

11.   Any "claim" arising out of any alleged "wrongful act", or violation of any duty owed by an "insured" to another, not within the coverage afforded under this "policy" as defined in paragraph B.1. above;

12.   Any liability assumed by an "insured" under any contractual agreement, either oral or in writing. This exclusion does not apply to liability which an "insured" would have in the absence of any such agreement;

13.   Any profit or advantage to which an "insured" was not legally entitled, including any claim, demand, or suit seeking return by an "insured" of any financial remuneration paid to an "insured" under any contract or agreement, whether oral or in writing;

14.   Any "claim" or "claims" made for, or on behalf of an "insured", an "insured's" spouse, children, parents, grandparents or any blood relatives of an "insured" or of an "insured's" spouse or ex-spouse, or by any resident of an "insured's" household, or by any entity owned in whole or in part by you or any blood relatives of you;

Page 4 of 11

EO-244 8-19

15.   Any "claim" arising out of or in connection with any "employee pension benefit plan" and/or "employee
      welfare benefit plan" as those terms are defined in the Employee Retirement Income Security Act of 1974
      (ERISA), as amended, sponsored by an "insured", or any entity which an "insured" owns or controls, or in
      regard to any such plan in which an "insured" is a participant or a named fiduciary as those terms are
      used under the Employee Retirement Income Security Act of 1974 (ERISA), as amended;

16.   Any "claim" arising out of activities of an "insured" in regard to any non-insured (meaning the funding
      vehicle of the plan is other than insurance or any annuity(s) issued by the Company) "employee pension
      benefit plan" and/or "employee welfare benefit plan" as those terms are defined in the Employee
      Retirement Income Security Act of 1974 (ERISA), as amended. As used here, a "non-insured" employee
      pension benefit or employee welfare benefit plan means any such plan funded to any extent by means
      other than an insurance "policy" or annuity issued by the Company;

17.   Any "claim" arising out of a violation of any law, rule, ruling or regulation of the Securities and Exchange
      Commission (SEC), Financial Industry Regulatory Authority (FINRA), or any other federal or state
      securities law, rule, ruling or regulation;

18.   Any employment or work contract related liability, including but not limited to any "claim" or cause of
      action arising out of or in connection with any alleged refusal to employ or contract with, termination of
      employment or contract, harassment, retaliation, coercion, demotion, evaluation, reassignment,
      discipline, defamation, harassment, humiliation, or discrimination;

19.   An "insured's" liability under any workers' compensation, unemployment compensation, disability benefits,
      or any similar law, rule, ruling, or regulation;

20.   Any liability arising out of the rendering or failure to render any services, professional or otherwise, as an
      accountant, actuary, lawyer, real estate agent, real estate manager, trustee, carpenter, construction
      contractor, repair person; or any other services of whatever kind not required in conjunction with the
      rendering of professional insurance services for policies written or serviced in your capacity as
      a contracted insurance Agent of American National, or with American National's written permission.

21.   Any "claim" based upon, arising out of or in connection with, whether directly or indirectly, the insolvency,
      receivership, liquidation or inability to pay, of any insurer, reinsurer, trust, or any other risk bearing,
      ceding, or assuming organization, or investment vehicle, in which an "insured" has placed or obtained
      coverage for or on behalf of any individual, customer, client or account;

22.   Any "claim" arising out of a "wrongful act" occurring prior to the "retroactive date" shown on the
      "Certificate" issued to you in conjunction with this "policy";

23.   Any "claim" for which an "insured" is afforded coverage (or may have been afforded coverage but for the
      exhaustion of any applicable limits of liability) under any policy or Certificate of Insurance of which this
      "policy" or "Certificate" is a renewal or replacement, or which this "policy" or "Certificate" succeeds in time;

24.   Any awards, judgements, damages, or similar amounts or matters which may be deemed uninsurable as
      a matter of public policy or judicial declaration under any applicable law and/or in any jurisdiction in which
      this "policy" shall be interpreted or construed;

25.   Any "claim" relating to nuclear liability;

26.   Any disciplinary action or proceeding against an "insured" brought by or on behalf of any federal, state,
      local government agency, administrative authority; or any professional or trade licensing organization;

27.   Any "claim" for relief other than monetary damages.

EO-244 8-19

## J.  CONDITIONS

1. **The Insured Agent and "Insured's" Duties in Event of Claim or Suit:**
   a. You must notify us on behalf of all "insureds" as soon as practicable of any "claim" or suit, or occurrence which could reasonably be expected to be the basis of a "claim" or suit against an "insured". To the extent possible, such notice should include:
      (1) How, when and where the occurrence or "claim" took place;
      (2) The names and addresses of any claimant (and witnesses);
      (3) The nature and type of the alleged act, error, or omission;
      (4) The nature and extent of any claimed loss;
      (5) Copies of any demands, notices, summonses or legal papers you receive in connection with the "claim" or any suit arising out of or in connection with such "claim"; and
      (6) Any authorization necessary for the Company to obtain records and other information from any other individuals or parties.

   b. Upon receipt of notice of a "claim" or suit, you and any "insured" are obligated to:
      (1) Cooperate with us in the investigation, settlement, or defense of the "claim" or suit; and
      (2) Assist us as necessary and at our request in the enforcement of any right against any person or party that may be liable to you or the claimant for the alleged "claim", injury, or damage for which coverage might otherwise be afforded under this "policy".

**Important Notice:** Notice of a "claim" received by an "insured" is not notice to the Company of a "claim" being made under this "policy". Notice of a "claim" received by any agent or employee of the Company, other than an "insured", with sufficient particularity to allow the Company to identify the Insured Agent against whom the "claim" is being made and/or the claimant making such "claim", shall constitute notice to the Company of a "claim" being made under this "policy".

Failure to give the Company notice required to be given by this "policy" within the time specified will not invalidate any "claim" made by an "insured", an injured person or any other claimant if:
1. It is shown not to have been reasonably possible to give such notice within the prescribed time and notice was given as soon as reasonably possible thereafter; and
2. The failure to provide timely notice did not prejudice us.

No "insured" shall, except at his or her own cost, voluntarily make a payment, assume any obligation, or incur any expense, without our consent.

2. **Other Insurance**
   a. Primary Insurance -- Subject to subsection **b.** Excess Insurance, this insurance is primary, but if other valid and collectible insurance is available to the Insured Agent for a loss we cover, our obligations are not affected unless any of the other insurance is also primary, or contributes on a pro rata or equal shares basis, in which case we will participate with any and all other participating insurers as follows:
      (1) If all other available insurance permits contribution by equal shares, each insurer will contribute equal monetary amounts until:
         (a) Each insurer has paid its applicable limit of liability, or
         (b) The claimant has been made whole, or
         (c) None of the loss remains, whichever comes first.
      (2) If any other available insurance does not permit contribution by equal shares, each insurer shall participate based on the ratio of its applicable limit of liability to the total applicable limits of liability for all participating insurers.

   b. Excess Insurance - For any person who is an "insured" under Section **C.3.** of the "policy", other than the Insured Agent, this insurance is excess over any other valid and collectible insurance.

3. **Subrogation**
   a. In the event of any payment of any "claim" under this insurance, the Company shall be subrogated to all of an "insured's" rights of recovery therefore against any person or organization and the "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

EO-244 8-19

**b.** An "insured" shall do nothing after receiving notice of a "wrongful act" or "claim" to prejudice such rights.

## 4. Representations

By accepting coverage pursuant to a "Certificate" issued under this "policy", you agree:
**a.** The statements in the "Certificate" are accurate and complete;
**b.** Those statements are based upon representations you made to us; and
**c.** We have issued the "Certificate" in reliance upon your representations.

## 5. Legal Action Against Us

No person, party, or entity shall have a legal right under this "policy":
**a.** To join us as a party or otherwise bring us into a suit seeking damages against an "insured"; or
**b.** To sue us under this "policy", unless all of its terms and conditions have been otherwise fully complied with.

A person, party, or entity may sue us to recover on an agreed settlement or on a final judgment against an "insured", but we will not be liable for damages that are not payable under this "policy" or that are in excess of the applicable Limit of Liability listed in the "Certificate". An agreed settlement means a settlement and release of liability signed by us, an "insured" and the claimant or the claimant's legal representative.

## 6. Transfer Of Duties Upon Exhaustion Of Limits Of Liability.

**a.** If we conclude that based on occurrences, offenses, "claims" or suits which have been reported to us and to which this insurance may apply, the policy limits are likely to be used up in the payment of judgments or settlements, we will notify the Insured Agent, in writing to that effect.

**b.** When a limit of liability has actually been used up in the payment of judgments or settlements:

    **(1)** We will notify the Insured Agent, in writing, as soon as practicable, that:

        (a) Such a limit has actually been used up; and

        (b) Our duty to defend suits seeking damages subject to that limit has also ended.

    **(2)** We will initiate, and cooperate in, the transfer of control to any appropriate insured of all "claims" and suits seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said "claims" and suits.

        We agree to take such steps, as we deem appropriate to avoid a default in, or continue the defense of, such suits until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

        We will take no action whatsoever with respect to any "claim" or suit seeking damages that would have been subject to that limit, had it not been used up, if the "claim" or suit is reported to us after that limit of insurance has been used up.

    **(3)** The Insured Agent, and any other insured involved in a suit seeking damages subject to that limit, must arrange for the defense of such suit within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such suit must be made as soon as practicable.

**c.** The Insured Agent will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b. (2)** above.

    The duty of the Insured Agent to reimburse us will begin on:

    **(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **b. (1)** above; or

    **(2)** The date on which we sent notice in accordance with paragraph **b. (1)** above, if we did not send notice in accordance with paragraph **a.** above.

**d.** The exhaustion of any limit of liability by the payment of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition **6**.

EO-244 8-19

e.     If the Insurer has paid any amounts in settlement or satisfaction of "claims" or judgements in excess of the applicable limit of liability, or within the amount of the applicable deductible, the Insured shall be liable to the Insurer for any and all such amounts and upon demand shall pay such amounts to the Insurer.

7.   **Cancellation Clause**

a.     The policyholder or the Insured Agent may cancel coverage under this "policy" at any time by mailing or delivering written notice of cancellation to the Company. If notice is mailed, proof of mailing will be sufficient proof of notice.

b.     For coverage in effect 60 days or less, the Company may cancel this "policy" or coverage under a "Certificate" by mailing or delivering written notice of cancellation, stating the reason for cancellation, to the policyholder and/or Insured Agent as applicable, not less than:
   (1)     20 days before the effective date of cancellation if we cancel for any reason not included in paragraph (2) below; or
   (2)     15 days before the effective date of cancellation if we cancel for any of the following reasons:
      (a)     Nonpayment of premium;
      (b)     Discovery of fraud or material misrepresentation in the obtaining of the "policy" or a "Certificate", or in the presentation of a "claim" thereunder;
      (c)     After issuance of the "policy" or "Certificate", or after the last renewal date, discovery of an act or omission, or a violation of any "policy" or "Certificate" condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current "policy period";
      (d)     Material change in the nature or extent of the risk, occurring after issuance or last renewal anniversary date of the "policy" or "Certificate", which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the "policy" or "Certificate" was issued or last renewed; or
      (e)     Any determination by any state or federal agency having jurisdiction that the Company's continued operation or on-going premium production will jeopardize the Company's solvency or be hazardous to the interest of the Company's policyholders, creditors, or the general public.

c.     For coverage in effect for more than 60 days or a renewal or a continuation of a "policy" or "Certificate" we issued, we may cancel coverage only for any reasons listed in paragraph **7.b.(2)** above, provided we mail or deliver the policyholder and/or Insured Agent, as applicable, a notice of cancellation, stating the reason for cancellation, at least 30 days before the effective date of cancellation.

d.     We will mail or deliver our notice, including the reason, to, as applicable, the policyholder and/or Insured Agent's last mailing address known to us and to the authorized agent. Proof of mailing will be sufficient proof of notice.

e.     Notice of cancellation will state the effective date of cancellation. The "policy period" will end on that date. If we cancel for nonpayment of premium, our notice of cancellation will state the amount due.

f.     If coverage under this "policy" is cancelled, we will send the Insured Agent any premium refund due. If we cancel or the Insured Agent retires, the refund will be pro-rata. If the Insured Agent cancels, the refund will be pro-rata, unless the premium is advanced under a premium finance agreement. When the premium is advanced under a premium finance agreement, the Company will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

g.     Suspension of coverage is not considered a cancellation of coverage.

EO-244 8-19

## 8. Nonrenewal

    **a.** If we decide not to renew this "policy" or a "Certificate", we will send notice as provided in paragraph b. below.

    **b.** If we decide not to renew coverage under this "policy" or a "Certificate", we will mail or deliver written notice, stating the reason for nonrenewal, to the policyholder shown in the "Declarations" and/or to the Insured Agent shown in the "Certificate", as applicable, at least 60 days but not more than 120 days before:

        **(1)** The expiration date; or

        **(2)** The anniversary date if this is a continuous "policy".

    **c.** Notice will be mailed or delivered to the policyholder at the address shown in the "Declarations" and/or to the Insured Agent at the address shown in the "Certificate", as applicable. If notice is mailed, proof of mailing will be sufficient proof of notice.

    **d.** We will not send you notice of nonrenewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the coverage under the "policy" has been replaced or is no longer desired.

## 9. Premiums

The premium for coverage under this "policy" is computed in accordance with our rules, rates and minimum premiums applicable to the insurance afforded.

The Insured Agent shown in the "Certificate":

    **a.** Is responsible for the payment of all premiums for coverage pursuant to a "Certificate" under the "policy"; and

    **b.** Will be the payee for any return premiums we pay for coverage pursuant to a "Certificate" under the "policy".

## 10. Business and Premium Validation

We may, but are not obligated to, examine and audit your books and records as they relate to coverage under this "policy" or a "Certificate" at any time during the "coverage period" and up to three years after the final termination of this "policy" or coverage under a "Certificate".

## 11. Bankruptcy

Bankruptcy or insolvency of the Insured Agent or of the Insured Agent's estate will not relieve us of our obligations under this "policy" or a "Certificate".

## K. EXTENDED REPORTING PERIODS

### 1. Automatic Sixty (60) Day "Extended Reporting Period":

    **a.** If this "policy", or coverage under a "Certificate", is subject to any termination of coverage, then the Insured Agent shall be notified in writing within thirty (30) days after termination of coverage of the Automatic "Extended Reporting Period" coverage and the availability of, the premium for, and the importance of purchasing Optional Extended Reporting Period coverage.

    **b.** There shall be an Automatic "Extended Reporting Period" which starts with the end of the "policy period" and lasts for 60 days. It provides an additional period to report "claims" and does not grant new or additional limits, extend the "policy period" or change the coverage provided.

    **c.** If this "policy", or coverage provided under a "Certificate", is subject to any termination of coverage, then any "claim" first made against an "insured" during the Automatic "Extended Reporting Period" for any "wrongful act" which took place on or after the "retroactive date", but before the end of the "policy period", will be considered to be a "claim" first made during the "policy period".

    **d.** The Automatic "Extended Reporting Period" may not be cancelled and requires no additional premium.

### 2. Automatic Difference in Terms Six (6) Year "Extended Reporting Period":

If coverage for the Insured Agent under a "Certificate", replaces or immediately follows a prior policy or certificate issued to the Insured Agent by American National Property And Casualty Company or Farm Family Casualty Insurance Company that is terminated by one of those companies, there shall be an

Page 9 of 11

Automatic Difference in Terms "Extended Reporting Period" for that prior policy for six (6) years. The Automatic Difference in Terms "Extended Reporting Period" starts at the termination date of the prior policy and applies only to any reduction in coverage under this "policy" as compared to the prior policy. There is no charge for the Automatic Difference in Terms "Extended Reporting Period". If this "policy" or coverage under a "Certificate" terminates for any reason, the Automatic Difference in Terms "Extended Reporting Period" coverage only applies for the portion of the six year period, beginning with the termination date of the prior policy, during which the Insured Agent maintains Automatic or Optional "Extended 'Reporting Period" coverage under this "policy".

3.   **Optional "Extended Reporting Period"**

a.   If this "policy", or coverage provided under a "Certificate", is subject to any termination of coverage, then the Insured Agent shall have an option to purchase an Optional "Extended Reporting Period" of twelve (12), thirty-six (36) or seventy-two (72) months so that any "claim" first made against an "insured" during the Optional "Extended Reporting Period" for any "wrongful act" which took place on or after the "retroactive date", but before the end of the "coverage period", will be considered to be a "claim" first made during the "policy period" provided the Optional "Extended Reporting Period" was purchased according to the provisions in **d.(2)** below.

b.   This Optional "Extended Reporting Period" provides an additional period to report "claims".

c.   The 12, 36 or 72 month "Extended Reporting Period" will start at the end of your "policy period", not at the end of the 60 day Automatic "Extended Reporting Period".

d.   Notice and Acceptance for the Optional "Extended Reporting Period":
   (1)   If this "policy", or coverage provided under a "Certificate", is subject to any termination of coverage then we will notify the Insured Agent in writing of the importance of purchasing the Optional "Extended Reporting Period" coverage within thirty (30) days of the date of termination of coverage of the premium for, and the provisions of the "Extended Reporting Period".
   (2)   The Insured Agent will have the greater of sixty (60) days from the date of termination of coverage, or thirty (30) days from the date of mailing of the "Extended Reporting Period" notice provided for above, to request the Optional "Extended Reporting Period". The insured agent must:
      (a)   Submit a written request which we receive within 60 days after the termination of the "policy" or 30 days from the date of mailing of the "Extended Reporting Period" notice provided for above;
      (b)   Show the length of the period of extension desired;
      (c)   Promptly pay an additional premium due of 50% of the annual premium developed under this "policy", if you request the 12 month "Extended Reporting Period" option; or
      (d)   Promptly pay an additional premium due of 100% of the annual premium developed under this "policy", if you request the 36 month "Extended Reporting Period" Option; or
      (e)   Promptly pay an additional premium due of 150% of the annual premium developed under this "policy", if you request the 72 month "Extended Reporting Period" Option.

   If the Insured Agent's request for the "Extended Reporting Period" and premium payment are not received by the Company in a timely manner, as provided for in paragraph **d.(2)** above, the "Extended Reporting Period" options may not be exercised at a later date.

e.   If this "policy", or coverage under a "Certificate", is cancelled and the Insured Agent elects to purchase the Optional "Extended Reporting Period":
   (1)   Any return premium due the Insured Agent as a result of the termination of coverage under the "policy" shall be credited toward the premium for the "Extended Reporting Period" endorsement, if you elect such coverage.
   (2)   Any additional premium due us for the period coverage under the "policy" was in force must be fully paid before any payments will be applied to premium due for the Optional "Extended Reporting Period" Endorsement.

EO-244 8-19

f.   The Optional "Extended Reporting Period" will not take effect unless the additional premium is paid when due. If that premium is paid when due, the Optional "Extended Reporting Period" may not be cancelled. The premium charged for the Optional "Extended Reporting Period" coverage will be based upon our manual rates and rules in effect on the date that this "policy" was issued or last renewed, whichever is later, and will be commensurate with the coverage provided.

g.   Optional "Extended Reporting Period" Aggregate Limit:
(1)   The aggregate liability limit for the one year "Extended Reporting Period" coverage shall be equal to one hundred percent of the "policy's" annual aggregate limit.
(2)   The aggregate liability limit for the three year "Extended Reporting Period" coverage shall be equal to one hundred percent of the "policy's" annual aggregate limit.
(3)   The aggregate liability limit for the six year "Extended Reporting Period" coverage shall be equal to one hundred percent of the "policy's" annual aggregate limit.

h.   The Company is not obligated to provide Optional "Extended Reporting Period" upon termination of coverage for nonpayment of premium or fraud if the Insured Agent's coverage under this "policy" has been in effect for less than one year.

## L.   ASSIGNMENT

Your rights under this "policy" or a "Certificate" may not be assigned without our prior written consent. Any assignment in violation of this provision shall not bind us in any way.

_____          _____
President                                Secretary

EO-244 8-19

# EXHIBIT H

| From: | Margulis, Andrew L. <andrew.margulis@ropers.com> on behalf of Margulis, Andrew L. |
|---|---|
| Sent: | Wednesday, July 21, 2021 9:32 AM |
| To: | Alan Bradshaw |
| Cc: | Brandon Hale |
| Subject: | RE: Clyde Companies |
| Attachments: | Bradshaw letter 7-21-21.pdf |

Alan,
Please see the attached letter. I'm happy to discuss further with you after you've had a chance to review.

Thank you.

Andy

**Andrew L. Margulis**
*Partner*
Chair, Insurance Services Practice Group
ROPERS MAJESKI PC
750 Third Avenue, 25th Floor
New York, NY 10017
d (646) 454-3242 | m (917) 747-8673
andrew.margulis@ropers.com
Bio | LinkedIn



---

**From:** Alan Bradshaw <abradshaw@mc2b.com>
**Sent:** Friday, July 9, 2021 5:25 PM
**To:** Margulis, Andrew L. <andrew.margulis@ropers.com>
**Cc:** Brandon Hale <bhale@clydeinc.com>
**Subject:** Clyde Companies

Mr. Margulis,

Thank you for taking the time to speak with me this afternoon. Attached is the letter I
indicated I would be sending. Please confirm that you have received this email and letter. If
you'd like to discuss further please give me a call. Thank you.

Alan

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC

1

136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**NOTICE TO RECIPIENT |** This email is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this email in error, please notify us immediately of the error by return email, and please delete this message from your system. Any review, use, dissemination, distribution, or copying of this email is strictly prohibited. Thank you in advance for your cooperation.

For more information about Ropers Majeski, please visit ropers.com. In the course of our business relationship, we may collect, store, and transfer information about you. Please see our privacy policy at https://www.ropers.com/privacy to learn about how we use this information.



**ROPERS**
**M A J E S K I**

750 Third Avenue
25th Floor
New York, NY 10017

Andrew L. Margulis    o 212.668.5927
d 646.454.3242    f 212.668.5929
andrew.margulis@ropers.com    ropers.com

July 21, 2021

**VIA E-MAIL ONLY**

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
abradshaw@mc2b.com

|  |  |  |
|---|---|---|
| Re: | Insured: | Clyde Companies, Inc. |
|  | Claimants: | Raul Guzman; Oghenetega Emuveyan |
|  | Insuring Company: | QBE Insurance Corporation |
|  | QBE Policy: | QPL0057435 |
|  | QBE Claim Nos.: | 802897N; 802739N |
|  | Our File No.: | 5331N |

Dear Mr. Bradshaw:

We write to respond to your July 9, 2021 letter.

As noted in your letter, the analysis must begin with the plain language of the policy, which you then go on ignore. Your letter discusses the difference between "claims-made" policies and "claims-made and reported" policies. The Utah statutes and the case law cited in your letter, however, make no such distinction. In any event, even in jurisdictions that do distinguish between these types of policies, the QBE Policy would clearly qualify as a claims-made and reported policy. This is tacitly acknowledged in your letter, in which you state that in a claims-made and reported policy, "two things must take place **during a specified period.**"

That is precisely what the QBE Policy provides—these two things are: (1) the claim must be first made during the policy period; and (2) the claim must be reported no later than 60 days after the expiration of the policy period. A pure "claims-made" policy only requires that a claim be first made during the policy period, and then typically has language that states such claim must be reported "as soon as practicable" with no further limitations or outside date for reporting of a claim. As acknowledged in your letter, however, what distinguishes a claims-made and reported policy is the second feature—that the claim must be reported "during a specified period" as you say. That specified period is, in the case of the QBE Policy, within 60 days after the policy expires. The fact that this extends for a brief time beyond the policy period does not change the fact that the policy provides a specified end date for reporting—60 days, and does not leave the ability to report open for an unlimited time.



Next, in attempting to support your position, you clearly misstate the holding of *Westport Ins. Co. v. Ray Quinney & Nebeker*, 2009 WL 2474005 (D. Utah Aug. 7, 2009). In your letter, you stated that the *Wesport* court was distinguishing between notice language that is or is not within the insuring agreement when it stated that the difference between such provisions was "to help the insurer investigate, settle, and defend claims; this type of [notice language] do[es] not define coverage and should be liberally and practically construed." That is not at all the context in which the court made that statement. Instead, the court was clearly discussing the difference between the purposes of notice provisions in **occurrence policies** as opposed to **claims-made policies**. Indeed, the actual quotation from the *Westport* case is:

> Notice provisions serve different purposes in occurrence and claims-made policies. In an occurrence policy, notice provisions are included to help the insurer investigate, settle, and defend claims; they do not define coverage and should be "liberally and practically construed":

> By contrast, the event that invokes coverage under a "claims made" policy is transmittal of notice of the claim to the insurance carrier. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy.

Contrary to your letter, the court at no time distinguished between pure "claims-made" policies and "claims-made and reported" policies—instead, the court simply held that the event that invokes coverage under a "claims made" policy is transmittal of notice to the insurer. There can be no dispute, and even you acknowledge, that the QBE Policy is a claims-made policy. Thus, pursuant to the clear holding in *Westport*, coverage is not "in force" until such notice is transmitted. And, since notice here was transmitted well beyond the expiration of the "specified period" in the QBE Policy (i.e. 60 days after policy expiration), coverage was never "in force."

Finally, your attempted reliance on the fact that Westport had two different forms for use in Utah, one "claims-made" and one "claims-made and reported" as you suggest is entirely misplaced. How Westport chose to create its policies has no bearing on how the QBE Policy must be interpreted. You also ignore the fact that the QBE Policy, which clearly provides.that prejudice is not required if notice of a claim is given more than 60 days after policy expiration, was approved by the Utah Insurance Department. As such, the QBE Policy complies with all Utah statutory and regulatory requirements and must be enforced as written. Indeed, as the court held in *Hunter v. Fireman's Fund Ins. Co.*, 448 F.2d 805 (10th Cir. 1971), "the failure to comply with a requirement of a policy in respect thereto which conforms to the statute will defeat recovery on the policy."



For these reasons, and as further discussed in our letter of June 24, 2021, it remains QBE's position that coverage is not available for the Guzman and Emuveyan matters.

Notwithstanding the foregoing, and while QBE reiterates that it will not assume the defense of the Guzman and Emuveyan matters, QBE is willing to consider a resolution of this matter short of litigation in order to avoid potentially lengthy and costly coverage litigation if such a resolution would be of interest to your client.

Please be advised that nothing in this letter is intended to be, nor should it be construed as, a waiver of any of QBE's rights and defenses under the QBE Policy, at law or in equity, all of which are expressly reserved.

If you would like to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

Andrew L. Margulis

4849-0800-1266.2

# EXHIBIT I

| From: | Alan Bradshaw |
|---|---|
| **Sent:** | Wednesday, August 11, 2021 4:40 PM |
| **To:** | 'andrew.margulis@ropers.com' |
| **Cc:** | 'Brandon Hale' |
| **Subject:** | Guzman and Oghenetega |
| **Attachments:** | ABradshaw to AMargulis 08.11.21 (02219920).pdf |

Andrew,

Please give this letter consideration. I will call you in the next few days to provide information regarding the underlying actions and why it is our conclusion that providing a defense subject to a reservation of rights is a less expensive and more realistic solution that would avoid expensive coverage litigation. In the interim, I have provided my evaluation of how I believe the Utah Supreme Court will likely resolve the coverage issue. Thank you.

Alan C. Bradshaw
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
801-363-5678
Facsimile 801-364-5678
abradshaw@mc2b.com

1



136 East South Temple, Suite 1300
Salt Lake City, Utah 84111
(801) 363-5678
Facsimile: (801) 364-5678
www.mc2b.com
Alan C. Bradshaw
abradshaw@mc2b.com

August 11, 2021

VIA EMAIL
andrew.margulis@ropers.com

Andrew L. Margulis
Ropers Majeski
750 Third Avenue 25th Floor
New York, NY 10017

> Re:  Insured:             Clyde Companies Inc.
>      Claimants:           Raul Guzman; Oghenetega Emuveyan
>      Insuring Company:    QBE Insurance Corporation
>      QBE Policy:          QPL0057435
>      QBE Claim Nos.:      802897N; 802739N
>      Your File No.:       5331N

Dear Mr. Margulis:

Thank you for your letter dated July 21, 2021. We disagree with the analysis set forth in your letter including the assertion that the policy issued by QBE is a "claims-made-and-reported" policy as opposed to a "claims-made" policy as noted below. Nonetheless, whether the QBE policy is claims-made or claims-made-and-reported is not dispositive of any issue. The issue is whether the QBE policy falls within the following language of Utah Code § 31A-22-203: "claims-made coverage that require[s] notice of an occurrence or claim prior to the expiration of the policy for coverage to be in force." The answer to this question is unquestionably no because the policy language relied upon by QBE states: "In no event shall any notice be provided later than … 60 days after the effective date of … expiration."

Additionally, it is our position that the above quoted policy language found under the heading of **V. REPORTING** is not a provision that impacts whether "coverage [is] in force" at all and therefore is not "and-reported" language. *See* Utah Code § 31A-22-203. Nonetheless, our disagreement on the second point does not change the reality that the QBE policy is not one that requires notice "prior to the expiration of the policy for coverage to be in force." *Id.*

Recognizing that QBE is unable to turn the policy's language of "60 days after the effective date of … expiration" (QBE policy)" into "prior to the expiration of the policy for coverage to be in force" (§§ 31A-22-203), your two letters present, in substance, an argument that the Utah legislature intended to except from the notice/prejudice rule stated in Utah Code § 31A-21-312 *all* claims-made policies because claims-made policies assume less risk as

{02219920.DOCX /}

Andrew L. Margulis
August 11, 2021
Page 2

compared to "occurrence" policies. We are confident that this interpretation of the Utah
Insurance Code will not be adopted by the Utah Supreme Court.

Subsequent to receiving your last letter, I attended a seminar presented or attended by
three of the Utah Supreme Court justices regarding the interpretation of the Utah Constitution,
statutes, and contracts. We are confident that your analysis is far out of step with the Utah
Supreme Court's approach to interpretation including, as stated at this seminar, the Court places
little or no reliance on the alleged "purpose" of a statutory provision. Instead, language is
interpreted according to plain language, and if an outcome appears to be inconsistent with a
statute's purpose, the Utah Supreme Court notes such potential inconsistency but leaves it to the
Utah legislature to make any future change to the statute's language.

The Utah Supreme Court, however, does read statutory language in context which in this
case further demonstrates that there exists a *single* exception to the notice/prejudice rule that is
otherwise applicable to all insurance policies as stated in Utah Code § 31A-21-312. Specifically,
the Utah Insurance Code includes an express definition of "claims-made coverage" as "an
insurance contract or provision limiting coverage under a policy insuring against legal liability to
clients that are first made against the insured while the policy is in force." *See* Utah Code § 31A-
1-301(26). This exact defined phrase ("claims-made coverage") is used in § 31A-22-203, but the
single exception to § 31A-21-312 explicitly states that the exception is not for all "claims-made
coverage," but instead, for "claims-made coverage that *require[s] notice of an occurrence of
claim prior to the expiration of the policy for coverage to be in force." See* § 31A-22-203
(emphasis added). Consequently, your attempt to argue that *all* claims-made coverages are
subject to the exception found in § 31A-22-203 is contrary to the context and express language
of the statute. If QBE's position were correct, § 31A-22-203 would end after the words "claims-
made coverage" but instead the statute goes on to define a *single* type of "claims-made
coverage" for which an exception exists.

Further, your effort to rely upon *Westport Ins. Co. v. Ray Quinney & Nebeker,* 2009 WL
2474005 (D. Utah Aug. 7, 2009) while distinguishing the fact that Westport, like QBE, writes
some claims-made policies that apply a notice/prejudice standard under § 31A-21-312 is
completely unpersuasive and internally inconsistent. As the Westport (and QBE) form filings
prove, all policies (claims-made, occurrence, or first-party) are subject to the notice/prejudice
standard stated in § 31A-21-312 but only a policy that is "claims-made coverage that require[s]
notice of an occurrence or claim prior to the exception of the policy for coverage to be in force"
falls within the § 31A-22-203 exception. The policy in *Westport* was such an excepted policy
but other claims-made policies issued by Westport (and QBE) expressly do not require "notice
… prior to the exception of the policy for coverage to be in force" within the language of § 31A-
21-312. Moreover, QBE's analysis would require a court to find that its policy is subject to §
31A-21-312 for some claims and subject to § 31A-22-203 for other claims despite the statutory
reference to a "policy['s]" claims-made coverage. Lastly, QBE's position that both § 31A-21-
312 and § 31A-22-203 apply to the policy QBE issued to the Clyde Companies depending upon
the circumstances is internally inconsistent with QBE's argument that § 31A-22-203 is
applicable to all "claims-made" policies. The QBE policy contains express language applying §
31A-21-312 despite our apparent agreement that the policy provides "claims-made coverage" as
defined in Utah Code § 31A-1-301(26).

{02219920.DOCX /}

Andrew L. Margulis
August 11, 2021
Page 3

     We are extremely confident that the Clyde Companies' interpretation of the Utah
Insurance Code is correct. We are contemplating filing a declaratory judgment and seeking
certification of this issue to the Utah Supreme Court. As a practical matter, however, such
litigation may not be economical for either party and QBE may incur more expense than it would
pay to defend the Guzman and Emuveyan claims under a reservation of rights as to indemnity.
While we appreciate QBE's interest in considering a resolution short of litigation, we fear that a
negotiated single payment resolution could be far more expensive than the cost of defending the
underlying claims given the uncertainties that must be accounted for in a one-time settlement of
ongoing claims. I'd like to discuss with you certain facts related to the underlying cases that
have led to this practical conclusion. Nonetheless, I wanted to respond to your letter and provide
an analysis of the key Utah Insurance Code provisions prior to that discussion.

     I will give you a call in the next few days. Thank you for your consideration.

             Sincerely,

            *Alan C Bradshaw*

            Alan C. Bradshaw